## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF FLORIDA

UNITED STATES OF AMERICA,

*Plaintiff*,

v.

BENJAMIN K. SHARFI, in his personal and
fiduciary capacity as trustee of the Benjamin
Sharfi 2002 Trust, and NESHAFARM, INC.

*Defendants*.

Case No. 2:21-cv-14205-KAM

Magistrate Judge Shaniek M. Maynard

## <u>DECLARATION OF ANDREW J. DOYLE</u>

I, Andrew J. Doyle, submit the following declaration in support of Plaintiff United States
of America's Motion to Strike Defendants' Untimely Expert Disclosure and Report.

1.      I am an attorney with the Environment and Natural Resources Division of the
United States Department of Justice and one of the counsel of record for the United States in the
above-captioned case.

2.      Exhibit A to this declaration is "Plaintiff's Expert Disclosures," which the United
States served on February 18, 2022.  In that document (on page two), the United States identified
Randall Rex as an expert witness (appraiser).  Further, as that document notes (on page two), that
the United States produced two reports by Mr. Rex.  Mr. Rex's opinions relate to the extent to
which the Site where Defendants discharged pollutants has increased in market value due to
Defendants' alleged unlawful filling of Clean Water Act-protected wetlands.

3.      Exhibit B is "Defendants' Expert Disclosures," which Defendants served on April
8, 2022.

4.      Exhibit C is an email dated April 20, 2022, from counsel for the United States to counsel for Defendants.  The United States wrote (*inter alia*):  "When do you intend to produce [Albert] Armada's report?  Our efforts to schedule Mr. Armada's deposition are without waiver of any rights or defenses regarding the admissibility of testimony by Mr. Armada."  Defendants did not respond to the United States' inquiry about Mr. Armada's (non-existent) report.

5.      Exhibit D is an email dated April 25, 2022, from counsel for the United States to counsel for Defendants.  The United States wrote (*inter alia*):  "You have not responded regarding why Defendants failed to provide a timely report for Mr. Armanda or when Defendants intend to provide that report. Please explain."  Defendants did not respond.

6.      Exhibit E is "United States' Notice of Taking Depositions of Defendants' Experts and Defendant Benjamin K. Sharfi," which the United States served on May 6, 2022.

7.      Exhibit F are document requests and interrogatories that the United States propounded to Defendants on May 16, 2022; they all pertain to experts that Defendants had identified on April 8, 2022 (including Albert Armada) or expert reports that Defendants had produced on April 8, 2022.

8.      Exhibit G is an email dated May 18, 2022, from counsel for the United States to counsel for Defendants.

9.      Exhibit H is an email dated May 19, 2022, from counsel for Defendants to counsel for the United States.

10.     Exhibit I is "United States' Re-Notice of Taking Deposition of Albert Armada," which the United States served on May 23, 2022.

11.     Exhibit J is "Defendants' Amended Expert Disclosure," which Defendants served on May 27, 2022.

12.     Exhibit K is a 27-page document entitled "An Appraisal of a 9.92-acre Vacant Agricultural Parcel located along the North Side of SW Martin Highway between SW 84th Avenue and SW 78th Avenue, Palm City, FL  34990," which Defendants produced to the United States on May 27, 2022.

13.     On May 31, 2022, counsel for the United States conferred via telephone with counsel for Defendants about the United States' intention to file a Motion to Strike based on its concerns about the untimeliness of Defendants' identification of Mick Stiksma as a purported expert witness and the untimeliness and Rule 26(a) deficiency of Mr. Stiksma's purported expert report.  The parties did not resolve their dispute.  The United States informed Defendants that the provisionally scheduled deposition of Albert Armada would not go forward on June 3, 2022, because it was clear that Defendants no longer intended to use him as an expert witness. Defendants suggested that the United States depose Mr. Stiksma instead of Mr. Armada (on June 3 or another date), but the United States responded that there was insufficient time left in the discovery period to prepare meaningfully for and take Mr. Stiksma's deposition.  Defendants suggested that there was no prejudice to the United States because, according to them, Mr. Stiksma "works at the same place" as Mr. Armada.  The United States disagreed.  The parties' conferral ended with the United States asking Defendants to explain their untimeliness, to which Defendants responded that they decline "at this point" to proffer an explanation.

14.     With regard to Defendants' representation that Mr. Stiksma "works at the same place" as Mr. Armada (CRE Valuation Services), the United States has not verified that notion. The sources we have checked do not reveal an association between Mr. Armada and CRE Valuation Services.  These sources include CRE's website

(https://www.crevaluationservices.com/our-team) and Mr. Armada's LinkedIn page
(https://www.linkedin.com/in/albertarmada).

15.     Exhibit L is "Defendants' Supplemental Expert Disclosure," which Defendants
served on June 2, 2022, at approximately 5:21 p.m. EST as the undersigned was finalizing the
Motion to Strike and this declaration.

16.     As of the date of this declaration, the parties have scheduled or proposed to take at
least five more depositions by the close of discovery on June 15, 2022.

* * *

I declare under penalty of perjury that the foregoing is true and correct.

Executed on June 2, 2022, in San Francisco, California.


_____

Andrew J. Doyle

# Exhibit A

Plaintiff's Expert Disclosures (Feb. 18, 2022)

## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF FLORIDA

UNITED STATES OF AMERICA,

*Plaintiff*,

v.

BENJAMIN K. SHARFI, in his personal and
fiduciary capacity as trustee of the Benjamin
Sharfi 2002 Trust, and NESHAFARM, INC.

*Defendants*.

Case No. 2:21-cv-14205-KAM

## PLAINTIFF'S EXPERT DISCLOSURES

Pursuant to Federal Rule of Civil Procedure 26(a)(2)(A), the Court's Amended Scheduling Order, and the parties' Rule 26(f) Conference Report, the United States discloses the identities of the following witnesses that the United States may use at trial to present evidence under Federal Rules of Evidence 702, 703, or 705:

1.      Lyndon C. Lee, Ph.D., L.C. Lee & Associates, Inc., 421 North Forest Street, Bellingham, Washington 98225;

2.      Dan Leistra-Jones, Industrial Economics, Inc., 2067 Massachusetts Avenue, Cambridge, MA 02140;

3.      Wade L. Nutter, Ph.D., Nutter & Associates, Inc., 360 Hawthorne Lane, Athens, GA 30606;

4.      Kai Coshow Rains, Ph.D., Coshow Environmental Inc., 408 Montrose Avenue, Temple Terrace, FL 33617;

5.      Randall L. Rex, MAI, Integra Realty Resources, 326 North Magnolia Avenue, Orlando, FL 32801;

6.      Scott R. Stewart, Ph.D., 3026 NW 62nd Street, Seattle, WA 98107.; and

7.      Michael M. Wylie, M.S., Wetland Resolutions, LLC, 100 Willowcrest Court, Roswell, GA 30075.

These disclosures are accompanied by the following reports, which will be produced today together with documents with production identifiers USAEXPERTS0000001 through USAEXPERTS0001056:

a.      U.S. Department of Justice Expert Team Report, prepared by Lyndon C. Lee, Ph.D., Wade L. Nutter, Ph.D., Kai Coshow Rains, Ph.D., Scott R. Stewart, Ph.D., Michael M. Wylie, M.S.;

b.      Retrospective Appraisal of Real Property, 2018 Valuation, prepared by Randall L. Rex, MAI;

c.      Retrospective Appraisal of Real Property, 2022 Valuation, prepared by Randall L. Rex, MAI;

d.      Economic Benefit Expert Opinions of Dan Leistra-Jones, prepared by Dan Leistra-Jones; and

e.      Ability to Pay Expert Opinions of Dan Leistra-Jones, prepared by Dan Leistra-Jones.

In providing these disclosures or reports (or portions thereof), the United States does not waive any argument it may have that Defendants bear the burden of proof with respect to any issue.

Dated:  February 18, 2022

TODD KIM
Assistant Attorney General

*/s/ Brandon N. Adkins*
BRANDON N. ADKINS (Bar ID No. A5502752)
ANDREW J. DOYLE (FL Bar No. 84948)
United States Department of Justice
Environment & Natural Resources Division
P.O. Box 7611
Washington, D.C. 20044
Tel: (202) 616-9174 (Adkins)
Tel: (415) 744-6469 (Doyle)
Fax: (202) 514-8865
Brandon.Adkins@usdoj.gov
Andrew.Doyle@usdoj.gov

JUAN ANTONIO GONZALEZ
United States Attorney

DEXTER LEE (FL Bar No. 936693)
Assistant United States Attorney
Southern District of Florida
99 N.E. 4th Street
Miami, FL 33132
Tel: (305) 961-9320
Fax: (305) 530-7679
DLee@usa.doj.gov

*Attorneys for Plaintiff*

<u>**CERTIFICATE OF SERVICE**</u>

I certify that a true and correct copy of the foregoing Plaintiff's Expert Disclosures was served on February 18, 2022, by email on counsel of record for Defendants, who consented in writing to service by email of discovery papers that must be served on a party.

*/s/ Brandon N. Adkins*
Brandon N. Adkins
United States Department of Justice

# Exhibit B

Defendants' Expert Disclosures (April 8, 2022)

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**
**FORT PIERCE DIVISION**

UNITED STATES OF AMERICA,

      Plaintiff,

vs.                            CASE NO.: 2:21-cv-14205-KAM

BENJAMIN K. SHARFI, in his personal and
fiduciary capacity as trustee of the Benjamin
Sharfi 2002 Trust, and NESHAFARM, INC.,

      Defendants.

_____/

## DEFENDANTS' EXPERT DISCLOSURES

Pursuant to Federal Rule of Civil Procedure 26(a)(2)(A), the Court's Amended Scheduling Order, and the parties' Rule 26(f) Conference Report, Defendants BENJAMIN K. SHARFI, in his personal and fiduciary capacity as trustee of the Benjamin Sharfi 2002 Trust, and NESHAFARM, INC., disclose the identities of the following witnesses that Defendants may use at trial to present evidence under Federal Rules of Evidence 702, 703, or 705:

1.      Jerald S. Ault, Ph.D, University of Miami, Rosenstiel School of Marine and Atmospheric Science (RSMAS), 4600 Rickenbacker Causeway, Miami, Florida 33149;

2.      Richard T. Creech, P.E., P.S.M., Creech Consulting, Inc., PO Box 327, Stuart, Florida 34995;

3.      W. Michael Dennis, Ph.D., Breedlove, Dennis & Associates, Inc., 330 West Canton Avenue, Winter Park, Florida 32789; and,

4.      Albert Armada, MAI, SRA, CCIM, CRE Valuation Services Treasure Coast, 100 S.W. Albany Avenue, Suite 200, Stuart, Florida 34994.

These disclosures are accompanied by the following reports, which will be produced today together with documents with production identifiers SHARFIEXPERTS0000001 through SHARFIEXPERTS0000401:

a.   Rebuttal Report, prepared by Jerald S. Ault, Ph.D;

b.   Rebuttal Report, prepared by Richard T. Creech, P.E., P.S.M.; and,

c.   Analysis and Rebuttal to U.S. Department of Justice Expert Team Report, prepared by W. Michael Dennis, Ph.D.[1]

In providing these disclosures or reports (or portions thereof), Defendants do not waive any argument they may have that Plaintiff bears the burden of proof with respect to any issue.

Dated:  April 8, 2022

Respectfully submitted,

/s/  Michael G. Zilber
T. Neal McAliley
Florida Bar No. 172091
nmcaliley@carltonfields.com
Michael G. Zilber
Florida Bar No. 1019146
mzilber@carltonfields.com
CARLTON FIELDS, P.A.
2 MiamiCentral
700 NW 1st Avenue, Suite 1200
Miami, Florida 33136
Tel: (305) 530-0050
Fax: (305) 530-0055
*Attorneys for Defendants*

---

[1] The Report, prepared by Albert Armada, shall be produced at a later date.

2

129049351.1

## SERVICE LIST

***United States of America vs. NeshaFarm, Inc., et al.***
**United States District Court, Southern District of Florida**
**Case No.: 2:21-cv-14205-KAM**

| | |
|---|---|
| BRANDON N. ADKINS<br>Bar ID: A5502752<br>ANDREW DOYLE<br>FL Bar No.: 84948<br>United States Department of Justice<br>Environment & Natural Resources Division<br>PO Box 7611<br>Washington, DC 2004<br>Tel: (202) 616-9174 (Adkins)<br>Tel: (415) 744-6469 (Doyle)<br>Fax: (202) 514-8865<br>Brandon.Adkins@usdoj.gov<br>Andrew.Doyle@usdoj.gov<br><br>JUAN ANTONIO GONZALEZ<br>Acting United States Attorney<br><br>DEXTER LEE<br>FL Bar No.: 936693<br>Assistant United States Attorney<br>Southern District of Florida<br>99 N.E. 4th Street<br>Miami, FL 33132<br>Tel: (305) 931-9320<br>Fax: (305) 530-7679<br>DLee@usa.doj.gov<br><br>*Attorneys for Plaintiff, United States of America* | CHRISTOPHER F. HAMILTON<br>FL Bar No.: 98527<br>Sharfi Holdings, Inc.<br>3731 NE Pineapple Avenue<br>2nd Floor<br>Jensen Beach, FL 34957<br>Tel: 813-416-2352<br>chamilton@sharfiholding.com<br><br>*Attorney for Defendants* |

# Exhibit C

Email (April 20, 2022)

| | |
|---|---|
| **From:** | Adkins, Brandon (ENRD) |
| **To:** | McAliley, Neal |
| **Cc:** | Doyle, Andrew (ENRD); Zilber, Michael G.; Chris Hamilton |
| **Subject:** | RE: USA v. Sharfi & Neshafarm -- deposition scheduling |
| **Date:** | Wednesday, April 20, 2022 2:27:00 PM |
| **Attachments:** | image001.png |

Neal,

Here are our responses. Thanks again.

Lee and Stewart depositions

Unfortunately the dates you proposed for Drs. Lee and Stewart in May will not work for us. We propose to schedule Dr. Stewart on June 1 (we are awaiting confirmation from Dr. Stewart on this date but did not want to hold up our response to you) and Dr. Lee on June 3. We confirm that both depositions will be taken remotely and begin at 8:00 a.m. Pacific (11:00 a.m. Eastern). Also, if you intend to use exhibits during the deposition (other than the expert report and its appendices), it would expedite the depositions if you would provide those exhibits to us via email by May 27. We will then print out hard copies for each witness to use during his deposition.

Leistra-Jones deposition

Mr. Leistra-Jones is also available May 12 to 13 or 25 to 27 either remotely or, if convenient for you, in Washington, DC.

Depositions of Corps and SFWMD witnesses and Eddie Huggins

We can confirm your proposed schedule for the Corps and SFWMD witnesses and Eddie Huggins:

May 16 – Jonathan Pempek
May 17 – Robert Halbert
May 18 – Samantha Burns
May 19 – SFWMD witnesses
May 20 – Eddie Huggins

Do you intend to depose all six of the SFWMD employees that you listed in your email below on May 19? We will also have some questions for these witnesses, so please take that into account when arranging the schedule for the day. I appreciate it will be a long day and am in favor of trying to get everyone done as you proposed.

Thank you for offering to host the depositions at your offices in West Palm Beach, which is also acceptable for us. Can you please confirm the office address is 525 Okeechobee Boulevard, Suite 1200, West Palm Beach, FL 33401, so I can include it in the subpoena to Eddie Huggins?

It would be efficient to use the same court reporting service for Mr. Huggins's deposition as you will use for the other depositions that week. Can you please share the name of the court reporter you intend to hire so I can check whether we can use the same reporter for Mr.

Huggins' deposition?

<u>Depositions of Defendants and Kevin Kryzda</u>

Thank you for offering to host the depositions of the Defendants and Mr. Kryzda, but we intend to take these depositions remotely.

We cannot fit Mr. Kryzda into the week of May 16 in light of our agreement above. We propose to schedule Mr. Kryzda on June 8–10 or 13–15. Would any of those dates work?

You proposed to schedule Mr. Sharfi's deposition the week of May 30. In light of the Memorial Day holiday and our proposed dates later that week for Drs. Lee and Stewart, we will need to schedule Mr. Sharfi's deposition a different week. We propose June 8–10 or 13–15.

You offered to schedule NeshaFarm's 30(b)(6) deposition the week of May 30. In light of the Memorial Day holiday and our proposed dates later that week for Drs. Lee and Stewart, we will need to schedule NeshaFarm's deposition a different week. We propose the week of June 6.

<u>Depositions of Defendants' Experts</u>

On April 8, 2022, Defendants disclosed four expert witnesses. We intend to depose each expert witness. We would also take these depositions remotely. We propose to schedule their depositions as follows:

Jerald Ault – weeks of May 9 or 23
Richard Creech – May 9 or 10, or week of May 23
W. Michael Dennis – weeks of May 9 or 23
Albert Armada – May 9 or 10, or week of May 23

Defendants' disclosures stated that the report by Albert Armada "shall be produced at a later date." Any report by Mr. Armada is now untimely under the Court's Scheduling Order, as amended, which set a deadline for rebuttal expert witness disclosures of April 8, 2022. When do you intend to produce Mr. Armada's report?

Our efforts to schedule Mr. Armada's deposition are without waiver of any rights or defenses regarding the admissibility of testimony by Mr. Armada.

Best,
Brandon

_____

**Brandon N. Adkins**
United States Department of Justice
Environment and Natural Resources Division
(202) 616-9174 | brandon.adkins@usdoj.gov

**From:** Adkins, Brandon (ENRD)
**Sent:** Tuesday, April 19, 2022 5:51 PM
**To:** McAliley, Neal <NMcAliley@carltonfields.com>

**Cc:** Doyle, Andrew (ENRD) <Andrew.Doyle@usdoj.gov>; Zilber, Michael G. <MZilber@carltonfields.com>; Chris Hamilton <CHamilton@sharfiholding.com>
**Subject:** RE: USA v. Sharfi & Neshafarm -- deposition scheduling

Thanks, Neal. We're reviewing and will get back to you shortly.

———
**Brandon N. Adkins**
United States Department of Justice
Environment and Natural Resources Division
(202) 616-9174 | brandon.adkins@usdoj.gov

---

**From:** McAliley, Neal <NMcAliley@carltonfields.com>
**Sent:** Tuesday, April 19, 2022 4:48 PM
**To:** Adkins, Brandon (ENRD) <Brandon.Adkins@usdoj.gov>
**Cc:** Doyle, Andrew (ENRD) <Andrew.Doyle@usdoj.gov>; Zilber, Michael G. <MZilber@carltonfields.com>; Chris Hamilton <CHamilton@sharfiholding.com>
**Subject:** [EXTERNAL] RE: USA v. Sharfi & Neshafarm -- deposition scheduling

Brandon:
   Thank you for your emails regarding deposition scheduling.  We have been working on the dates from our end, and we are in general agreement.  Here is what we would propose:

Lee and Stewart Depositions
   You suggested that we do them the same week so that Andy need only do a single trip, which is fine with us.  May 4 and 6 will not work for me, however, because I have a conflict those days.  However, I could do them on Monday May 2 and Tuesday May 3, and if those days don't work, I also could do them Tuesday May 10 and Wednesday May 11.   I would propose to do these remotely, like the last two expert depositions, and start at 11:00am Eastern time.

Depositions of Corps and SFWMD Witnesses and Eddie Huggins
   You indicated that suggested the weeks of May 16-20 and May 23-26 would work for Jonathan Pempek, Robert Halbert, and Samantha Burns.  You also suggested that we do the SFWMD witnesses and Eddie Huggins the same week as the Corps witnesses.  That basic schedule works for us.  We propose to schedule those witnesses as follows:  Pempek Monday May 16, Halbert May 17, Burns May 18, SFWMD witnesses May 19, and Huggins May 20.  We know that would be a long week, but we might as well get it done.  If you think that is too much for one week, then maybe we consider moving one or two witnesses to the following week (May 23-26).   For location, we can do them at my firm's office in West Palm Beach, which is comfortable and centrally located.

Depositions of Defendant Representatives.
   Kevin Kryzda is available the week of May 16.  Ben Sharfi is available the week of May 30.  We also would propose to have the Neshafarm representative the week of May 30.   For location, my firm's office in West Palm Beach is available.

   Other depositions.  The Randall Rex and Kai Coshow Rains depositions already are on calendar for April 27 and April 29.  We will need to take Dan Leistra-Jones deposition before June 15.  Please let

# Exhibit D

Email (April 25, 2022)

| | |
|---|---|
| **From:** | Adkins, Brandon (ENRD) |
| **To:** | McAliley, Neal; Chris Hamilton; Zilber, Michael G. |
| **Cc:** | Doyle, Andrew (ENRD) |
| **Subject:** | RE: USA v. Sharfi & Neshafarm -- deposition scheduling |
| **Date:** | Monday, April 25, 2022 9:15:00 AM |
| **Attachments:** | image001.png |

Thanks, Neal. We're making progress. Here are our responses.

Expert Depositions

We confirm Lyndon Lee's remote deposition on May 4, starting at 11:00 a.m. Eastern.

We understand your desire to depose Plaintiff's experts before we depose Defendants' experts, but there is nothing in the Federal or Local Rules or the Scheduling Order, as amended, that requires that Defendants' experts (rebuttal or otherwise) be deposed after Plaintiff's experts. In fact, the only sequencing requirement is that the expert's report, when required, must first be provided. Fed. R. Civ. P. 26(b)(4)(A). With the exception of Albert Armanda, Defendants provided reports for their expert witnesses. Those experts are now eligible for deposition. Moreover, on February 18—shortly after we disclosed Plaintiff's experts—we sent you several weeks of availability in March and April for all of Plaintiff's experts. If you were planning to insist that Defendants depose Plaintiff's experts first, you could have scheduled Dr. Stewart's deposition within one of the many weeks we originally offered. But most of the dates we proposed passed, and you did not ask for additional dates for Dr. Stewart until March 23.

That said, Dr. Stewart is available for a remote deposition on May 23, starting at 11:00 a.m. Eastern. This is the only date in May that we can schedule Dr. Stewart. We propose to schedule Defendants' four expert witnesses on the remaining days that week—that is, May 24 to 27. This accommodation would fill the week of May 23, so we propose again to schedule Dan Leistra-Jones on May 12 or 13. If this arrangement is amenable to Defendants, please confirm and let us know if there are dates that Defendants' experts prefer within the May 24 to 27 block. If not, we will need to schedule some of Defendants' experts the week of May 9, which is currently wide open.

You have not responded regarding why Defendants failed to provide a timely report for Mr. Armanda or when Defendants intend to provide that report. Please explain.

Defendants' and Kevin Kryzda's Depositions

You had offered the week of May 30 for Mr. Sharfi's and NeshaFarm's Rule 30(b)(6) depositions. We asked for alternative dates in light of the holiday and the proposed dates we had offered for Drs. Lee and Stewart that same week. The schedule is shaping up differently. Now the week of May 30 is free. We should be able to fit in two depositions irrespective of the holiday on Monday. We can schedule Mr. Sharfi's remote deposition on June 1, starting at 9:00 a.m. Eastern, and NeshaFarm's remote Rule 30(b)(6) deposition on June 2, starting at 11:00 a.m. Eastern. Please confirm.

That should just leave Mr. Kryzda to schedule. We'll wait to hear back from you whether June 8–10 or 13–15 works for Mr. Kryzda's remote deposition.

<u>Number of Depositions</u>

On March 24, we asked whether Defendants have a proposal with respect to the number of depositions they will take before the close of discovery. We haven't heard back from you on this issue yet. Please let us know how you'd like to proceed.

Thanks again.

Best,
Brandon
_____

**Brandon N. Adkins**
United States Department of Justice
Environment and Natural Resources Division
(202) 616-9174 | brandon.adkins@usdoj.gov

---

**From:** McAliley, Neal <NMcAliley@carltonfields.com>
**Sent:** Friday, April 22, 2022 4:16 PM
**To:** Adkins, Brandon (ENRD) <Brandon.Adkins@usdoj.gov>
**Cc:** Doyle, Andrew (ENRD) <Andrew.Doyle@usdoj.gov>; Zilber, Michael G.
<MZilber@carltonfields.com>; Chris Hamilton <CHamilton@sharfiholding.com>
**Subject:** [EXTERNAL] RE: USA v. Sharfi & Neshafarm -- deposition scheduling

Brandon:
  Thank you for your email.  It looks like the parties have made a lot of progress on deposition scheduling, but there are a few issues still to work through.

<u>Depositions of Corps Witnesses, SFWMD Witnesses, and Eddie Huggins</u>
  Your dates all look good to us.   We will get out the deposition notices for the Corps and SFWMD witnesses (May 16-19), and we assume that you will do the notice for Eddie Huggins on May 20. Let's plan for 9:00am starts.  You have the right address for Carlton Fields' West Palm Beach office. Regarding the SFWMD witnesses, our current thinking is that we will not be taking all six individuals, but we are still nailing that down.  When we have greater clarity on that point, I will let you know.

<u>Expert Depositions</u>
   We are working on dates when our expert witnesses are available for deposition.  Since our witnesses are rebuttal experts, we think that we should be able to take the depositions of your experts whose opinions our witnesses are rebutting first.  As a practical matter, this is only an issue with two of your witnesses (Lyndon Lee and Scott Stewart), because we already have taken the depositions of Wade Nutter and Michael Wylie, and are taking the depositions of Randall Rex and Kai Coshow Rains next week.
   You previously offered May 4 as a date that Lyndon Lee is available.  I am able to move my conflict that day, so let's plan on taking his deposition on May 4.  Consistent with your earlier email, we will do this deposition remotely and we can start at 11:00am Eastern Time.  I cannot move my conflict on May 6, which is the date you previously proposed for Scott Stewart's deposition.  Please give us dates to take Dr. Stewart's deposition before the week of May 23, so that we can try to schedule the depositions of Michael Dennis, Jerald Ault, Richard Creech and Albert Armada that week.  All of

# Exhibit E

Dep. Notice (May 6, 2022)

## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF FLORIDA

UNITED STATES OF AMERICA,

         *Plaintiff*,

   v.

BENJAMIN K. SHARFI, in his personal and
fiduciary capacity as trustee of the Benjamin
Sharfi 2002 Trust, and NESHAFARM, INC.

         *Defendants*.

Case No. 2:21-cv-14205-KAM

### UNITED STATES' NOTICE OF TAKING DEPOSITIONS OF DEFENDANTS' EXPERTS AND DEFENDANT BENJAMIN K. SHARFI

Notice is hereby given that pursuant to Federal Rule of Civil Procedure 30 the deposition of the persons whose names and addresses are stated below will be taken upon oral examination before an officer authorized by law to administer oaths at the time and place noted. These depositions will be recorded by a stenographic reporter and videographer. The depositions are scheduled on dates to which counsel for the parties agreed.

| Deponent | Date/Time | Location |
| --- | --- | --- |
| Richard Creech<br>P.O. Box 327<br>Stuart, Florida 34995 | May 24, 2022, at 9:00 a.m. | Via Zoom or similar platform. A link will be provided prior to the deposition. |
| Albert Armada<br>100 S.W. Albany Avenue #200<br>Stuart, Florida 34994 | May 25, 2022, at 11:00 a.m. | Via Zoom or similar platform. A link will be provided prior to the deposition. |
| Jerald Ault<br>4720 N.W. 85th Avenue #409<br>Doral, Florida 33166 | May 26, 2022, at 9:00 a.m. | Via Zoom or similar platform. A link will be provided prior to the deposition. |

| Deponent | Date/Time | Location |
|---|---|---|
| W. Michael Dennis<br>330 West Canton Avenue<br>Winter Park, Florida 32789 | May 27, 2022, at 9:00 a.m. | Via Zoom or similar platform. A link will be provided prior to the deposition. |
| Benjamin K. Sharfi<br>c/o Neal McAliley<br>Carlton Fields, P.A.<br>2 MiamiCentral<br>700 N.W. 1st Avenue #1200<br>Miami, Florida 33136 | June 1, 2022, at 9:00 a.m. | Via Zoom or similar platform. A link will be provided prior to the deposition. |

Dated: May 6, 2022

*/s/ Brandon N. Adkins*
BRANDON N. ADKINS (Bar ID No. A5502752)
ANDREW J. DOYLE (FL Bar No. 84948)
United States Department of Justice
Environment & Natural Resources Division
P.O. Box 7611
Washington, D.C. 20044
Tel: (202) 616-9174
Fax: (202) 514-8865
Brandon.Adkins@usdoj.gov
Andrew.Doyle@usdoj.gov

DEXTER LEE (FL Bar No. 936693)
Assistant United States Attorney

*Attorneys for the United States*

**CERTIFICATE OF SERVICE**

I certify that on May 6, 2022, I served the foregoing United States' Notice of Taking

Depositions of Defendants' Experts and Defendant Benjamin K. Sharfi by email on counsel for

Defendants, who consented in writing to electronic service of discovery documents.

*/s/ Brandon N. Adkins*
Brandon N. Adkins
United States Department of Justice

# Exhibit F

Doc. Requests and Interrogatories (May 16, 2022)

## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF FLORIDA

UNITED STATES OF AMERICA,

        *Plaintiff*,

    v.

BENJAMIN K. SHARFI, in his personal and
fiduciary capacity as trustee of the Benjamin
Sharfi 2002 Trust, and NESHAFARM, INC.

        *Defendants*.

Case No. 2:21-cv-14205-KAM

## UNITED STATES' SECOND SET OF REQUESTS TO DEFENDANTS BENJAMIN K. SHARFI AND NESHAFARM, INC. FOR PRODUCTION OF DOCUMENTS AND ELECTRONICALLY STORED INFORMATION

Pursuant to Federal Rule of Civil Procedure 34, Plaintiff, the United States of America, requests that Defendants Benjamin K. Sharfi and NeshaFarm, Inc. (together, "you"), by June 15, 2022, produce to the United States the following documents and electronically stored information ("ESI") in your possession, custody, or control.

## GENERAL INSTRUCTIONS

The documents and ESI requested shall be produced in a searchable PDF form, where possible. Where not possible, the parties will meet and confer regarding the appropriate, proportional, and reasonable format of production.

The term "Site" throughout these Requests has the same meaning as in the Amended Complaint (ECF No. 21).

You are expressly instructed to produce documents within your possession, custody, or control regardless of whether those documents are stored on information systems for General Micro Systems, Inc., or related corporate entities.

## REQUESTS FOR PRODUCTION

1. All expert reports prepared by Jerald S. Ault, Richard T. Creech, W. Michael Dennis, and Albert Armada since May 16, 2018 that relate to the Clean Water Act, wetlands, or water quality in any way, as well as appraisals of rural property anywhere within the boundaries of the United States District Court for the Southern District of Florida.

2. All transcripts of testimony of any kind by Jerald S. Ault, Richard T. Creech, W. Michael Dennis, and Albert Armada since May 16, 2018.

3. All field notes, wetland delineation data forms, Clean Water Act jurisdiction data forms, data sheets, or other data prepared or collected by or on behalf of Jerald S. Ault, Richard T. Creech, W. Michael Dennis, and Albert Armada in connection with their work on *United States v. Sharfi* et al., Case No. 2:21-cv-14205-KAM-SM.

Dated: May 16, 2022                     Respectfully submitted,

                                        TODD KIM
                                        Assistant Attorney General

                                        */s/ Jeffrey Hughes*
                                        BRANDON N. ADKINS (Bar ID No. A5502752)
                                        ANDREW J. DOYLE (FL Bar No. 84948)
                                        JEFFREY HUGHES (Bar ID No. A5502897)
                                        United States Department of Justice
                                        Environment & Natural Resources Division
                                        P.O. Box 7611
                                        Washington, D.C. 20044
                                        Tel: (202) 616-9174
                                        Fax: (202) 514-8865
                                        Brandon.Adkins@usdoj.gov
                                        Andrew.Doyle@usdoj.gov
                                        Jeffrey.Hughes@usdoj.gov

                                        JUAN ANTONIO GONZALEZ
                                        Acting United States Attorney

                                        DEXTER LEE (FL Bar No. 936693)
                                        Assistant United States Attorney

                                        *Attorneys for the United States*

**CERTIFICATE OF SERVICE**

I certify that on May 16, 2022, I served the United States' Second Set of Requests to Defendants Benjamin K. Sharfi and NeshaFarm, Inc. for Production of Documents and Electronically Stored Information by email on counsel for Defendants Benjamin K. Sharfi and NeshaFarm, Inc., who consented in writing to electronic service of discovery documents.

*/s/ Jeffrey Hughes*
Jeffrey Hughes
United States Department of Justice

# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF FLORIDA

UNITED STATES OF AMERICA,

        *Plaintiff*,

   v.

BENJAMIN K. SHARFI, in his personal and
fiduciary capacity as trustee of the Benjamin
Sharfi 2002 Trust, and NESHAFARM, INC.

        *Defendants*.

Case No. 2:21-cv-14205-KAM-SM

## UNITED STATES' SECOND SET OF INTERROGATORIES TO DEFENDANT BENJAMIN K. SHARFI

Pursuant to Federal Rule of Civil Procedure 33, Plaintiff, the United States of America, requests that Defendant Benjamin K. Sharfi answer the following interrogatories, fully and separately, in writing, under oath, and signed by Defendant Benjamin K. Sharfi by June 15, 2022.

### INSTRUCTIONS AND DEFINITIONS

1.      These Interrogatories are continuing in nature and the obligations imposed by Federal Rules of Civil Procedure 26 and 33 are hereby incorporated by reference herein, including, but not limited to, the duty imposed by Rule 26(e) to supplement or amend responses if you obtain further or different information between the date of your responses and the termination of any trial on the matters alleged in the Amended Complaint.

2.      When used in connection with an individual, the term "identify" means to set forth the full name, together with known aliases, present and past residence address, telephone number, email address, employer, and any other information needed to locate that person. In the event the name of such individual is not known to you, furnish any information you have regarding such individual, including but not limited to place of employment, the place of your contacts with him or her, a physical description, and any other identifying information in your possession.

3.      When the term "identify" is used in reference to something other than an individual, describe it with the detail requested in the interrogatory.

4.      The term "person" means and includes individuals, corporations, associations, and any other kind of business or legal entity including, without limitation, corporations, partnerships, companies, proprietorships, associations, forums, trusts, estates, government agencies or bodies (federal, state, local, etc.), and other organizations, formal or informal, and any other organization or entity.

1

5.      The term "Site" has the same meaning as in the Amended Complaint

(ECF No. 21).

6.      The phrase "state all facts" means to explain, with specificity, each and every

piece of information requested.

7.      The term "you" or "your" means Defendant Benjamin K. Sharfi, anyone acting on

behalf of Defendant Benjamin K. Sharfi, the Benjamin Sharfi 2002 Trust, and any employee,

agent, or contractor of the Benjamin Sharfi 2002 Trust.

## INTERROGATORIES

21.     Identify the total amounts paid by you to each of Jerald S. Ault, Richard T.

Creech, W. Michael Dennis, and Albert Armada in connection with *United States v. Sharfi* et al.,

Case No. 2:21-cv-14205-KAM-SM.

Dated: May 16, 2022

TODD KIM
Assistant Attorney General

*/s/ Jeffrey Hughes*
BRANDON N. ADKINS (Bar ID No. A5502752)
ANDREW J. DOYLE (FL Bar No. 84948)
JEFFREY HUGHES (Bar ID No. A5502897)
United States Department of Justice
Environment & Natural Resources Division
P.O. Box 7611
Washington, D.C. 20044
Tel: (202) 616-9174
Fax: (202) 514-8865
Brandon.Adkins@usdoj.gov
Andrew.Doyle@usdoj.gov
Jeffrey.Hughes@usdoj.gov

JUAN ANTONIO GONZALEZ
United States Attorney

DEXTER LEE (FL Bar No. 936693)
Assistant United States Attorney

*Attorneys for the United States*

**CERTIFICATE OF SERVICE**

I certify that on May 16, 2022, I served the United States' Second Set of Interrogatories

to Defendant Benjamin K. Sharfi by email on counsel for Defendant Benjamin K. Sharfi, who

consented in writing to electronic service of discovery documents.

/s/ Jeffrey Hughes
Jeffrey Hughes
United States Department of Justice

# Exhibit G

Email (May 18, 2022)

| From: | Adkins, Brandon (ENRD) |
|---|---|
| To: | McAliley, Neal; Chris Hamilton; Zilber, Michael G. |
| Cc: | Doyle, Andrew (ENRD); Hughes, Jeffrey (ENRD) |
| Subject: | United States v. Sharfi - postponement of Scott Stewart and Albert Armada depositions |
| Date: | Wednesday, May 18, 2022 1:07:20 PM |

Neal,

As discussed, I'm writing to confirm that we will need to postpone Scott Stewart's remote deposition scheduled for May 23, 2022. Dr. Stewart is in the ICU after having a significant health event. We will get you proposed dates as soon as possible. In the meantime, would you please confirm withdrawal of his deposition notice to be rescheduled for a later date?

I'm also writing to confirm that at Defendants' request we withdraw the notice of Albert Armada's deposition currently scheduled for May 25, 2022 to be rescheduled for a later date. You asked me to send some proposed dates for the rescheduled deposition. We could take Mr. Armada's remote deposition on June 3, 7, 10, or 14. Defendants have not served a report for Mr. Armada. Our provisionally scheduling his deposition is without waiver of any arguments or defenses regarding Mr. Armada's testimony in this case.

Thanks again.

Best,
Brandon

_____
**Brandon N. Adkins**
United States Department of Justice
Environment and Natural Resources Division
(202) 616-9174 | brandon.adkins@usdoj.gov

# Exhibit H

Email (May 19, 2022)

| | |
|---|---|
| **From:** | Chris Hamilton |
| **To:** | McAliley, Neal; Adkins, Brandon (ENRD); Zilber, Michael G. |
| **Cc:** | Doyle, Andrew (ENRD); Hughes, Jeffrey (ENRD) |
| **Subject:** | [EXTERNAL] Re: United States v. Sharfi - postponement of Scott Stewart and Albert Armada depositions |
| **Date:** | Thursday, May 19, 2022 1:44:30 PM |

Brandon,

Let's please hold June 3, 2022 for the Armada/property valuation expert deposition. Assuming it will be on Zoom and starting at 9 AM, correct?

Thanks,
Chris

**Christopher F. Hamilton**

Deputy General Counsel | Sʜᴀʀғɪ Hᴏʟᴅɪɴɢs, Iɴᴄ.

Cell: (813) 416-2352 | E-Mail

3731 NE Pineapple Ave., 2nd Floor, Jensen Beach, FL 34957

 **SHARFI HOLDINGS**
EQUITY MANAGEMENT

**From:** McAliley, Neal <NMcAliley@carltonfields.com>
**Date:** Wednesday, May 18, 2022 at 4:09 PM
**To:** Adkins, Brandon (ENRD) <Brandon.Adkins@usdoj.gov>, Chris Hamilton <CHamilton@sharfiholding.com>, Zilber, Michael G. <MZilber@carltonfields.com>
**Cc:** Doyle, Andrew (ENRD) <Andrew.Doyle@usdoj.gov>, Hughes, Jeffrey (ENRD) <Jeffrey.Hughes@usdoj.gov>
**Subject:** RE: United States v. Sharfi - postponement of Scott Stewart and Albert Armada depositions

Brandon:

Thank you for your email. First, we agree to postpone Dr. Stewart's deposition scheduled for May 23, and hope that he has a speedy recovery. Second, we will coordinate regarding dates for the Armada/property valuation expert and get back to you.

Best,
Neal

**Neal McAliley**
Attorney at Law | Carlton Fields
2 MiamiCentral
700 NW 1st Avenue, Ste. 1200 | Miami, Florida 33136-4118
Direct: 305.530.4039 | Fax: 305.530.0055
NMcAliley@carltonfields.com

**From:** Adkins, Brandon (ENRD) <Brandon.Adkins@usdoj.gov>
**Sent:** Wednesday, May 18, 2022 4:07 PM
**To:** McAliley, Neal <NMcAliley@carltonfields.com>; Chris Hamilton
<CHamilton@sharfiholding.com>; Zilber, Michael G. <MZilber@carltonfields.com>
**Cc:** Doyle, Andrew (ENRD) <Andrew.Doyle@usdoj.gov>; Hughes, Jeffrey (ENRD)
<Jeffrey.Hughes@usdoj.gov>
**Subject:** United States v. Sharfi - postponement of Scott Stewart and Albert Armada depositions

Neal,

As discussed, I'm writing to confirm that we will need to postpone Scott Stewart's remote deposition scheduled for May 23, 2022. Dr. Stewart is in the ICU after having a significant health event. We will get you proposed dates as soon as possible. In the meantime, would you please confirm withdrawal of his deposition notice to be rescheduled for a later date?

I'm also writing to confirm that at Defendants' request we withdraw the notice of Albert Armada's deposition currently scheduled for May 25, 2022 to be rescheduled for a later date. You asked me to send some proposed dates for the rescheduled deposition. We could take Mr. Armada's remote deposition on June 3, 7, 10, or 14. Defendants have not served a report for Mr. Armada. Our provisionally scheduling his deposition is without waiver of any arguments or defenses regarding Mr. Armada's testimony in this case.

Thanks again.

Best,
Brandon

_____
**Brandon N. Adkins**
United States Department of Justice
Environment and Natural Resources Division
(202) 616-9174 | brandon.adkins@usdoj.gov

# Exhibit I

Depo. Re-Notice (May 23, 2022)

# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF FLORIDA

UNITED STATES OF AMERICA,

          *Plaintiff*,

    v.

BENJAMIN K. SHARFI, in his personal and
fiduciary capacity as trustee of the Benjamin
Sharfi 2002 Trust, and NESHAFARM, INC.

          *Defendants*.

Case No. 2:21-cv-14205-KAM

## UNITED STATES' RE-NOTICE OF TAKING DEPOSITION OF ALBERT ARMADA

Notice is hereby given that pursuant to Federal Rule of Civil Procedure 30 and at the request of Defendants' counsel, the deposition of Albert Armada that was previously scheduled on May 25, 2022, at 11:00 a.m., is rescheduled as provided below. The deposition will be taken upon oral examination before an officer authorized by law to administer oaths at the time and place noted. The deposition will be recorded by a stenographic reporter and videographer.

| Deponent | Date/Time | Location |
|---|---|---|
| Albert Armada<br>100 S.W. Albany Avenue #200<br>Stuart, Florida 34994 | **June 3, 2022, at 11:00 a.m.** | Via Zoom or similar platform. A link will be provided prior to the deposition. |

Dated: May 23, 2022

*/s/ Brandon N. Adkins*
BRANDON N. ADKINS (Bar ID No. A5502752)
ANDREW J. DOYLE (FL Bar No. 84948)
JEFFREY HUGHES (Bar ID No. A5502897)
United States Department of Justice
Environment & Natural Resources Division
P.O. Box 7611
Washington, D.C. 20044
Tel: (202) 616-9174
Fax: (202) 514-8865
Brandon.Adkins@usdoj.gov
Andrew.Doyle@usdoj.gov
Jeffrey.Hughes@usdoj.gov

DEXTER LEE (FL Bar No. 936693)
Assistant United States Attorney

*Attorneys for the United States*

**CERTIFICATE OF SERVICE**

I certify that on May 23, 2022, I served the foregoing United States' Re-Notice of Taking

Deposition of Albert Armada by email on counsel for Defendants, who consented in writing to

electronic service of discovery documents.

*/s/ Brandon N. Adkins*
Brandon N. Adkins
United States Department of Justice

# Exhibit J

Defendants' Amended Expert Disclosure (May 27, 2022)

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**
**FORT PIERCE DIVISION**

UNITED STATES OF AMERICA,

     Plaintiff,

vs.                            CASE NO.: 2:21-cv-14205-KAM

BENJAMIN K. SHARFI, in his personal and
fiduciary capacity as trustee of the Benjamin
Sharfi 2002 Trust, and NESHAFARM, INC.,

     Defendants.

_____/

**DEFENDANTS' AMENDED EXPERT DISCLOSURE**

Pursuant to Federal Rule of Civil Procedure 26(a)(2)(A), the Court's Amended Scheduling Order, and the parties' Rule 26(f) Conference Report, Defendants BENJAMIN K. SHARFI, in his personal and fiduciary capacity as trustee of the Benjamin Sharfi 2002 Trust, and NESHAFARM, INC., amend its Expert Disclosures, served on April 8, 2022, and disclose the identity of the following witness that Defendants may use at trial to present evidence under Federal Rules of Evidence 702, 703, or 705:

1.      Mick Stiksma, MAI, MRICS, Managing Partner, CRE Valuation Services, 9655 S Dixie Highway, Suite 302, Miami, Florida 33156.

Mr. Stiksma shall serve as Defendants expert in substitution of Albert Armada, MAI, SRA, CCIM.

This disclosure is accompanied by the following report, which will be produced today together with documents with production identifiers SHARFIEXPERTS0000403 through SHARFIEXPERTS0000429:

129780846.1

a.      An Appraisal of A 9.92-Acre Vacant Agricultural Parcel Located Along The North Side of SW Martin Highway between SW 84th Avenue and SW 78th Avenue Palm City, FL 34990, prepared by CRE Valuation Services.

In providing this disclosures or report (or portions thereof), Defendants do not waive any argument they may have that Plaintiff bears the burden of proof with respect to any issue.

Dated:  May 27, 2022

Respectfully submitted,

/s/  Michael G. Zilber
T. Neal McAliley
Florida Bar No. 172091
nmcaliley@carltonfields.com
Michael G. Zilber
Florida Bar No. 1019146
mzilber@carltonfields.com
CARLTON FIELDS, P.A.
2 MiamiCentral
700 NW 1st Avenue, Suite 1200
Miami, Florida 33136
Tel: (305) 530-0050
Fax: (305) 530-0055
*Attorneys for Defendants*

## SERVICE LIST

*United States of America vs. NeshaFarm, Inc., et al.*
**United States District Court, Southern District of Florida**
**Case No.: 2:21-cv-14205-KAM**

| | |
|---|---|
| BRANDON N. ADKINS<br>Bar ID: A5502752<br>ANDREW DOYLE<br>FL Bar No.: 84948<br>JEFFREY HUGHES<br>Bar ID: A5502897<br>United States Department of Justice<br>Environment & Natural Resources Division<br>PO Box 7611<br>Washington, DC 2004<br>Tel: (202) 616-9174 (Adkins)<br>Tel: (415) 744-6469 (Doyle)<br>Fax: (202) 514-8865 | CHRISTOPHER F. HAMILTON<br>FL Bar No.: 98527<br>chamilton@sharfiholding.com<br>JOSHUA D. MIRON<br>FL Bar No.: 644811<br>jmiron@sharfiholding.com<br>Sharfi Holdings, Inc.<br>3731 NE Pineapple Avenue<br>2nd Floor<br>Jensen Beach, FL 34957<br>Tel: 813-416-2352<br><br>*Attorney for Defendants* |

2

129780846.1

| Brandon.Adkins@usdoj.gov | |
| Andrew.Doyle@usdoj.gov | |
| | |
| JUAN ANTONIO GONZALEZ | |
| Acting United States Attorney | |
| | |
| DEXTER LEE | |
| FL Bar No.: 936693 | |
| Assistant United States Attorney | |
| Southern District of Florida | |
| 99 N.E. 4th Street | |
| Miami, FL 33132 | |
| Tel: (305) 931-9320 | |
| Fax: (305) 530-7679 | |
| DLee@usa.doj.gov | |
| | |
| *Attorneys for Plaintiff, United States of America* | |

129780846.1

# Exhibit K

Untimely-produced report (May 17, 2022)

AN APPRAISAL OF

A 9.92-ACRE VACANT AGRICULTURAL PARCEL
LOCATED ALONG THE NORTH SIDE OF SW
MARTIN HIGHWAY BETWEEN SW 84TH
AVENUE AND SW 78TH AVENUE
PALM CITY, FL 34990

PREPARED FOR
NESHAFARM, INC.



Date of Viewing: April 8, 2022
Retrospective Date of Report: January 1, 2018
Date of Report: May 17, 2022

By:

CRE VALUATION SERVICES
100 SW ALBANY AVENUE
SUITE 200
STUART, FL 34994
(772) 286-8762

CRE Job#3745772194

SHARFIEXPERTS0000403

May 17, 2022

Mr. Joshua D. Miron
Neshafarm, Inc

Re:     **A 9.92-Acre Vacant Agricultural Parcel**
        **Located Along The North Side of SW Martin Highway**
        **Between SW 84th Avenue and SW 78th Avenue**
        **Palm City, FL 34990**

We have performed an appraisal on the above referenced property, the conclusions of which are set forth in the attached narrative report. The type of value sought in our appraisal of the subject was a retrospective market value opinion with four separate market valuation scenarios of the property as of **the effective date January 1, 2018**, subject to the general assumptions and limiting conditions cited herein.

The subject property is a 9.92-acre parcel of vacant agricultural land located on the north side of SW Martin Highway between SW 84th Avenue and SW 78th Avenue in Palm City, FL.

As indicated earlier our analysis will focus on four separate valuation scenarios which will consist of Scenario A – before and after the "effective date" and Scenario B – before and after the "effective date."

**Scenario A** – Scenario A is based on the United States Government's calculations. The "before" **estimate of wetlands** is 5.97-acre and the "after" estimate of wetlands is 0.79-acres. Scenario A provides a retrospective market value of the subject wetlands totaling 5.97-acres.

**Scenario B** – Scenario B is based on the owners' representative calculations. The "before" **estimate of wetlands** is 3.55-acres and the "after" estimate of wetlands is 1.3-acres. Scenario B provides a retrospective market value of the subject wetlands totaling 3.55-acres.

As of the retrospective date of appraisal, it is our belief that the subject was not under contract or listed for sale. The subject property was considered vacant agricultural land and is not encumbered by any arms-length lease. Therefore, the right of ownership appraised herein are that of the Fee Simple Estate.

This reports' Intended User is Neshafarm, Inc and use by others is not intended by CRE Valuation Services. This report's Intended Use is to assist in litigation support only and is not intended for any other use.

SHARFIEXPERTS0000404

**Scenario A "Before" Effective Date** - In view of the following facts and data in conjunction with this appraisal, it is the opinion of CRE Valuation Services that the retrospective market value of the fee simple interest of the property **based on Scenario A "Before" (9.92-Acres of which 5.97-Acres are Wetlands)** as of January 1, 2018, and subject to the general assumptions and limiting conditions, was:

$200,000

**Scenario A "After" Effective Date** - In view of the following facts and data in conjunction with this appraisal, it is the opinion of CRE Valuation Services that the retrospective market value of the fee simple interest of the property **based on Scenario A "After" (9.92-Acres of which 0.79-Acres are Wetlands)** as of January 1, 2018, and subject to the general assumptions and limiting conditions, was:

$350,000

**Scenario B "Before" Effective Date** - In view of the following facts and data in conjunction with this appraisal, it is the opinion of CRE Valuation Services that the retrospective market value of the fee simple interest of the property **based on Scenario B "Before" (9.92-Acre of which 3.55-acres are Wetlands)** as of January 1, 2018, and subject to the general assumptions and limiting conditions, was:

$250,000

**Scenario B "After" Effective Date** - In view of the following facts and data in conjunction with this appraisal, it is the opinion of CRE Valuation Services that the retrospective market value of the fee simple interest of the property **based on Scenario B "After" (9.92-Acres of Wetlands of which 1.3-acres are Wetlands "After")** as of January 1, 2018, and subject to the general assumptions and limiting conditions, was:

$330,000

**Hypothetical Condition -** It is a Hypothetical Condition that the property on the effective date was vacant when in fact the property was improved on the day of our viewing.

**Extraordinary Assumptions –** It is an Extraordinary Assumption that the subject property would have reasonable road access when it is not specifically accounted for in the deed. Additionally, we have relied upon aerial photographs from the Martin County Property Appraiser as well the Wetland Data Overlay within the Martin County GIS to ascertain the shape and size of wetlands in our analysis.

We have endeavored to ensure the accuracy of our data and believe it to be correct however, should our assumptions be proven substantially incorrect we reserve the right to adjust our value conclusions accordingly.

SHARFIEXPERTS0000405

**Marketing Period –**

The estimated reasonable marketing period for the subject at the indicated value is approximately from six (6) months to twelve (12) months.

Our firm appreciates the opportunity to have performed this appraisal assignment on your behalf. If we may be of further service, please contact us.

Respectfully submitted,

CRE Valuation Services
Nikolaus M. Schroth, CCIM
State Certified General Real Estate Appraiser RZ3704
Managing Partner

CRE Valuation Services
Thomas J. Johnson MAI, SRA
State Certified General Real Estate Appraiser RZ798
Senior Appraiser

Erik Odegard
Registered Trainee Appraiser RI24196

Mick Stiksma, MAI, MRICS
Cert Gen RZ2990
Review Appraiser

SHARFIEXPERTS0000406

TABLE OF CONTENTS

SUMMARY OF SALIENT FACTS.................................................................................................... 6

ASSUMPTIONS AND LIMITING CONDITIONS........................................................................... 7

CERTIFICATION ............................................................................................................................. 11

INTRODUCTION.............................................................................................................................. 13

MARKET ANALYSIS ...................................................................................................................... 15

SITE ANALYSIS .............................................................................................................................. 17

HIGHEST AND BEST USE ANALYSIS......................................................................................... 19

APPRAISAL PROCESS.................................................................................................................... 20

SALES COMPARISON APPROACH - SCENARIO A.................................................................. 21

SALES COMPARISON APPROACH-  SCENARIO B.................................................................. 24

SHARFIEXPERTS0000407

## *SUMMARY OF SALIENT FACTS*

### Property Data

| | |
|---|---|
| Property | A 9.92-Acre Vacant Agricultural Parcel<br>North side of SW Martin Highway between SW<br>84th Avenue and SW 78th Avenue<br>Palm City, FL 34990 |
| Date of Viewing | April 8, 2022 |
| Retrospective Date of Valuation | January 1, 2018 |
| Date of Report | May 17, 2022 |
| Interest Appraised/Type of Value | Fee Simple |
| Owner of Record | Nesha Farm Inc |

### Physical Data

| | |
|---|---|
| Land Area | 9.92 Acres (432,115 SF) |
| Zoning/Land Use Classification | A-2/Agricultural Ranchette Martin |
| Highest and Best Use<br>  "As Vacant" | Single-Family, Agricultural, or Equestrian Use |

### Retrospective Market Value Indications

| | |
|---|---|
| Sales Comparison Approach – Scenario A "Before" | $200,000 |
| Sales Comparison Approach – Scenario A "After" | $350,000 |
| Sales Comparison Approach – Scenario B "Before" | $250,000 |
| Sales Comparison Approach – Scenario B "After" | $330,000 |
| Cost Approach | Not Included |
| Income Capitalization Approach | Not Included |

### Retrospective Market Value Conclusions

| | |
|---|---|
| **"Retrospective" Market Value Scenario A "Before"** | **$200,000** |
| **"Retrospective" Market Value Scenario A "After"** | **$350,000** |
| **"Retrospective" Market Value Scenario B "Before"** | **$250,000** |
| **"Retrospective" Market Value Scenario B "After"** | **$330,000** |

SHARFIEXPERTS0000408

## *ASSUMPTIONS AND LIMITING CONDITIONS*

This appraisal report has been made with the following general assumptions:

1. Any legal description or plats reported herein are assumed to be accurate. Any sketches, surveys, plats, photographs, drawings, or other exhibits are included only to assist the intended user to better understand and visualize the subject property, the environs, and the competitive data. We have made no survey of the property and assume no responsibility in connection with such matters.

2. The appraiser has not conducted any engineering or architectural surveys in connection with this appraisal assignment. Information reported pertaining to dimensions, sizes, and areas is either based on measurements taken by the appraiser or the appraiser's staff or was obtained or taken from referenced sources and is considered reliable. No responsibility is assumed for the costs of preparation or for arranging geotechnical engineering, architectural, or other types of studies, surveys, or inspections that require the expertise of a qualified professional.

3. No responsibility is assumed for matters legal in nature. Title is assumed to be good and marketable and in leased fee unless otherwise stated in the report. The property is considered to be free and clear of existing liens, easements, restrictions, and encumbrances, except as stated.

4. Unless otherwise stated herein, it is assumed there are no encroachments or violations of any zoning or other regulations affecting the subject property and the utilization of the land and improvements is within the boundaries or property lines of the property described and that there are no trespasses or encroachments.

5. CRE Valuation Services assumes there are no private deed restrictions affecting the property which would limit the use of the subject property in any way.

6. It is assumed the subject property is not adversely affected by the potential of floods, unless otherwise stated herein.

7. It is assumed all water and sewer facilities (existing and proposed) are or will be in good working order and are or will be of sufficient size to adequately serve any proposed buildings.

8. Unless otherwise stated within the report, the depiction of the physical condition of the improvements described herein is based on visual inspection. No liability is assumed for the soundness of structural members since no engineering tests were conducted. No liability is assumed for the condition of mechanical equipment, plumbing, or electrical components, as complete tests were not made. No responsibility is assumed for hidden, unapparent, or masked property conditions or characteristics that were not clearly apparent during our inspection.

9. If building improvements are present on the site, no significant evidence of termite damage or infestation was observed during our physical inspection, unless so stated in the report. No termite inspection report was available, unless so stated in the report. No responsibility is assumed for hidden damages or infestation.

10. Any proposed or incomplete improvements included in this report are assumed to be satisfactorily completed in a workmanlike manner or will be thus completed within a reasonable length of time according to plans and specifications submitted.

11. No responsibility is assumed for hidden defects or for conformity to specific governmental requirements, such as fire, building, safety, earthquake, or occupancy codes, except where specific professional or governmental inspections have been completed and reported in the appraisal report.

SHARFIEXPERTS0000409

12. Responsible ownership and competent property management are assumed.

13. The appraisers assume no responsibility for any changes in economic or physical conditions which occur following the effective date of value within this report that would influence or potentially affect the analyses, opinions, or conclusions in the report. Any subsequent changes are beyond the scope of the report.

14. The value estimates reported herein apply to the entire property. Any proration or division of the total into fractional interests will invalidate the value estimates, unless such proration or division of interests is set forth in the report.

15. Any division of the land and improvement values estimated herein is applicable only under the program of utilization shown. These separate valuations are invalidated by any other application.

16. Unless otherwise stated in the report, only the real property is considered, so no consideration is given to the value of personal property or equipment located on the premises or the costs of moving or relocating such personal property or equipment.

17. Unless otherwise stated, it is assumed that there are no subsurface oil, gas or other mineral deposits or subsurface rights of value involved in this appraisal, whether they are gas, liquid, or solid. Nor are the rights associated with extraction or exploration of such elements considered, unless otherwise stated. Unless otherwise stated it is also assumed that there are no air or development rights of value that may be transferred.

18. Any projections of income and expenses, including the reversion at time of resale, are not predictions of the future. Rather, they are our best estimate of current market thinking of what future trends will be. No warranty or representation is made that these projections will materialize. The real estate market is constantly fluctuating and changing. It is not the task of an appraiser to estimate the conditions of a future real estate market, but rather to reflect what the investment community envisions for the future in terms of expectations of growth in rental rates, expenses, and supply and demand. The forecasts, projections, or operating estimates contained herein are based on current market conditions, anticipated short-term supply and demand factors, and a continued stable economy. These forecasts are, therefore, subject to changes with future conditions.

19. Unless subsoil opinions based upon engineering core borings were furnished, it is assumed there are no subsoil defects present, which would impair development of the land to its maximum permitted use or would render it more or less valuable. No responsibility is assumed for such conditions or for engineering which may be required to discover them.

20. CRE Valuation Services representatives are not experts in determining the presence or absence of hazardous substances, defined as all hazardous or toxic materials, wastes, pollutants or contaminants (including, but not limited to, asbestos, PCB, UFFI, or other raw materials or chemicals) used in construction or otherwise present on the property. We assume no responsibility for the studies or analyses which would be required to determine the presence or absence of such substances or for loss as a result of the presence of such substances. Appraisers are not qualified to detect such substances. The client is urged to retain an expert in this field.

21. We are not experts in determining the habitat for protected or endangered species, including, but not limited to, animal or plant life that may be present on the property. We assume no responsibility for the studies or analyses which would be required to determine the presence or absence of such species or for loss as a result of the presence of such species. The appraiser hereby reserves the right to alter, amend, revise, or rescind any of the value opinions based upon any subsequent endangered species impact studies, research, and investigation that may be provided.

SHARFIEXPERTS0000410

22. No environmental impact studies were either requested or made in conjunction with this analysis. The appraiser hereby reserves the right to alter, amend, revise, or rescind any of the value opinions based upon any subsequent environmental impact studies, research, and investigation that may be provided.

23. Although the appraiser has made, insofar as is practical, every effort to verify as factual and true all information and data set forth in this report, no responsibility is assumed for the accuracy of any information furnished the appraiser either by the client or others. If for any reason, future investigations should prove any data to be in substantial variance with that presented in this report, the appraiser reserves the right to alter or change any or all analyses, opinions, or conclusions and/or estimates of value.

24. Often real estate sales prices and other data, such as rents, prices, and financing, are not a matter of public record. If this is such, although extensive effort has been expended to verify pertinent data with buyers, sellers, brokers, lenders, lessors, lessees, and other sources considered reliable, it has not always been possible to independently verify all significant facts. In these instances, the appraiser may have relied on verification obtained and reported by appraisers outside of our office. Also, as necessary, assumptions and adjustments have been made based on comparisons and analyses using data in the report and on interviews with market participants.  The information furnished by others is believed to be reliable, but no warranty is given for its accuracy.

25. The appraiser has not made a specific compliance survey or analysis of the property to determine whether or not it is in conformity with various disability requirements. Since the appraiser has no direct evidence relating to this issue, possible noncompliance with the requirements was not considered in estimating the value of the property.

26. The dollar amount of any value opinion herein rendered is based upon the purchasing power and price of the US Dollar as of the effective date of value.  This appraisal is based on market conditions existing as of the date of this appraisal.

27. The right is reserved by the appraiser to make adjustments to the analyses, opinions, and conclusions set forth in this report as may be required by consideration of additional or more reliable data that may become available. No change of this report shall be made by anyone other than the appraiser or appraisers. The appraiser(s) shall have no responsibility for any unauthorized change(s) to the report.

28. If the client instructions to the appraiser were to inspect only the exterior of the improvements in the appraisal process, the physical attributes of the property were observed from the street(s) as of the inspection date of the appraisal. Physical characteristics of the property were obtained from tax assessment records, available plans, if any, descriptive information, and interviewing the client and other knowledgeable persons. It is assumed the interior of the subject property is consistent with the exterior conditions as observed and that other information relied upon is accurate.

29. Use of this appraisal report constitutes acknowledgement and acceptance of the general assumptions and limiting conditions, special assumptions (if any), on which this estimate of market value is based.

SHARFIEXPERTS0000411

SHARFIEXPERTS0000412

## *CERTIFICATION*

We certify that, to the best of our knowledge and belief:

    A viewing of the subject site, the improvements and the market area was conducted on April 8, 2022 by Nikolaus Schroth and Erik Odegard.

- The statements of fact contained in this report are true and correct.

- The reported analyses, opinions, and conclusions are limited only by the reported assumptions and limiting conditions and our personal, impartial, and unbiased professional analyses, opinions, and conclusions.

- We have no present or prospective interest in the property that is the subject of this report and no personal interest with respect to the parties involved.

- We have no bias with respect to the property that is the subject of this report or to the parties involved with this assignment.

- Our engagement in this assignment was not contingent upon developing or reporting predetermined results.

- Our compensation for completing this assignment is not contingent upon the development or reporting of a predetermined value or direction in value that favors the cause of the client, the amount of the value opinion, the attainment of a stipulated result, or the occurrence of a subsequent event directly related to the intended use of this evaluation.

- Our analyses, opinions, and conclusions were developed, and this report has been prepared, in conformity with the Appraisal Institute and USPAP.

- Erik Odegard provided real property appraisal assistance to the persons signing this certification.

- The reported analyses, opinions, and conclusions were developed, and this report has been prepared, in conformity with the Code of Professional Ethics and Standards of Professional Appraisal Practice of the Appraisal Institute.

- The use of this report is subject to the requirements of the Appraisal Institute relating to review by its duly authorized representatives.

- As of the date of this report the undersigned has completed the requirements of the continuing education program of the Appraisal Institute for members.

- Erik Odegard currently holds the appropriate Trainee License allowing the performance of real estate appraisals in connection with federally related transactions in the state in which the subject property is located, under the supervision of Thomas J. Johnson.

- It is acknowledged that Erik Odegard, Registered Trainee Appraiser RI24196, under the direct supervision of Thomas J. Johnson, MAI, SRA, State Certified General Real Estate Appraiser RZ798, made a contribution to this valuation.

- I, Thomas J. Johnson, MAI, SRA, the supervisory appraiser of a registered trainee who contributed to the development or communication of this appraisal, hereby accepts full and complete responsibility restricted to any work performed by the registered appraiser trainee named in this report as if it were my own work.

- We have not appraised the subject property in the past five years.

SHARFIEXPERTS0000413

- The use of this report is subject to the requirements of the Appraisal Institute relating to review by its duly authorized representatives.
- As of the date of this report the undersigned MAI's have completed the requirements of the continuing education program of the Appraisal Institute for members.

CRE Valuation Services
Nikolaus M. Schroth, CCIM
State Certified General Real Estate Appraiser RZ3704
Managing Partner

CRE Valuation Services
Thomas J. Johnson MAI, SRA
State Certified General Real Estate Appraiser RZ798
Senior Appraiser

Erik Odegard
Registered Trainee Appraiser RI24196

Mick Stiksma, MAI, MRICS
Cert Gen RZ2990
Review Appraiser

SHARFIEXPERTS0000414

# *INTRODUCTION*

## Property Appraised

A 9.92-Acre Vacant Agricultural Parcel
North side of SW Martin Highway between SW 84th Avenue and SW 78th Avenue
Palm City, FL 34990

## Property Identification

The subject is defined by the Martin County Property Appraiser as Parcel Identification number 17-38-40-000-038-00000-0 (Tract 38). The subject property as of the effective date was a vacant agricultural parcel containing 9.92 acres or 432,115 square feet. Located on the north side of SW Martin Highway between SW 84th Avenue and SW 78th Avenue in Palm City, the subject is zoned A-2 with a future land use of Agricultural Ranchette by Martin County. According to the information provided by the client, the subject site is currently owner/user  occupied but as of the retrospective date of appraisal the subject was vacant land. The location of the subject is ranked as average compared to other properties in the area. Overall, the subject is a vacant interior agricultural parcel that was mostly wooded as of the retrospective date of appraisal.

## History of the Subject Property

The property was purchased by Benjamin K. Sharfi as Trustee of the Benjamin Sharfi 2002 Trust, from Vibol PenPen Vibol, Say Chanthea, Tran Hoang  BaoNgoc, and Lim Sokhuor for the sum of $300,000 or $30,242 per acre on April 24, 2017 according to public records. The subject was purchased as an assemblage piece by Benjamin K. Sharfi as Trustee of the Benjamin Sharfi 2002 Trust for use by Neshafarm which operates an organic, self-sustaining farm. Some assemblage premium may have been associated with 2017 purchase. Currently, Neshafarm consists of (3) adjoining parcels consisting of 29.85-acres including a 9.93-acre parcel to the south of the subject and a 9.94-acre parcel to the southwest of the subject. The property was then transferred via a quit claim deed Book 3087 Page 2715) to Neshafarm Inc on January 14, 2019.

It is our belief that the subject was not known to be under contract nor was it listed for sale at the time of the retrospective effective date.

## Competency

The appraisers involved in this assignment have, collectively, considerable experience in appraising commercial properties within the region. The appraisers have historically been engaged in appraisal work in the geographical area of the subject property. The company maintains a database on this area for similar properties. Further, we are versed in the analytical methods typically employed in appraising this property type. In summary, we believe we have adequate knowledge of the property type, geographical location, and analytical methods necessary to comply with the competency requirements of USPAP.

SHARFIEXPERTS0000415

## Scope of Appraisal/Extent of the Data Collection Process

This appraisal considered all three approaches to value, (1) Sales Comparison Approach, (2) Income Capitalization Approach and the (3) Cost Approach. However, we have used the Sales Comparison Approach as our method of valuation as it is the single approach most likely used by market participants. Following is a summary of steps completed by the appraisers in this assignment.

1. The subject was viewed on April 8, 2022. The surrounding area and influences were also viewed at this time. Specific information relative to the subject property was provided by representatives of the owners.

2. Reviewed a plat of the subject property.

3. Analyzed the highest and best use of the site "as vacant".

4. Gathered information from various secondary data sources regarding market data.

5. Gathered information from various sources regarding land sales comparable data. Market participants active in this market were also interviewed. Analyzed the comparable data which resulted in a market value indication.

6. Analyzed the data to arrive at conclusions of value via the Sales Comparison Approach. Sales data was entered and analyzed using linear regression analysis.

7. Applied our valuation analysis to the four separate valuation scenarios that resulted in a retrospective market value conclusion for each scenario as of January 1, 2018 on an "fee simple" basis.

8. Opined to the marketing period inherent in the value opinions.

9. Prepared a narrative report.

SHARFIEXPERTS0000416

## *MARKET ANALYSIS*

### Palm City Neighborhod Analysis

Palm City is a census-designated place (CDP) in Martin County, Florida and is part of the Port St. Lucie Metropolitan Statistical Area. According to the United States Census Bureau, Palm City has a total area of 16.6 square miles (43 km²), of which 14.6 square miles (38 km²) is land and 2.0 square miles (5.2 km²) is water.

### Neighborhood Access

SW Martin Downs Boulevard and SW Martin Highway are the primary traffic arteries in the neighborhood. Collector roads, which feed traffic from the neighborhood's many subdivisions into these main arteries, include High Meadows Road, Mapp Road, Murphy Road and Matheson Road including its extension into St. Lucie County where it is known as Harbour Ridge Boulevard (Gilson Road). A 1.8 mile stretch of the Martin Highway, from the entrance of Florida's Turnpike near Martin Downs Boulevard to Mapp Road has been widened from a two-lane undivided roadway to a four-lane divided roadway with a raised median that was completed in early 2016. The road project included upgrading five traffic signals, adding one traffic signal at Hidden Oaks Middle School and adding landscaping, lighting, sidewalks, bike lanes, drainage systems and two drainage ponds. This project, in unison with the Indian Street Bridge project that was completed in 2013, provides a good alternative route to the Martin Downs Boulevard/Monterey Road roadway. The Monterey Road bridge and Indian Street bridge are the only two roads that offer a connection between Stuart and Palm City.

Both Florida's Turnpike and Interstate 95 pass through the neighborhood. Each has an interchange on SW Martin Highway, plus an additional interchange with I-95 is located at the southern extension of High Meadows Avenue. These highways provide excellent linkages for roadway transportation services along the eastern coast of the state.

These arteries have traffic characteristics that are similar to one another, but all have lower traffic flows than the U.S. Highway 1 corridor. Each of these arteries are developed with a variety of commercial uses including neighborhood shopping centers, smaller strip type and self-standing retail centers, restaurants, professional office buildings, gasoline service stations, and convenience stores. There are also some uses exclusive to the neighborhood like motels, boat yards, churches, and cemeteries.

Palm City's location on the Treasure Coast provides easy North/South access from the Florida Turnpike and Interstate 95, combined with rail service by Florida East Coast Railway and corporate, private, and chartered air service through Martin County's airport at Witham Field, are certainly assets to the business community. There are nine (9) airports located in Martin County, two (2) are public, seven (7) are private. West Palm Beach International Airport is approximately 40 miles to the south and Melbourne International Airport is approximately 75 miles to the north.

SHARFIEXPERTS0000417

## Vacant Land Market

Martin County currently has a diminishing stock of vacant land designated for residential and non-residential use under the existing land use plan. There are over 5,000 acres of non-residential designated land available land for development as general commercial, limited commercial, commercial/office/residential, and industrial uses.

As the Commercial and Industrial markets continue to improve, it is expected that activity will continue to strengthen. Western Palm City contains large tracts of mainly agricultural and residential land. There is a lack of land with zoning and land use for more development and with the current political climate it is unclear if the Martin County growth management plan will recognize the counties near build out, demand will shift to ranchette development, of which there is plenty of development that will altogether shift to Port St. Lucie and St. Lucie County.

## Conclusion

Overall, the Palm City neighborhood is considered a bedroom and suburban market. Within the Palm City market area, Martin Downs has been extensively developed. Commercial, industrial and residential development in the neighborhood benefits from convenient access to Interstate 95 and Florida's Turnpike. Employment hubs that serve Palm City are northern Palm Beach County and the City of Stuart. Palm City itself has some areas of commercial development but no significant employers. Demand for vacant agricultural land is stable.

SHARFIEXPERTS0000418

## *SITE ANALYSIS*

### Description

| | |
|---|---|
| Parcel ID | 17-38-40-000-038-00000-0 |
| Legal description | TRACT 38 PALM CITY FARMS ACCORDING TO THE PLAT THEREOF RECORDED IN PLAT BOOK 6 PAGE 42 PUBLIC RECORDS PALM BEACH NOW MARTIN COUNTY FLORIDA SEC 17-38-40 |

### Land Description

| | |
|---|---|
| Land Area | 9.92 Acres; 432,115 SF |
| Shape | Rectangular |
| Topography | See descriptions of scenarios and Before/After |

### Zoning & Land Use

| | |
|---|---|
| Zoning | A-2 |
| Future Land Use | Agricultural Ranchette |
| Zoning Jurisdiction | Martin |

### Site Ranking

| | |
|---|---|
| General Site Ranking | Average |
| Appeal Ranking | Average |
| Size/Shape/Dimension Ranking | Average |
| Access Ranking | Average |
| Exposure Ranking | Fair |

### Utilities

| | |
|---|---|
| Water | Well |
| Sewer | Septic |
| Electricity | FP&L |

### *General Description/Conclusions*

The subject site is located north of Martin Highway SR 714 in Palm City, FL. Overall, the subject is considered average when compared to similar sites within the competitive market area. Furthermore, given the nature of the surrounding uses, the location, and all physical characteristics, the subject would be considered to have average appeal if exposed to the market. Generally rectangular in shape, the subject's shape does not present a detriment to the site and is generally conducive to development. As an interior parcel, the subject does not contain any road frontage along SW Martin Highway, SW 84th Avenue, or SW 78th Avenue.

SHARFIEXPERTS0000419

**Scenario A** – Scenario A is based on the United States Government's calculations. The "before" estimate of wetlands is 5.97-acre and the "after" estimate of wetlands is 0.79-acres.

**Scenario B** – Scenario B is based on the Defense's calculations. The "before" estimate of wetlands is 3.55-acres and the "after" estimate of wetlands is 1.3-acres.



**2021 Aerial of Subject Property (Martin County Property Appraiser)**



**2018 Aerial of Subject Property (Martin County Property Appraiser)**

In 2018, a portion of the site was cleared and filled due to the construction of roads along the eastern and northern boundaries of the site as well as the south-central portion of the site. The site was cleared from 2018 through 2021 with the majority of the improvements being constructed at this time.

SHARFIEXPERTS0000420

## *HIGHEST AND BEST USE ANALYSIS*

### Analysis as Vacant (as of the retrospective date January 01, 2018)

Legally Permissible Except for a legally nonconforming property, the first step in determining what is legally permissible is to analyze private restrictions, zoning, building codes, historic district controls and environmental regulations. The subject site is zoned A-2 with a future land use of Agricultural Ranchette by the local zoning authority. This zoning district allows for a variety of residential, agricultural, and/or equestrian uses. Physically Possible The physical characteristics of a site can affect the uses. These characteristics include: (1) size; (2) shape; (3) terrain or topography; (4) soil condition; (5) utilities; (6) access characteristics; and (7) surrounding land uses. Each of these site characteristics was described and discussed in the Site Analysis section of this report. A number of uses are physically possible on the subject site. The 432,115 SF site could accommodate a variety of residential, agricultural, and/or equestrian uses. Financially Feasible In determining which uses are legally permissible and physically possible, an appraiser eliminates some uses from consideration. Then the uses that meet the first two criteria are analyzed further. If the uses are income-producing, the analysis will study which are likely to produce an income or return equal to or greater than the amount needed to satisfy operating expenses, financial obligations, and capital amortization. All uses that are expected to produce a positive return are regarded as financially feasible. Within the market, the most financially feasible use of the site would be a single-family ranchette home, agricultural, and/or equestrian use. Maximally Productive Among financially feasible uses, the use that provides the highest rate of return or value (given a constant rate of return) is the highest and best use. Given the legally permissible and physically possible discussions set forth above, the maximally productive use of the site would be a single-family ranchette home, agricultural, and/or equestrian use. Conclusion In our opinion the highest and best use "as vacant" would be a single-family ranchette home, agricultural, and/or equestrian use.

### Real Estate Tax Analysis

The following table illustrates the current estimated assessed value and associated taxable value to the improvements for the subject. The value was estimated using the county website and comparing that with the actual tax liability paid by the owner. Utilizing the most recent tax rate and calculating that on 100% of the assessed value, an estimate for property taxes is illustrated as follows. Where applicable, non-advalorm taxes are shown. Taxes were believed to be paid as of the effective date.

| Assessment & Taxes | |
|---|---|
| Account Owner | Nesha Farm Inc |
| Year | 2018 |
| Tax ID Number | 17-38-40-000-039-00010.60000 |
| Assessed Value | $26,190 |
| Taxable Value | $26,190 |
| Milage Rate | 17.5703 |
| Ad-Valorm Taxes | $438 |
| Non Ad-Valorm Taxes | $309 |
| Total Tax Liability | $747 |

SHARFIEXPERTS0000421

*APPRAISAL PROCESS*

## Overview

The three traditional approaches to valuing improved properties are:

The Sales Comparison Approach is founded upon the principle of substitution that holds that the cost to acquire an equally desirable substitute property without undue delay ordinarily sets the upper limit of value. At any given time, prices paid for comparable properties are construed by many to reflect the value of the property appraised. The validity of a value indication derived by this approach is heavily dependent upon the availability of data on recent sales of properties similar in location, size, and utility to the appraised property.

The Income Capitalization Approach is based on the principle of anticipation that recognizes the present value of the future income benefits to be derived from ownership in a particular property. The Income Approach is most applicable to properties that are bought and sold for investment purposes and is considered very reliable when adequate income and expense data are available. Since income producing real estate is most often purchased by investors, this approach is valid and is generally considered the most applicable when the property being appraised was designed for, or is easily capable of producing a rental income.

The Cost Approach is based on the premise that the value of a property can be indicated by the current cost to construct a reproduction or replacement for the improvements minus the amount of depreciation evident in the structures from all causes plus the value of the land and entrepreneurial profit. This approach to value is particularly useful for appraising new or nearly new improvements.

The Appraisal Process is concluded by a review and re-examination of each of the approaches to value that was employed. Consideration is given to the type and reliability of data used, the applicability of each approach to the type of property being appraised and the definition of value being sought.

## Subject Specific

Each property has a type of buyer or buyers who would be most attracted to the property and have the greatest motivation to pay the highest price for the property. This is not to say specific buyers would pay more for the property than market but rather, to identify the type of buyer who would gain the most utility from a property. The subject is an agricultural property and the typical buyer profile for the subject would be that of an owner/user . The Sales Comparison Approach is considered the best indicator of value in the valuation of vacant land such as the subject. The Cost Approach was not developed as the subject is vacant land and the approach is not applicable. The Income Approach is not developed herein due to the fact that the subject is vacant land and is not leased. Although land leases can be found within the subject market, it has been determined that the subject would not typically be leased or purchased for the income potential of the site for lease.

SHARFIEXPERTS0000422

## *SALES COMPARISON APPROACH - SCENARIO A*

### Introduction

The Sales Comparison Approach is premised upon the Principle of Substitution - a valuation principle that states that a prudent purchaser would pay no more for real property than the cost of acquiring an equally desirable substitute on the open market. The Principle of Substitution presumes that the purchaser will consider the alternatives available to him, that he will act rationally or prudently on the basis of his information about those alternatives, and that time is not a significant factor. Substitution may assume the form of the purchase of an existing property with the same utility, or of acquiring an investment which will produce an income stream of the same size with the same risk as that involved in the property in question.

The applicability of this approach is based upon the assemblage of similar market sales and offerings for comparison to the subject. Land sales must be compared based on Highest and Best Use and therefore the Highest and Best Use of the comparables must be similar to that of the subject. In the case of the subject we have concluded a Highest and Best Use of single-family, agricultural or equestrian use. Properties with this Highest and Best Use are best compared on a price per Acre basis. Any adjustments to the sales price of market sales to provide indications of market value for the subject must be market-derived; therefore, the actions of typical buyers and sellers are reflected in the comparison process. The physical unit of comparison can be adjusted to account for dissimilarities between market sales and the subject property. This unit of comparison is then applied to the subject's Acre to indicate a value for the subject. The sales utilized within this analysis were taken from the subject market area and are considered to be most similar. A map and summary chart of comparable sales is included in the following pages.



SHARFIEXPERTS0000423



| Land Sales Summary | | | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|
| Internal Comp No. | | | | | | | | | |
| Sale No. | Subject | 1 | 2 | 3 | 4 | 5 | 6 | 7 | 8 |
| Photo | | | | | | | | | |
| Name/Address | North side of SW Martin Highway between SW 84th Avenue and SW 78th Avenue | 7715 SW 39th Street | XXX SW 39th Street | XXX SW 40th Ave | 5143 SW Quail Hollow Street | 8281 SW 42nd Ave | XXX 72nd Avenue | XXX SW Citrus Boulevard | 8027 SW Martin Highway |
| City | Palm City | Palm City | Palm City | Palm City | Palm City | Palm City | Palm City | Palm City | Palm City |
| County | Martin | Martin | Martin | Martin | Martin | Martin | Martin | Martin | Martin |
| Date of Sale | 24-Apr-17 | 21-Apr-17 | 13-Oct-17 | 26-Sep-16 | 14-Mar-17 | 28-Feb-18 | 1-May-17 | 1-Apr-16 | 18-Feb-16 |
| Land Size (SF) | 432,115 | 217,800 | 217,800 | 827,640 | 217,800 | 878,736 | 435,600 | 363,290 | 432,551 |
| Land Size (Ac) | 9.92 | 5.00 | 5.00 | 19.00 | 5.00 | 20.17 | 10.00 | 16.49 | 9.93 |
| Zoning/FLU | A-2/Ag. Ranchette | RT/MH | RT/MH | RT/MH | A-2/Ag. Ranchette | A-2 & RT/Ag. Ranchette | A-2/Ag. Ranchette | A-2/Ag. Ranchette | A-2/Ag. Ranchette |
| Estimated Wetlands (Acres) | 5.97 | 1.25 | 0.67 | 12.7 | 2.71 | 0 | 0 | 0 | 0.12 |
| % Wetlands | 60% | 25% | 13% | 66% | 54% | 0% | 0% | 0% | 1% |
| Sales Price | $300,000 | $167,500 | $167,500 | $230,000 | $70,000 | $495,000 | $270,000 | $175,000 | $325,000 |
| SP/SF ($) | $0.69 | $0.77 | $0.77 | $0.28 | $0.32 | $0.56 | $0.62 | $0.48 | $0.75 |
| SP/Ac ($) | $30,242 | 33,500 | 33,500 | 12,105 | 14,000 | 24,538 | 27,000 | 10,612 | 32,729 |

## Sales Price Per Acre Analysis – Scenario A

The Sales Price per Acre comparison is a common physical unit of comparison for properties similar to the subject. The sales were analyzed and adjusted for differences in physical characteristics.

### Property Rights Conveyed

All properties were conveyed on a Fee Simple basis and therefore no adjustment is warranted.

### Cash Equivalency/Financing

In an analysis of sales, any advantageous financing should be extracted from the sales prices due to the fact that favorable financing agreements can result in inflated value indications. In this particular instance, no adjustments were required to the sales for financing terms.

### Conditions Of Sale

No adjustments were considered necessary on this basis.

### Market Conditions

Next, an adjustment for changing market conditions was considered. The sales comparable transactions occurred from February 2016 to February 2018. We researched the economic data during this time period and concluded market conditions have not changed significantly thus no adjustments are warranted.

### Location

The subject is located to the north of SW Martin Highway within western Palm City and do not contain frontage along a major commercial corridor. Sale 1, Sale 2, Sale 3, Sale 4, Sale 5, and Sale 6 are all located within western Palm City along similar roadways so these sales are considered similar in regards to location, subject to our Extraordinary Assumption regarding access. Sale 7 and Sale 8 are both located in western Palm City but have frontage along Citrus Boulevard or SW Martin Highway so both of these sales are considered superior.

### Size

The subject contains 9.92 acres. The comparable sales ranged from 5.00 acres to 20.17 acres with a mean 11.32 acres. Often, smaller parcels in the local market sell for a higher price per acre due to the law of diminishing returns, which captures the fact that a larger parcel does not necessarily mean more utility or more development capacity and therefore the opposite is also true. As such, Sale 6 and Sale 8 are considered similar. Sale 1, Sale 2, and Sale 4 are smaller parcels and are considered superior to the subject. Sale 3, Sale 5, and Sale 7 are larger parcels and considered inferior.

SHARFIEXPERTS0000424

## Comparative Appeal

Sale 1, Sale 2, Sale 5, Sale 6, Sale 7, and Sale 8 are all considered superior in regard to comparative appeal due to the lower percentage of wetlands on-site in regards to Scenario A. Sale 3 and Sale 4 are considered similar in regards to comparative appeal due to the similar percentage of wetlands on-site in regards to Scenario A.

## Zoning

The subject is zoned A-2 with a future land use of Agricultural Ranchettee. All of the sales are considered to have a similar zoning/land use.

## Access/Exposure

The subject can only be accessed via a dirt road which bisects multiple parcel to the south of the subject. Sale 1, Sale 2, and Sale 3 are considered to have similar access/exposure so no adjustment for access/exposure is merited. Sale 4, Sale 5, Sale 6, Sale 7, and Sale 8 have superior access/exposure so each of these sales is considered superior in regard to access/exposure.

## Adjustment Summary

When considering the comparables as a whole we believe that they represent the most similar comparison to the subject in the immediate market area, however they still are not truly comparable. The following tables summarize the aforementioned adjustments applied to the sales.

| Comparable Sale Number | Subject Data | 1 | 2 | 3 | 4 | 5 | 6 | 7 | 8 |
|---|---|---|---|---|---|---|---|---|---|
| Address | North side of SW Martin Highway between SW 84th Avenue and SW 78th Avenue | 7715 SW 39th Street | XXX SW 39th Street | XXX SW 40th Ave | 5163 SW Quail Hollow Street | 8281 SW 42nd Ave | XXX 72nd Avenue | XXX SW Citrus Boulevard | 8027 SW Martin Highway |
| City | Palm City | Palm City | Palm City | Palm City | Palm City | Palm City | Palm City | Palm City | Palm City |
| Date of Sale | 24-Apr-17 | 21-Apr-17 | 13-Oct-17 | 26-Sep-16 | 14-Mar-17 | 25-Jan-18 | 1-May-17 | 1-Apr-16 | 16-Feb-16 |
| Location | Palm City | Similar | Similar | Similar | Similar | Similar | Similar | Similar | Similar |
| Land Size (SF) | 432,115 | 217,800 | 217,800 | 627,640 | 217,800 | 676,736 | 435,600 | 363,290 | 432,551 |
| Land Size (AC) | 9.92 | 5.00 | 5.00 | 19.00 | 5.00 | 20.17 | 10.00 | 16.49 | 9.93 |
| Zoning/Land Use | A-2/Ag. Ranchette | RT/MH | RT/MH | RT/MH | A-2/Ag. Ranchette | A-2 & RT/Ag. Ranchette | A-2/Ag. Ranchette | A-2/Ag Ranchette | A-2/Ag. Ranchette |
| Wetland Estimate | 5.97 | 1.25 | 0.67 | 12.70 | 2.71 | 0.00 | 0.00 | 0.00 | 0.12 |
| % Wetlands | 60% | 25% | 13% | 68% | 54% | 0% | 0% | 0% | 1% |
| Comparative Appeal | Average | Superior | Superior | Similar | Similar | Superior | Superior | Superior | Superior |
| Sales Price | $300,000 | $167,500 | $167,500 | $230,000 | $70,000 | $495,000 | $270,000 | $175,000 | $325,000 |
| UnAdjusted Price Per Acre | $30,242 | $33,500 | $33,500 | $12,105 | $14,000 | $24,538 | $27,000 | $10,612 | $32,729 |
| **Transactional Adjustments** | | | | | | | | | |
| Price / SF | | $33,500 | $33,500 | $12,105 | $14,000 | $24,538 | $27,000 | $10,612 | $32,729 |
| Property Rights Conveyed | | 0.0% | 0.0% | 0.0% | 0.0% | 0.0% | 0.0% | 0.0% | 0.0% |
| Adjusted Price | | $33,500 | $33,500 | $12,105 | $14,000 | $24,538 | $27,000 | $10,612 | $32,729 |
| Financing Terms | Conventional | 0.0% | 0.0% | 0.0% | 0.0% | 0.0% | 0.0% | 0.0% | 0.0% |
| Adjusted Price | | $33,500 | $33,500 | $12,105 | $14,000 | $24,538 | $27,000 | $10,612 | $32,729 |
| Conditions of Sale | None | 0.0% | 0.0% | 0.0% | 0.0% | 0.0% | 0.0% | 0.0% | 0.0% |
| Adjusted Price | | $33,500 | $33,500 | $12,105 | $14,000 | $24,538 | $27,000 | $10,612 | $32,729 |
| Expenditures imm. After Sale | | 0.0% | 0.0% | 0.0% | 0.0% | 0.0% | 0.0% | 0.0% | 0.0% |
| Adjusted Price | | $33,500 | $33,500 | $12,105 | $14,000 | $24,538 | $27,000 | $10,612 | $32,729 |
| Market Conditions | Apr-22 | 0.0% | 0.0% | 0.0% | 0.0% | 0.0% | 0.0% | 0.0% | 0.0% |
| Adjusted $/Acre - With Transactional Adjustments | | $33,500 | $33,500 | $12,105 | $14,000 | $24,538 | $27,000 | $10,612 | $32,729 |
| **Physical Adjustments** | | | | | | | | | |
| Location | Palm City | Similar | Similar | Similar | Similar | Similar | Similar | Similar | Similar |
| Size | 432,115 | Superior | Superior | Inferior | Superior | Inferior | Similar | Inferior | Similar |
| Comparative Appeal | N/A | Superior | Superior | Similar | Similar | Superior | Superior | Superior | Superior |
| Zoning | A-2 | Similar | Similar | Similar | Similar | Similar | Similar | Similar | Similar |
| Access/Exposure | Fair | Similar | Similar | Similar | Superior | Superior | Superior | Superior | Superior |
| Overall Adjustments | | Superior | Superior | Inferior | Inferior | Superior | Superior | Superior | Superior |
| **Value Ranges** | | | | | | | | | |
| Minimum Price | | $10,612 | | | | | | | |
| Maximum Price | | $33,500 | | | | | | | |
| Mean Price | | $24,247 | | | | | | | |
| Standard Deviation | | $9,529 | | | | | | | |
| Median | | $27,000 | | | | | | | |

Comparable Sales Adjustment Grid - Scenario A

## Conclusion – Scenario A

Prior to adjustment, the comparable sales ranged from $10,612/Per Acre to $33,500/Per Acre with a mean of $24,247/Per Acre and a median of $27,000/Per Acre. We have concluded at a value range of $18,000/Per Acre to $22,000/Per Acre which is considered reasonable. Due to the large range, we have included a regression analysis with additional sales (totaling 16 sales) of similar parcels within Palm City to determine a price per acre of wetland for the subject property to derive a retrospective market value for Scenario A herein.

SHARFIEXPERTS0000425

## *SALES COMPARISON APPROACH- SCENARIO B*

### Introduction

The Sales Comparison Approach is premised upon the Principle of Substitution - a valuation principle that states that a prudent purchaser would pay no more for real property than the cost of acquiring an equally desirable substitute on the open market. The Principle of Substitution presumes that the purchaser will consider the alternatives available to him, that he will act rationally or prudently on the basis of his information about those alternatives, and that time is not a significant factor. Substitution may assume the form of the purchase of an existing property with the same utility, or of acquiring an investment which will produce an income stream of the same size with the same risk as that involved in the property in question.

The applicability of this approach is based upon the assemblage of similar market sales and offerings for comparison to the subject. Land sales must be compared based on Highest and Best Use and therefore the Highest and Best Use of the comparables must be similar to that of the subject. In the case of the subject we have concluded a Highest and Best Use of single-family, agricultural or equestrian use. Properties with this Highest and Best Use are best compared on a price per Acre basis. Any adjustments to the sales price of market sales to provide indications of market value for the subject must be market-derived; therefore, the actions of typical buyers and sellers are reflected in the comparison process. The physical unit of comparison can be adjusted to account for dissimilarities between market sales and the subject property. This unit of comparison is then applied to the subject's Acre to indicate a value for the subject. The sales utilized within this analysis were taken from the subject market area and are considered to be most similar. A map and summary chart of comparable sales is included in the following pages.



SHARFIEXPERTS0000426



| Internal Comp No. | | | | | | | | | |
| --- | --- | --- | --- | --- | --- | --- | --- | --- | --- |
| Sale No. | Subject | 1 | 2 | 3 | 4 | 5 | 6 | 7 | 8 |
| Name/Address | North side of SW Martin Highway between SW 84th Avenue and SW 78th Avenue | 7715 SW 39th Street | XXX SW 39th Street | XXX SW 40th Ave | 5143 SW Quail Hollow Street | 8281 SW 42nd Ave | XXX 72nd Avenue | XXX SW Citrus Boulevard | 8027 SW Martin Highway |
| City | Palm City | Palm City | Palm City | Palm City | Palm City | Palm City | Palm City | Palm City | Palm City |
| County | Martin | Martin | Martin | Martin | Martin | Martin | Martin | Martin | Martin |
| Date of Sale | 24-Apr-17 | 21-Apr-17 | 13-Oct-17 | 26-Sep-16 | 14-Mar-17 | 28-Feb-18 | 1-May-17 | 1-Apr-16 | 18-Feb-16 |
| Land Size (SF) | 432,115 | 217,800 | 217,800 | 827,640 | 217,800 | 878,736 | 435,600 | 363,290 | 432,551 |
| Land Size (Ac) | 9.92 | 5.00 | 5.00 | 19.00 | 5.00 | 20.17 | 10.00 | 16.49 | 9.93 |
| Zoning/FLU | A-2/Ag. Ranchette | RT/MH | RT/MH | RT/MH | A-2/Ag. Ranchette | A-2 & RT/Ag. Ranchette | A-2/Ag. Ranchette | A-2/Ag.Ranchette | A-2/Ag. Ranchette |
| Estimated Wetlands (Acres) | 3.55 | 1.25 | 0.67 | 12.7 | 2.71 | 0 | 0 | 0 | 0.12 |
| % Wetlands | 36% | 25% | 13% | 66% | 54% | 0% | 0% | 0% | 1% |
| Sales Price | $300,000 | $167,500 | $167,500 | $230,000 | $70,000 | $495,000 | $270,000 | $175,000 | $325,000 |
| SP/SF ($) | $0.69 | $0.77 | $0.77 | $0.28 | $0.32 | $0.56 | $0.62 | $0.48 | $0.75 |
| SP/Ac ($) | $30,242 | 33,500 | 33,500 | 12,105 | 14,000 | 24,538 | 27,000 | 10,612 | 32,729 |

## Sales Price Per Acre Analysis

The Sales Price per Acre comparison is a common physical unit of comparison for properties similar to the subject. The sales were analyzed and adjusted for differences in physical characteristics.

### Property Rights Conveyed

No data supports a substantive difference between a leased fee or fee simple estates. We are appraising the subject property on a fee simple basis; thus, no adjustments were necessary for property rights conveyed.

### Cash Equivalency/Financing

In an analysis of sales, any advantageous financing should be extracted from the sales prices due to the fact that favorable financing agreements can result in inflated value indications. In this particular instance, no adjustments were required to the sales for financing terms.

### Conditions Of Sale

No adjustments were considered necessary on this basis.

### Market Conditions

Next, an adjustment for changing market conditions was considered. The sales comparable transactions occurred from February 2016 to February 2018. We researched the economic data during this time period and concluded market conditions have not changed significantly thus no adjustments are warranted.

### Location

The subject is located to the north of SW Martin Highway within western Palm City and do not contain frontage along a major commercial corridor. Sale 1, Sale 2, Sale 3, Sale 4, Sale 5, and Sale 6 are all located within western Palm City along similar roadways so these sales are considered similar in regards to location. Sale 7 and Sale 8 are both located in western Palm City but have frontage along Citrus Boulevard or SW Martin Highway so both of these sales are considered superior.

### Size

The subject contains 9.92 acres. The comparable sales ranged from 5.00 acres to 20.17 acres with a mean 11.32 acres. Often, smaller parcels in the local market sell for a higher price per acre due to the larger investor pool and, therefore, greater demand, for the same and therefore the opposite is also true. As such, Sale 6 and Sale 8 are considered similar. Sale 1, Sale 2, and Sale 4 are smaller parcels and are considered superior to the subject. Sale 3, Sale 5, and Sale 7 are larger parcels and considered inferior.

SHARFIEXPERTS0000427

## Comparative Appeal

Sale 1 is considered similar in regards to comparative appeal due to the similar percentage of wetlands on-site. Sale 2, Sale 5, Sale 6, Sale 7, and Sale 8 are all considered superior in regard to comparative appeal due to the lower percentage of wetlands on-site. Sale 3 and Sale 4 are both considered inferior in regards to comparative appeal due to higher percentage of wetlands on-site.

## Zoning

The subject is zoned A-2 with a future land use of Agricultural Ranchettee. All of the sales are considered to have a similar zoning/land use.

## Access/Exposure

The subject can only be accessed via a dirt road which bisects multiple parcel to the south of the subject. Sale 1, Sale 2, and Sale 3 are considered to have similar access/exposure so no adjustment for access/exposure is merited. Sale 4, Sale 5, Sale 6, Sale 7, and Sale 8 have superior access/exposure so each of these sales is considered superior in regard to access/exposure.

## Adjustment Summary

When considering the comparables as a whole we believe that they represent the most similar comparison to the subject in the immediate market area, however they still are not truly comparable. The following tables summarize the aforementioned adjustments applied to the sales.

| Comparable Sale Number | Subject Data | 1 | 2 | 3 | 4 | 5 | 6 | 7 | 8 |
|---|---|---|---|---|---|---|---|---|---|
| Address | North side of SW Martin Highway between SW 84th Avenue and SW 78th Avenue | 7715 SW 36th Street | XXX SW 36th Street | XXX SW 40th Ave | 5143 SW Quail Hollow Street | 8281 SW 42nd Ave | XXX 72nd Avenue | XXX SW Citrus Boulevard | 8027 SW Martin Highway |
| City | | Palm City | Palm City | Palm City | Palm City | Palm City | Palm City | Palm City | Palm City |
| Date of Sale | 24-Apr-17 | 21-Apr-17 | 13-Oct-17 | 26-Sep-16 | 14-Mar-17 | 28-Feb-18 | 1-May-17 | 1-Apr-16 | 18-Feb-16 |
| Location | Palm City | Similar | Similar | Similar | Similar | Similar | Similar | Superior | Superior |
| Land Size (SF) | 432,115 | 217,800 | 217,800 | 827,640 | 217,800 | 878,736 | 435,600 | 363,290 | 432,551 |
| Land Size (AC) | 9.92 | 5.00 | 5.00 | 19.00 | 5.00 | 20.17 | 10.00 | 16.49 | 9.93 |
| Zoning/Land Use | A-2/Ag. Ranchette | RT/MH | RT/MH | RT/MH | A-2/Ag. Ranchette | A-2 & RT/Ag. Ranchette | A-2/Ag. Ranchette | A-2/Ag/Ranchette | A-2/Ag. Ranchette |
| Wetland Estimate | 3.55 | 1.25 | 0.67 | 12.70 | 2.71 | 0.00 | 0.00 | 0.00 | 0.12 |
| % Wetlands | 36% | 25% | 13% | 66% | 54% | 0% | 0% | 0% | 1% |
| Comparative Appeal | Average | Similar | Similar | Inferior | Inferior | Superior | Superior | Superior | Superior |
| Sales Price | $300,000 | $167,500 | $167,500 | $230,000 | $70,000 | $495,000 | $270,000 | $175,000 | $325,000 |
| UnAdjusted Price Per Acre | $30,242 | $33,500 | $33,500 | $12,105 | $14,000 | $24,538 | $27,000 | $10,612 | $32,729 |
| **Transactional Adjustments** | | | | | | | | | |
| Price / SF | | $33,500 | $33,500 | $12,105 | $14,000 | $24,538 | $27,000 | $10,612 | $32,729 |
| Property Rights Conveyed | | 0.0% | 0.0% | 0.0% | 0.0% | 0.0% | 0.0% | 0.0% | 0.0% |
| Adjusted Price | | $33,500 | $33,500 | $12,105 | $14,000 | $24,538 | $27,000 | $10,612 | $32,729 |
| Financing Terms | Conventional | 0.0% | 0.0% | 0.0% | 0.0% | 0.0% | 0.0% | 0.0% | 0.0% |
| Adjusted Price | | $33,500 | $33,500 | $12,105 | $14,000 | $24,538 | $27,000 | $10,612 | $32,729 |
| Conditions of Sale | None | 0.0% | 0.0% | 0.0% | 0.0% | 0.0% | 0.0% | 0.0% | 0.0% |
| Adjusted Price | | $33,500 | $33,500 | $12,105 | $14,000 | $24,538 | $27,000 | $10,612 | $32,729 |
| Expenditures Imm. After Sale | | 0.0% | 0.0% | 0.0% | 0.0% | 0.0% | 0.0% | 0.0% | 0.0% |
| Adjusted Price | | $33,500 | $33,500 | $12,105 | $14,000 | $24,538 | $27,000 | $10,612 | $32,729 |
| Market Conditions | Apr-22 | 0.0% | 0.0% | 0.0% | 0.0% | 0.0% | 0.0% | 0.0% | 0.0% |
| Adjusted Sales - With Transactional Adjustments | | $33,500 | $33,500 | $12,105 | $14,000 | $24,538 | $27,000 | $10,612 | $32,729 |
| **Physical Adjustments** | | | | | | | | | |
| Location | Palm City | Similar | Similar | Similar | Similar | Similar | Similar | Superior | Superior |
| Size | 432,115 | Superior | Superior | Inferior | Superior | Inferior | Similar | Similar | Similar |
| Comparative Appeal | N/A | Similar | Similar | Inferior | Inferior | Superior | Superior | Superior | Superior |
| Zoning | A-2 | Similar | Similar | Similar | Similar | Similar | Similar | Similar | Similar |
| Access/Exposure | Fair | Similar | Similar | Similar | Superior | Superior | Superior | Superior | Superior |
| Overall Adjustments | | Superior | Superior | Inferior | Inferior | Superior | Superior | Superior | Superior |

| Value Ranges | |
|---|---|
| Minimum Price | $10,612 |
| Maximum Price | $33,500 |
| Mean Price | $24,247 |
| Standard Deviation | $9,520 |
| Median | $27,000 |

## Conclusion

Prior to adjustment, the comparable sales ranged from $10,612/Per Acre to $33,500/Per Acre with a mean of $24,247/Per Acre and a median of $27,000/Per Acre. We have concluded at a value range of $23,000/Per Acre to $27,000/Per Acre which is considered reasonable. Due to the large range, we have included a regression analysis with additional sales (totaling 16 sales) of similar parcels within Palm City to determine a price per acre of wetland for the subject property to derive a retrospective market value for Scenario A and a retrospective market value for Scenario B.

SHARFIEXPERTS0000428

## *Regression Analysis*

Below is a regression analysis of (14) sales, including the eight sales from the Sales Comparison Chart above. The chart depicts the value on a price per acre basis in relation to the percentage of wetland on-site.



As seen in the chart above, there is a diminishing value per acre as the percentage of wetlands increases.

**Scenario A** – Scenario A is based on the United States Government's calculations. The "before" estimate of wetlands is 5.97-acre and the "after" estimate of wetlands is 0.79-acres.

**Scenario B** – Scenario B is based on the Defense's calculations. The "before" estimate of wetlands is 3.55-acres and the "after" estimate of wetlands is 1.3-acres.

| | Total Acres | Price Per Acre | % Wetland | Wetland Acres | Market Value | Market Value (Rd) |
|---|---|---|---|---|---|---|
| Scenario A "Before" | 9.92 | $20,000 | 60% | 5.97 | $198,400 | $200,000 |
| Scenario A "After" | 9.92 | $35,000 | 8% | 0.79 | $347,200 | $350,000 |
| Scenario B "Before" | 9.92 | $25,000 | 36% | 3.55 | $248,000 | $250,000 |
| Scenario B "After" | 9.92 | $33,000 | 13% | 1.3 | $327,360 | $330,000 |

SHARFIEXPERTS0000429

# Exhibit L

Defendants' Supplemental Expert Disclosure (June 2, 2022, approx. 5:21 p.m. EST)

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**
**FORT PIERCE DIVISION**

UNITED STATES OF AMERICA,

     Plaintiff,

vs.                                 CASE NO.: 2:21-cv-14205-KAM

BENJAMIN K. SHARFI, in his personal and
fiduciary capacity as trustee of the Benjamin
Sharfi 2002 Trust, and NESHAFARM, INC.,

     Defendants.

                                      /

## DEFENDANTS' SUPPLEMENTAL EXPERT DISCLOSURE

Pursuant to Federal Rule of Civil Procedure 26(a)(2)(A), the Court's Amended Scheduling Order, and the parties' Rule 26(f) Conference Report, Defendants BENJAMIN K. SHARFI, in his personal and fiduciary capacity as trustee of the Benjamin Sharfi 2002 Trust, and NESHAFARM, INC., supplements its Amended Expert Disclosure, served on May 27, 2022, pertaining to the following witness that Defendants may use at trial to present evidence under Federal Rules of Evidence 702, 703, or 705:

1.     Mick Stiksma, MAI, MRICS, Managing Partner, CRE Valuation Services, 9655 S Dixie Highway, Suite 302, Miami, Florida 33156.

This supplemental disclosure is accompanied by an overview of CRE Valuation Services' litigation services, including Mr. Stiksma's curriculum vitae and a summary of Mr. Stiksma's litigation experience, which will be produced today together with documents with production identifiers SHARFIEXPERTS0000430 through SHARFIEXPERTS0000438.

In addition, Defendants disclose that Mr. Stiksma has not authored any publications in the previous 10 years. Moreover, an overview of Mr. Stiksma's compensation to be paid for the services provided in this case is as follows:

Expert Witness Prep & Testimony:   $375 per hour

Consulting Services:
      Research:                     $75 per hour
      Trainee Appraiser:     $150 per hour
      Certified General:      $250 per hour
      MAI:                          $350 per hour

In providing this disclosures or report (or portions thereof), Defendants do not waive any argument they may have that Plaintiff bears the burden of proof with respect to any issue.

Dated:  June 2, 2022

Respectfully submitted,

/s/  Michael G. Zilber
T. Neal McAliley
Florida Bar No. 172091
nmcaliley@carltonfields.com
Michael G. Zilber
Florida Bar No. 1019146
mzilber@carltonfields.com
CARLTON FIELDS, P.A.
2 MiamiCentral
700 NW 1st Avenue, Suite 1200
Miami, Florida 33136
Tel: (305) 530-0050
Fax: (305) 530-0055
*Attorneys for Defendants*

## SERVICE LIST

***United States of America vs. NeshaFarm, Inc., et al.***
**United States District Court, Southern District of Florida**
**Case No.: 2:21-cv-14205-KAM**

| | |
|---|---|
| BRANDON N. ADKINS<br>Bar ID: A5502752<br>ANDREW DOYLE<br>FL Bar No.: 84948<br>JEFFREY HUGHES | CHRISTOPHER F. HAMILTON<br>FL Bar No.: 98527<br>chamilton@sharfiholding.com<br>JOSHUA D. MIRON<br>FL Bar No.: 644811 |

2

| | |
|---|---|
| Bar ID: A5502897<br>United States Department of Justice<br>Environment & Natural Resources Division<br>PO Box 7611<br>Washington, DC 2004<br>Tel: (202) 616-9174 (Adkins)<br>Tel: (415) 744-6469 (Doyle)<br>Fax: (202) 514-8865<br>Brandon.Adkins@usdoj.gov<br>Andrew.Doyle@usdoj.gov<br><br>JUAN ANTONIO GONZALEZ<br>Acting United States Attorney<br><br>DEXTER LEE<br>FL Bar No.: 936693<br>Assistant United States Attorney<br>Southern District of Florida<br>99 N.E. 4th Street<br>Miami, FL 33132<br>Tel: (305) 931-9320<br>Fax: (305) 530-7679<br>DLee@usa.doj.gov<br><br>*Attorneys for Plaintiff, United States of America* | jmiron@sharfiholding.com<br>Sharfi Holdings, Inc.<br>3731 NE Pineapple Avenue<br>2nd Floor<br>Jensen Beach, FL 34957<br>Tel: 813-416-2352<br><br>*Attorney for Defendants* |

# CRE VALUATION SERVICES

Appraisal and Broker Opinion of Value





SHARFIEXPERTS0000430

# About Us

CRE Valuation Services is a full service appraisal and evaluation firm completing reports for a wide array of commercial real estate property types.



Our approach to commercial real estate is unique. We are an independent commercial valuation firm with a proven record of success in the industry achieved through prosperous relationships with our clients and partnerships with leading commercial real estate providers.

All commercial appraisals are compliant and prepared in accordance with the Uniform Standards of Professional Appraisal Practice (USPAP), applicable federal and state regulatory requirements, and the specific requirements of each client.

Our experts average over twenty years of commercial real estate experience and hold appraisal licenses in most states. Several of our appraisers hold an MAI designation, the most respected standard of appraisal credentials.

We comply with RICS, the highest professional qualifications and practice in the development and management of real estate valuation.  We have MRICS designated prefessionals, bringing impartiality, ethical principles, and delivery of the most accurate valuations in the industry.

We support an international network of real esteate brokers, many of whom hold the CCIM and SIOR designations, to provide expert valuation services. This relationship grants us access to the market's leading data our competitors cannot easily access.

In addition, we provide appraisal and consulting services for several national clients allowing us to provide current market based data, industry trends, and analysis in a logical, easy to read, well supported appraisal and Broker Opinion of Value report.

## Why Choose CRE Valuation Service

EXPERIENCE  |  TIMELINESS  |  QUALITY  |  PROFESSIONALISM

SHARFIEXPERTS0000431

# Our Services

- Appraisal

- Appraisal Review

- Consulting

- Demographic Analysis

- Feasibility Studies

- Highest and Best Use Studies

- International Valuation and Consulting

- Land Use Studies and Planning

- Mergers

- Litigation / Litigation Support

- Market Analysis

- Mediation, Arbitration, Dispute Resolution

- Portfolio Valuation and Analysis

- Real Estate Investment Trust Consulting and Valuation

- Real Estate Tax Valuation and Consulting

- Retrospective/Forensic Valuation

SHARFIEXPERTS0000432

# Experience Counts



### Bahamas Beach Resort

Resort properties are a specialty appraisal in which we have an abundance of experience fulfilling. We have completed a number of assignments throughout the Caribbean and resort communities within the US. This resort was a recently renovated property in the Bahamas.

### Florida Bank Branch

Retail bank branches are a specialty appraisal service that is based on a number of criteria exclusive to bank branches. Within this practice we also assist clients with alternative highest and best use scenarios. Whether it is a single branch or a portfolio we have the tools and the resources to assist with bank branch appraisals throughout the United States, Canada and the Caribbean.





### Florida Medical Office Building

Medical office buildings, surgical centers and similar such facilities require specialized practice and we excel in providing our clients with appraisal reports specific to their specialized property type.we recognize the additional cost of building such properties along with the higher rental and sales rates associated with medical related properties.

### Kentucky Equestrian Centers

Many of our customers earn their living from agricultural endeavors ranging from farming, equestrian, land conservation efforts, forestry and many other similar uses. Due to the many specialized areas within this unique property niche and given the way buyers in this market respond, clients need the experience, knowledge and wherewithal our team and partners can provide.





### Long Island, New York Restaurant

Restaurants, public houses, taverns and similar food services operations vary widely and are located throughout every part of US. We pride ourselves in ensuring we apply local knowledge combined with national depth to provide a thorough valuation that is specifically related to the type of restaurant we are appraising.

SHARFIEXPERTS0000433



## Miami Parking Authority

Institutional properties range from government to non-profit organizations that occupy and operate a wide range of services from a variety of property types. Understanding value applications within this not-for-profit property type is an important distinction only a few firms have the expertise and specialized knowledge to assist clients. We have a proven track record in this area.

## Oregon Industrial Cylinders

Industrial properties are the cornerstone of many of the products we use everyday. This indusrty is expanding into other property sub-types including industrial and flex space (office/warehouse) every year at a rapid pace. New and innovative uses for space including creative design and layout modifications continue to stretch the existing landscape of industrial properties. Our willingness to see and apply these new concepts aids in our valuations.





## Virginia Retail

Retail is a property type that is undergoing significant changes. On-line retailing giants have altered the retail landscape for the foreseeable future. This reality has forced retailers to adapt quickly. Understanding these very real changes and providing advisory services to our retail based clients assist them with well researched market data to make informed decisions.

## Florida Mixed-Use

Mixed-use properties are an up and coming property type as many government jurisdictions are recognizing the benefits of a zoning designation allowing for a live, work and play concept. Development opportunities are very strong and requested in walkable communities. Feasibility studies are particularly important in determining the right balance for a proposed mix-used development.





## New York State Resort

Hospitality properties take all shapes, forms and sizes. From upscale hotels, motels and resorts, to camping and other similar tourist based properties, we have a solid team to ensure the right data is applied to the right property type. We take the time to understand the property owners business so we can ensure every feature of their property is included in the valuation.

SHARFIEXPERTS0000434



# Mick Stiksma, MAI, MRICS

## Managing Director - Valuation Services

Throughout Mick's career he has held several management and leadership positions within National and International Commercial Real Estate Firms. Mick has been actively engaged in Residential and Commercial real estate including real estate appraisal and valuation, Broker Opinion of Value (BOV's), real estate sales, real estate development, expert witness services and consulting for over 25 years.

Real Estate Appraisal and Valuation: Creation of two real estate appraisal firms with operations in multiple states. Responsibilities include business development, client relations, management and oversight of appraisal operations. Total value of appraised properties in excess of hundreds of millions of dollars with single valuations over $100,000,000.

Broker Opinion of Values: Creation of a real estate firm responsible for the implementation, management and systemic design of a national program that facilitates Broker Opinion of Values (BOV), also known as Broker Price Opinions (BPO), with the capability of delivering quality reports in a timely fashion throughout the United States.

Real Estate Sales: Residential and commercial sales including business development, purchase and sale transactions that have an aggregate value in excess of $60,000,000.

Real Estate Development: Residential development including acquisition, government liaison, design, bidding, budgeting and implementation of several developments including single family residential and residential subdivisions.

Specializations: Creation of real estate divisions within our structure and/or integral relationships with firms that provide golf course and time share valuation, REO (bank owned)/ Foreclosure work, REIT (Real Estate Investment Trust) appraisals, Tax Appeal, insurance appraisals, portfolio valuation, market feasibility studies and acquisition/disposition counseling.

- Bank of America
- Barnard Law Group
- Bayview Financial Services
- Biscayne Bank
- Carlton Fields
- Columbian Consulate
- Dupont
- Ehrenstein Charbonneau Calderín
- Hall, Lamb and Hall, P.A.
- Jordan Burt
- Midas Muffler
- Nationwide Insurance
- NTB Tires
- NTW/Tires Warehouse
- Tire Kingdom
- Wendy's International

## Education

- Simon Fraser University, Criminalistics Bachelors

## Professional Affiliations & Designations

- Certified General Real Estate Appraiser in Connecticut, Florida, Georgia, Illinois, Kentucky, Maryland, New Jersey, New York, North Dakota, Oregon, Pennsylvania, Tennessee, Vermont, Virginia, and West Virginia.
- Florida Real Estate Realtor
- Appraisal Institute Member
- The Royal Institution of Chartered Surveyors (RICS)

 +1 (786) 533 1245

 mstiksma@crevaluationservices.com

SHARFIEXPERTS0000435



# Jeremy Larkin
## Managing Director - Business Operations

 +1 (786) 260 0402

 jlarkin@crevaluationservices.com

- Autozone
- BNY Mellon
- City of Miami
- FDIC
- Progressive
- MPA
- White & Case

## Education

- University of Miami, Masters of Business Administration

- University of Alabama, Finance and Banking Bachelors

## Professional Affiliations & Designations

- Florida Licensed Real Estate Broker
- Florida Licensed Mortgage Broker
- Florida Licensed Community Association Manager
- International Council of Shopping Centers
- National Association of Industrial & Office Properties
- NAI Global Vice Chairman, 2016 Members' Leadership Board

Areas of expertise include landlord and tenant representation, real estate brokerage, mortgage brokerage, consulting and expert witness services, and, property and asset management. Responsibilities include:

Real Estate Brokerage: Creation of two real estate brokerage businesses with multiple offices.  To date, acquisitions and dispositions of properties have an aggregate value in excess of $136,335,000.

Mortgage Brokerage: Client and product development, identification of debt and equity sources through banks, mortgage and credit companies and conduit securitizations. To date, loans closed have an aggregate value over $93,000,000.

Property and Asset Management: Creation of two property management companies and one asset management division. Portfolio has or currently includes 2,400 residential rental units, 1,100,000 square feet of retail properties and 300,000 square feet of office buildings.



# Edward Schmidt, CCIM
## Director

 +1 (786) 260 0401

 eschmidt@crevaluationservices.com

## Recent Corporate Clients

- Bayview Loan Servicing
- Capital Bank
- Florida Commuinity Bank
- Pet Supplies Plus
- Raisal Bank
- Systemax, Inc.
- Tiger Direct

## Education

- University of Miami, Business Administration Bachelors

## Professional Affiliations & Designations

- Florida Real Estate Salesperson
- Certified Commercial Investment Manager
- International Council of Shopping Centers
- National Association of Industrial & Office Properties
- University of Miami Citizen's Board

Areas of expertise include landlord and tenant representation, real estate brokerage, mortgage brokerage, consulting and expert witness services, and, property and asset management.

Tenant Representation: Represented corporations, professional associations and government agencies for more than 3,000,000 square feet throughout the South Florida area.

Landlord Representation: Have and/or currently represent over 3,000,000 square feet of commercial projects throughout South Florida.

Financing: Represented owners in acquisition, refinancing and construction financing for commercial properties throughout South Florida.

SHARFIEXPERTS0000436

# Mick Stiksma, MAI, MRICS
Litigation Summary

My primary focus over the past 30 years with regards to my real estate experience has been on the performance, management and review of commercial real estate valuations.

From time to time I have selectively provided litigation services as provided in the chart below. My litigation experience has neither focused solely on plaintiffs or defendants.

| Litigation History | | | | |
|---|---|---|---|---|
| Work Description | Jurisdiction | Deposed/ Testimony | Date (Yr) | Client |
| Diplomat Towers v. IRS | Broward - Florida | No | 2022 | Cherry Bekaert |
| Lincoln Drexel, Ltd v. Puccini, LLC | Miami Dade - Florida | No | 2021/2022 | Moyer Law Group |
| Neuhauser v. Reyes | Miami Dade - Florida | Yes | 2022 | Duane Morris |
| RJ's International Trading, LLC v. Crown Castle South, LLC | Miami Dade - Florida | Yes | 2021/2022 | Donelson Baker |
| Maounis v. Shamis | Miami Dade - Florida | Yes | 2021 | Duane Morris |
| Ramos v. Garcia | Miami Dade - Florida | Yes | 2021 | Ayala Law |
| Venice Bay Development v. Bacardi | Bahamas | No | 2021 | Ayala Law |
| LIMN Broadband Services, Inc. | Miami Dade - Florida | No | 2021 | Ayala Law |
| MOTA Pizza Rustica v. Sterling Retail Services Inc. | Miami Dade - Florida | Yes | 2019 | Ayala Law |
| Millard v. Eleuthera Properties Ltd. | Bahamas | No | 2019 | Arbitration between parties |
| Quail v. Biscayne | Miami Dade - Florida | Yes | 2017/2018 | Greenberg Traurig |
| Veranda Comdominium et. al. v. Wachovia Mortgage | Miami Dade - Florida | Yes | 2016/2017 | Carlton Fields |
| Riverside County Transport Commission v. Midas | Riverside - California | No | 2017 | Midas |
| Sacramento County v. Midas | Sacramento - California | No | 2017 | Midas |
| Gilbert J. Fiorentino v. Systemax | Miami Dade - Florida | No | 2017 | Ehrenstein, Charbonneau and Calderin |
| Palm Beach Aviation Authority v. Estrella | Palm Beach - Florida | Yes | 2017/2018 | Marin, Eljaiek, Lopez and Martinez |
| Marinez Probate Circuit Court Miami-Dade County | Miami Dade - Florida | No | 2015 | Hall, Lamb and Hall, P.A. |
| Guterman v. Guterman Family Investment Partnership | Miami Dade - Florida | No | 2015 | Tripp Scott |
| Varas v. Cosme Investments, LLP and B.V. Oil Company | Miami Dade - Florida | No | 2015 | SMGQ Law |
| Intervest National Bank v. Iskander | Pinellas - Florida | Yes | 2010 | MacFarlane Ferguson |
| Intervest National Bank v. Gulf Direct Investments | Pinellas - Florida | Yes | 2010 | MacFarlane Ferguson |
| Baccari v. Intervest National Bank | Pinellas - Florida | Yes | 2010 | MacFarlane Ferguson |
| Intervest National Bank v. Roberts | Pinellas - Florida | Yes | 2010 | MacFarlane Ferguson |
| Intervest National Bank v. Divergence Corporation | Pinellas - Florida | Yes | 2010 | MacFarlane Ferguson |
| Usameribank v. Yasparro | Hillsborough - Florida | Yes | 2010 | MacFarlane Ferguson |
| Tax Appeal | Miami Dade - Florida | No | multiple | Miami-Dade County |
| Tax Appeal | Broward - Florida | Yes | multiple | Broward County |
| Tax Appeal | Lee - Florida | No | multiple | Lee County |
| Tax Appeal | Duval - Florida | Yes | multiple | Duval County |
| Tax Appeal | Pinellas - Florida | Yes | multiple | Pinellas County |
| Tax Appeal | Hillsborough - Florida | No | multiple | Hillsborough County |
| Tax Appeal | Pasco - Florida | Yes | multiple | Pasco County |
| Litigation Support in valuation or consultation | National and international | No | multiple | Multiple |
| Professional Development Program in Litigation | National | n/a | n/a | Appraisal Institute |
| Royal Institute of Chartered Surveyors Speaker | National | n/a | 2019 | Royal Institutute of Chartered Surveyors |

Notes:
Litigation Support is approximately 70% in favor of the Plaintiff
Expert Witness as a percentage of my total time is less than 5%

SHARFIEXPERTS0000437

SHARFIEXPERTS0000438



Ron DeSantis, Governor

Julie I. Brown, Secretary

# STATE OF FLORIDA
## DEPARTMENT OF BUSINESS AND PROFESSIONAL REGULATION

### FLORIDA REAL ESTATE APPRAISAL BD

THE CERTIFIED GENERAL APPRAISER HEREIN IS CERTIFIED UNDER THE
PROVISIONS OF CHAPTER 475, FLORIDA STATUTES

## STIKSMA, MICKI RAY
822 A1A HIGHWAY NORTH SUITE 310
PONTE VEDRA BEACH    FL 32082

**LICENSE NUMBER: RZ2990**

**EXPIRATION DATE:  NOVEMBER 30, 2022**

Always verify licenses online at MyFloridaLicense.com

Do not alter this document in any form.

This is your license. It is unlawful for anyone other than the licensee to use this document.

