# EXHIBIT 17

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**

UNITED STATES OF AMERICA,

        *Plaintiff*,

    v.

BENJAMIN K. SHARFI, in his personal and
fiduciary capacity as trustee of the Benjamin
Sharfi 2002 Trust, and NESHAFARM, INC.

        *Defendants*.

Case No. 2:21-cv-14205-KAM

<u>**UNITED STATES' AMENDED OBJECTIONS AND ANSWERS TO
DEFENDANT NESHAFARM, INC.'S FIRST SET OF
INTERROGATORIES TO PLAINTIFF**</u>

Pursuant to Federal Rules of Civil Procedure 26 and 33, the United States of America submits the following amended objections and answers to Defendant NeshaFarm, Inc.'s First Set of Interrogatories to Plaintiff.

The United States' investigation of the matters alleged in the Amended Complaint is continuing. Accordingly, the United States' amended objections and answers to the interrogatories are based only on currently available information. The United States reserves the right to amend or supplement any response if different or additional information is subsequently discovered during the course of this litigation, or if the relevance, significance or applicability of information currently known is subsequently ascertained. Nothing in this response shall prejudice the United States' right to further discovery, research, analysis, or presentation of evidence at trial.

The United States' responses do not in any way constitute an adoption of Defendant NeshaFarm's instructions or definitions of words or phrases contained in the interrogatories. The United States' obligations in responding to Defendant NeshaFarm's interrogatories are governed by the federal and local rules of civil procedure. The United States' response to each of the interrogatories should not be taken as an admission or a concession of the existence of any fact set forth or assumed by an interrogatory, or that such answer constitutes evidence of any fact thus set forth or assumed. Nor should the United States' response to each of the interrogatories be deemed an admission that the information contained therein is material, relevant, or admissible at trial in this case.

The United States responds on behalf of only the United States Army Corps of Engineers and not on behalf of the entire United States Government.

### AMENDED OBJECTIONS AND ANSWERS TO INTERROGATORIES

**DEFENDANT NESHAFARM'S INTERROGATORY NO. 1:** Please identify all

persons with knowledge of the alleged significant nexus between wetlands on the Site and the

traditional navigable waters identified in paragraph 36 of the Amended Complaint.

**UNITED STATES' ANSWER:**

Robert J. Halbert
Lyndon C. Lee, Ph.D.
Wade L. Nutter, Ph.D.
Jonathan Pempek
Kai Coshow Rains, Ph.D.
Samantha L. Rice (personal observations during May 14, 2018 limited Site inspection)
Scott R. Stewart, Ph.D.
Michael M. Wylie, M.S.

**DEFENDANT NESHAFARM'S INTERROGATORY NO. 2:** Please identify all

persons that you may call as a witness at trial in this case.

**UNITED STATES' ANSWER:** The United States may call as a witness at trial any

person identified in its Initial Disclosures and any supplement thereto and in its Expert

Disclosures.

**DEFENDANT NESHAFARM'S INTERROGATORY NO. 3:** Please describe the

factual bases for the allegations and contentions in paragraphs 24–25 of the Amended Complaint.

**UNITED STATES' ANSWER:** Paragraph 24 of the Amended Complaint alleges, "Prior

to the conduct alleged below, approximately five to six acres of the Site were inundated or

saturated by surface or ground water at a frequency and duration sufficient to support, and under

normal circumstances did support, a prevalence of vegetation typically adapted for life in

saturated soil conditions." Paragraph 25 of the Amended Complaint alleges, "The approximately

five to six acres of the Site described in Paragraph 24 were wetlands."

The term "wetlands" means "areas that are inundated or saturated by surface or ground water at a frequency and duration sufficient to support, and that under normal circumstances do support, a prevalence of vegetation typically adapted for life in saturated soil conditions. 33 C.F.R. § 328.3(b) (1987). As alleged in the Amended Complaint, at the time the United States Army Corps of Engineers conducted a limited inspection of the Site on May 14, 2018, standing water was present on most areas of the Site; many areas dominated by obligate plant communities were present immediately adjacent to the road around the perimeter of the Site in undisturbed locations, as well as adjacent to other impacted areas of the Site; a surface layer of muck and algal matting was present in locations near the road and appeared to persist through the center of the Site; and there were hydrological indicators in undisturbed areas of the Site, including water marks, elevated lichen lines, muck surface, hydrological plant adaptations, and algal matting.

Further, the United States intends to offer expert testimony to support the existence of wetlands on the Site. On February 18, 2022, the United States served on Defendants the U.S. Department of Justice Expert Team Report. Figure V.C.2.1 of the report depicts a 5.97-acre wetland boundary on the Site. Part V.C.1–2 of the report summarizes the bases for the determination of the areal extent of wetlands on the Site, including a review Defendants' consultants' prior delineations of wetlands on the Site by DLS Environmental Services, Inc. and EDC, Inc., interpretation of standard mapping, aerial photography, remote sensing, field inspection reports, monitoring water levels at the Site and reference areas, and three field investigations of the Site and surrounding areas conducted in August, September, and October 2021. All of the facts and data relied upon by the experts is contained within the report. On February 18, 2022, the United States also produced the photographs, field notes, hydrologic data,

and LIDAR data that the United States' experts collected as part of their investigation. Those documents are identified USAEXPERTS_0000001 through USAEXPERTS_0001056.

Additional facts supporting the allegations in paragraphs 24 through 25 include aerial photographs and imagery (e.g., USACE0000014); ground-level observations or photographs by persons from the South Florida Water Management District (e.g., USACE0000014; USACE0000049; USACE0000355; USACE0000976); ground-level observations or photographs by or in the files of the United States Army Corps of Engineers (i.e., Jonathan Pempek, Samantha Rice, Robert Halbert; e.g., USACE0000306 through USACE0000346); ground-level observations, photographs, and assessments by Defendants' environmental consultants (e.g., DLS0000001 through DLS0000238; DEF 0000294); and statements by Defendants, their agents or employees, and their consultants to the United States Army Corps of Engineers and to the Florida Department of Agriculture and Consumer Services (e.g., USACE0000001; USACE0000078; USACE0000364; USACE0000513; USACE0000517; USACE0000518; USACE0000526; USACE0000533; FDACS0000001; FDACS0000245; DEF 0000659; DEF 0000677; DEF 0000681; DEF 0000703; DEF 0000710; DEF 0000752).

The United States has agreed to produce non-privileged or otherwise protected documents supporting the allegations in the Amended Complaint based on a reasonable search. This includes all non-privileged or otherwise protected facts and data collected as part of the Jacksonville District of the United States Army Corps of Engineers' investigation of the conduct. Discovery is ongoing. It would be unfair and unduly burdensome at this stage of the case for the United States to identify each and every document that contains a fact supporting the existence of wetlands on the Site among the over 5,000 pages of documents that the United States and third parties have produced to date, in addition to the over 2,000 pages of documents Defendants

produced. The examples of documents referred to above are, therefore, examples; they are not meant to limit the United States' ability to rely on other evidence to establish that the Site contains areas that are "wetlands" or any other elements of Defendants' liability in this case. The United States may rely on additional documents and information as appropriate.

**DEFENDANT NESHAFARM'S INTERROGATORY NO. 4:** Please describe the factual bases for the allegations and contentions in paragraphs 26–27 of the Amended Complaint regarding the "contiguous wetland complex."

**UNITED STATES' ANSWER:** Paragraph 26 of the Amended Complaint alleges, "Prior to the conduct alleged below, the wetlands on the Site were part of a larger contiguous wetland complex." Paragraph 27 of the Amended Complaint alleges, "The contiguous wetland complex borders and abuts Bessey Creek."

The term "wetlands" means "areas that are inundated or saturated by surface or ground water at a frequency and duration sufficient to support, and that under normal circumstances do support, a prevalence of vegetation typically adapted for life in saturated soil conditions. 33 C.F.R. § 328.3(b) (1987). The contiguous wetland complex of which wetlands on the Site were part, borders and abuts Bessey Creek northward of the Site, specifically, wetlands located on the adjacent property northward of the Site owned by Countess Joy, LLC ("Countess Joy Reference Area").

At the time the United States Army Corps of Engineers conducted a limited inspection of the Site on May 14, 2018, standing water was present on most areas of the Site; many areas dominated by obligate plant communities were present immediately adjacent to the road around the perimeter of the Site in undisturbed locations, as well as adjacent to other impacted areas of the Site; a surface layer of muck and algal matting was present in locations near the road and

6

appeared to persist through the center of the Site; and there were hydrological indicators in undisturbed areas of the Site, including water marks, elevated lichen lines, muck surface, hydrological plant adaptations, and algal matting.

Further, the United States intends to offer expert testimony to support the existence of wetlands on the Site and in areas of the property northward of the Site owned by Countess Joy, LLC. On February 18, 2022, the United States served on Defendants the U.S. Department of Justice Expert Team Report. Figure V.C.2.1 of the report depicts a 5.97-acre wetland boundary on the Site. Part V.C.1–2 of the report summarizes the bases for the determination of the areal extent of wetlands on the Site, including a review Defendants' consultants' prior delineations of wetlands on the Site by DLS Environmental Services, Inc. and EDC, Inc., interpretation of standard mapping, aerial photography, remote sensing, field inspection reports, monitoring water levels at the Site and reference areas, and three field investigations of the Site and surrounding areas conducted in August, September, and October 2021. Also as explained in the report, the United States' experts conducted a series of fourteen wetland determinations on the property northward of the Site, referred to as the "Countess Joy Reference Area." Thirteen of the sampled points were wetlands and one sampled point was uplands (identified as point W10). Figure IV.B.1.2 depicts the locations of the fourteen sampled points. The wetlands on the Countess Joy Reference Area are contiguous to the Site; abut the roadside ditch along 84th Avenue that flows to Bessey Creek; abut the N/S Ditch; and abut Bessey Creek.

All of the facts and data relied upon by the experts is contained within the report. On February 18, 2022, the United States also produced the photographs, field notes, hydrologic data, and LIDAR data that the United States' experts collected as part of their investigation. Those documents are identified USAEXPERTS_0000001 through USAEXPERTS_0001056.

Additional facts supporting the allegations in paragraphs 26 through 27 include aerial photographs and imagery (e.g., USACE0000014); ground-level observations or photographs by persons from the South Florida Water Management District (e.g., USACE0000014; USACE0000049; USACE0000355; USACE0000976); ground-level observations or photographs by or in the files of the United States Army Corps of Engineers (i.e., Jonathan Pempek, Samantha Rice, Robert Halbert; e.g., USACE0000306 through USACE0000346); ground-level observations, photographs, and assessments by Defendants' environmental consultants (e.g., DLS0000001 through DLS0000238; DEF 0000294); and statements by Defendants, their agents or employees, and their consultants to the United States Army Corps of Engineers and to the Florida Department of Agriculture and Consumer Services (e.g., USACE0000001; USACE0000078; USACE0000364; USACE0000513; USACE0000517; USACE0000518; USACE0000526; USACE0000533; FDACS0000001; FDACS0000245; DEF 0000659; DEF 0000677; DEF 0000681; DEF 0000703; DEF 0000710; DEF 0000752).

The United States has agreed to produce non-privileged or otherwise protected documents supporting the allegations in the Amended Complaint based on a reasonable search. This includes all non-privileged or otherwise protected facts and data collected as part of the Jacksonville District of the United States Army Corps of Engineers' investigation of the conduct. Discovery is ongoing. It would be unfair and unduly burdensome at this stage of the case for the United States to identify each and every document that contains a fact supporting the existence of wetlands on the Site and the contiguous wetlands on the Countess Joy LLC property among the over 5,000 pages of documents that the United States and third parties have produced to date, in addition to the over 2,000 pages of documents Defendants produced. The examples of documents referred to above are, therefore, examples; they are not meant to limit the United

8

States' ability to rely on other evidence to establish that the Site contains areas that are "wetlands" or any other elements of Defendants' liability in this case. The United States may rely on additional documents and information as appropriate.

**DEFENDANT NESHAFARM'S INTERROGATORY NO. 5:** Please identify the location and boundaries of the "contiguous wetland complex" alleged in paragraphs 26–27 of the Amended Complaint.

**UNITED STATES' ANSWER:** As alleged in the Amended Complaint, the contiguous wetland complex of which wetlands on the Site were part, borders and abuts Bessey Creek northward of the Site. Specifically, wetlands located on the adjacent property northward of the Site owned by Countess Joy, LLC ("Countess Joy Reference Area"). On February 18, 2022, the United States served on Defendants the U.S. Department of Justice Expert Team Report. As explained in the report, the United States' experts conducted a series of fourteen wetland determinations on the property northward of the Site, referred to as the "Countess Joy Reference Area." Thirteen of the sampled points were wetlands and one sampled point was uplands (identified as point W10). Figure IV.B.1.2 depicts the locations of the fourteen sampled points. The wetlands on the Countess Joy Reference Area are contiguous to the Site; abut the roadside ditch along 84th Avenue that flows to Bessey Creek; abut the N/S Ditch; and abut Bessey Creek.

**DEFENDANT NESHAFARM'S INTERROGATORY NO. 6:** Please identify the closest downstream location to the Site where Bessey Creek becomes subject to the ebb and flow of the tide, as alleged in paragraph 29 of the Amended Complaint.

**UNITED STATES' ANSWER:** Paragraph 29 of the Amended Complaint alleges, "As Bessey Creek flows eastward, it becomes subject to the ebb and flow of the tide." The closest traditional navigable water to the Site is the tidally influenced reach of Bessey Creek that flows

under SW Murphy Road Bridge, approximately 4.5 miles from the Site (latitude 27.1903° north and longitude 80.2977° west).

**DEFENDANT NESHAFARM'S INTERROGATORY NO. 7:** Please identify the closest downstream location to the Property where Bessey Creek "becomes navigable in fact or could reasonably be so made" as alleged in paragraph 30 of the Amended Complaint.

**UNITED STATES' ANSWER:** Paragraph 30 of the Amended Complaint alleges, "As Bessey Creek flows eastward, it becomes navigable in fact or could reasonably be so made." The closest traditional navigable water to the Site is the tidally influenced reach of Bessey Creek that flows under SW Murphy Road Bridge, approximately 4.5 miles from the Site (latitude 27.1903° north and longitude 80.2977° west).

**DEFENDANT NESHAFARM'S INTERROGATORY NO. 8:** Please describe the factual bases of the allegations and contentions made in paragraph 36 of the Amended Complaint.

**UNITED STATES' ANSWER:** Paragraph 36 of the Amended Complaint alleges, "Prior to the conduct alleged below, the wetlands on the Site, when considered alone or in combination with similarly situated lands in the region, significantly affected the chemical, physical, and biological integrity of traditional navigable waters, including Bessey Creek, the C-23 canal, or the North Fork of the St. Lucie River.

The term "wetlands" means "areas that are inundated or saturated by surface or ground water at a frequency and duration sufficient to support, and that under normal circumstances do support, a prevalence of vegetation typically adapted for life in saturated soil conditions. 33 C.F.R. § 328.3(b) (1987). At the time the United States Army Corps of Engineers conducted a limited inspection of the Site on May 14, 2018, standing water was present on most areas of the

10

Site; many areas dominated by obligate plant communities were present immediately adjacent to the road around the perimeter of the Site in undisturbed locations, as well as adjacent to other impacted areas of the Site; a surface layer of muck and algal matting was present in locations near the road and appeared to persist through the center of the Site; and there were hydrological indicators in undisturbed areas of the Site, including water marks, elevated lichen lines, muck surface, hydrological plant adaptations, and algal matting. As alleged in the Amended Complaint, the contiguous wetland complex of which wetlands on the Site were part, borders and abuts Bessey Creek northward of the Site. Specifically, wetlands located on the adjacent property northward of the Site owned by Countess Joy, LLC ("Countess Joy Reference Area").

Like the Site's wetlands, "similarly situated" wetlands are those that are connected to tributaries that flow to the same waterbody (e.g., Bessey Creek). They occur in similar landscape positions, on similar soil types, and have similar structure and perform similar ecosystem functions in the waterbody's watershed. For purposes of the significant nexus analysis in this case, the "similarly situated lands in the region" means the approximately 1,064 acres of similarly situated wetlands areas mapped by the U.S. fish and Wildlife Service's National Wetlands Inventory, which are depicted in Figure II.B.1 of the U.S. Department of Justice Expert Team Report that the United States served on February 18, 2022.

The United States intends to offer expert testimony to support the existence of wetlands on the Site and in areas of the property northward of the Site owned by Countess Joy, LLC and that wetlands on the Site, when considered alone or in combination with similarly situated lands in the region, significantly affected the chemical, physical, and biological integrity of traditional navigable waters, including Bessey Creek, the C-23 canal, or the North Fork of the St. Lucie River. The U.S. Department of Justice Expert Team Report referred to above contains the

opinions the United States' witnesses will express on these topics as well as the facts or data considered by the experts in forming those opinions. Figure V.C.2.1 of the report depicts a 5.97-acre wetland boundary on the Site. Part V.C.1–2 of the report summarizes the bases for the determination of the areal extent of wetlands on the Site, including a review Defendants' consultants' prior delineations of wetlands on the Site by DLS Environmental Services, Inc. and EDC, Inc., interpretation of standard mapping, aerial photography, remote sensing, field inspection reports, monitoring water levels at the Site and reference areas, and three field investigations of the Site and surrounding areas (including the Countess Joy, LLC property) conducted in August, September, and October 2021. Also as explained in the report, the United States' experts conducted a series of fourteen wetland determinations on the property northward of the Site, referred to as the "Countess Joy Reference Area." Thirteen of the sampled points were wetlands and one sampled point was uplands (identified as point W10). Figure IV.B.1.2 depicts the locations of the fourteen sampled points. The wetlands on the Countess Joy Reference Area are contiguous to the Site; abut the roadside ditch along 84th Avenue that flows to Bessey Creek; abut the N/S Ditch; and abut Bessey Creek.

All of the facts and data relied upon by the experts is contained within the report. On February 18, 2022, the United States also produced the photographs, field notes, hydrologic data, and LIDAR data that the United States' experts collected as part of their investigation. Those documents are identified USAEXPERTS_0000001 through USAEXPERTS_0001056.

Additional facts supporting the allegations in paragraph 36 include aerial photographs and imagery (e.g., USACE0000014); ground-level observations or photographs by persons from the South Florida Water Management District (e.g., USACE0000014; USACE0000049; USACE0000355; USACE0000976); ground-level observations or photographs by or in the files

of the United States Army Corps of Engineers (i.e., by Jonathan Pempek, Samantha Rice, Robert Halbert; e.g., USACE0000306 through USACE0000346); ground-level observations, photographs, and assessments by Defendants' environmental consultants (e.g., DLS0000001 through DLS0000238; DEF 0000294); and statements by Defendants, their agents or employees, and their consultants to the United States Army Corps of Engineers and to the Florida Department of Agriculture and Consumer Services (e.g., USACE0000001; USACE0000078; USACE0000364; USACE0000513; USACE0000517; USACE0000518; USACE0000526; USACE0000533; FDACS0000001; FDACS0000245; DEF 0000659; DEF 0000677; DEF 0000681; DEF 0000703; DEF 0000710; DEF 0000752).

The United States has agreed to produce non-privileged or otherwise protected documents supporting the allegations in the Amended Complaint based on a reasonable search. This includes all non-privileged or otherwise protected facts and data collected as part of the Jacksonville District of the United States Army Corps of Engineers' investigation of the conduct. Discovery is ongoing. It would be unfair and unduly burdensome at this stage of the case for the United States to identify each and every document that contains a fact supporting the existence of wetlands on the Site and the contiguous wetlands on the Countess Joy LLC property, or their effects on the chemical, physical, or biological integrity of Bessey Creek and downstream waters among the over 5,000 pages of documents that the United States and third parties have produced to date, in addition to the over 2,000 pages of documents Defendants produced. The examples of documents referred to above are, therefore, examples; they are not meant to limit the United States' ability to rely on other evidence to establish any element of Defendants' liability in this case. The United States may rely on additional documents and information as appropriate.

**DEFENDANT NESHAFARM'S INTERROGATORY NO. 9:** Identify the "similarly situated lands of the region" alleged in paragraph 36 of the Amended Complaint.

**UNITED STATES' ANSWER:** Paragraph 36 of the Amended Complaint alleges, "Prior to the conduct alleged below, the wetlands on the Site, when considered alone or in combination with similarly situated lands in the region, significantly affected the chemical, physical, and biological integrity of traditional navigable waters, including Bessey Creek, the C-23 canal, or the North Fork of the St. Lucie River." Like the Site's wetlands, "similarly situated" wetlands are those that are connected to tributaries that flow to the same waterbody (e.g., Bessey Creek). They occur in similar landscape positions, on similar soil types, and have similar structure and perform similar ecosystem functions in the waterbody's watershed. For purposes of the significant nexus analysis in this case, the "similarly situated lands in the region" means the approximately 1,064 acres of similarly situated wetlands areas mapped by the U.S. fish and Wildlife Service's National Wetlands Inventory, which are depicted in Figure II.B.1 of the U.S. Department of Justice Expert Team Report that the United States served on February 18, 2022.

**DEFENDANT NESHAFARM'S INTERROGATORY NO. 10:** Identify all ways that, prior to the conduct alleged in the Amended Complaint, "wetlands on the Site … significantly affected the chemical … integrity of traditional navigable waters" as alleged in paragraph 36 of the Amended Complaint.

**UNITED STATES' OBJECTIONS:** The United States objects to Interrogatory No. 10 as overbroad because the request is not limited to any time period before the conduct alleged in the Amended Complaint.

**UNITED STATES' ANSWER:** Paragraph 36 of the Amended Complaint alleges, "Prior to the conduct alleged below, the wetlands on the Site, when considered alone or in combination

with similarly situated lands in the region, significantly affected the chemical, physical, and biological integrity of traditional navigable waters, including Bessey Creek, the C-23 canal, or the North Fork of the St. Lucie River." The U.S. Department of Justice Expert Team Report (February 18, 2022) details the ways that wetlands on the Site, when considered alone or in combination with similarly situated lands in the region, significantly affect the chemical, physical, and biological integrity of traditional navigable waters. To summarize, the Site's wetlands considered alone or in combination with "similarly situated" wetlands in the Bessey Creek watershed perform many important functions that significantly affect the structure, functioning, and integrity of downstream traditional navigable waters. Like the Site's wetlands, "similarly situated" wetlands are those that are connected to tributaries that flow to the same waterbody (e.g., Bessey Creek). They occur in similar landscape positions, on similar soil types, and have similar structure and perform similar ecosystem functions in the waterbody's watershed. The "chemical," "physical," and "biological" effects of the Site's wetlands and similarly situated lands on traditional navigable waters overlap. However, for purposes of answering the interrogatory, the Site's wetlands and similarly situated lands significantly affected the chemical integrity of traditional navigable waters by storing and releasing water from precipitation, floods, and stormwater inputs on a long-term and short-term basis; filtering flood and stormwater flows and releasing flows laterally to adjacent tributaries; storing incoming flows as groundwater, which is released to the atmosphere through plant transpiration or by contributing subsurface water flows to adjacent tributaries; storing, cycling, transforming, or removing nutrients and other elements or compounds; producing and exporting organic matter; and retaining and trapping sediment.

**DEFENDANT NESHAFARM'S INTERROGATORY NO. 11:** Identify all ways that, prior to the conduct alleged in the Amended Complaint, "wetlands on the Site … significantly affected the … biological … integrity of traditional navigable waters" as alleged in paragraph 36 of the Amended Complaint.

**UNITED STATES' OBJECTIONS:** The United States objects to Interrogatory No. 11 as overbroad because the request is not limited to any time period before the conduct alleged in the Amended Complaint.

**UNITED STATES' ANSWER:** Paragraph 36 of the Amended Complaint alleges, "Prior to the conduct alleged below, the wetlands on the Site, when considered alone or in combination with similarly situated lands in the region, significantly affected the chemical, physical, and biological integrity of traditional navigable waters, including Bessey Creek, the C-23 canal, or the North Fork of the St. Lucie River." The U.S. Department of Justice Expert Team Report (February 18, 2022) details the ways that wetlands on the Site, when considered alone or in combination with similarly situated lands in the region, significantly affect the chemical, physical, and biological integrity of traditional navigable waters. To summarize, the Site's wetlands considered alone or in combination with "similarly situated" wetlands in the Bessey Creek watershed perform many important functions that significantly affect the structure, functioning, and integrity of downstream traditional navigable waters. Like the Site's wetlands, "similarly situated" wetlands are those that are connected to tributaries that flow to the same waterbody (e.g., Bessey Creek). They occur in similar landscape positions, on similar soil types, and have similar structure and perform similar ecosystem functions in the waterbody's watershed. The "chemical," "physical," and "biological" effects of the Site's wetlands and similarly situated lands on traditional navigable waters overlap. However, for purposes of

answering the interrogatory, the Site's wetlands and similarly situated lands significantly affected the biological integrity of traditional navigable waters by storing and releasing water from precipitation, floods, and stormwater inputs on a long-term and short-term basis; filtering flood and stormwater flows and releasing flows laterally to adjacent tributaries; storing incoming flows as groundwater, which is released to the atmosphere through plant transpiration or by contributing subsurface water flows to adjacent tributaries; storing, cycling, transforming, or removing nutrients and other elements or compounds; producing and exporting organic matter; and maintaining structure and functioning of plant and faunal communities and habitats.

**DEFENDANT NESHAFARM'S INTERROGATORY NO. 12:** Identify all ways that, prior to the conduct alleged in the Amended Complaint, "wetlands on the Site … significantly affected the … physical … integrity of traditional navigable waters" as alleged in paragraph 36 of the Amended Complaint.

**UNITED STATES' OBJECTIONS:** The United States objects to Interrogatory No. 12 as overbroad because the request is not limited to any time period before the conduct alleged in the Amended Complaint.

**UNITED STATES' ANSWER:** Paragraph 36 of the Amended Complaint alleges, "Prior to the conduct alleged below, the wetlands on the Site, when considered alone or in combination with similarly situated lands in the region, significantly affected the chemical, physical, and biological integrity of traditional navigable waters, including Bessey Creek, the C-23 canal, or the North Fork of the St. Lucie River." The U.S. Department of Justice Expert Team Report (February 18, 2022) details the ways that wetlands on the Site, when considered alone or in combination with similarly situated lands in the region, significantly affect the chemical, physical, and biological integrity of traditional navigable waters. To summarize, the Site's

17

wetlands considered alone or in combination with "similarly situated" wetlands in the Bessey Creek watershed perform many important functions that significantly affect the structure, functioning, and integrity of downstream traditional navigable waters. Like the Site's wetlands, "similarly situated" wetlands are those that are connected to tributaries that flow to the same waterbody (e.g., Bessey Creek). They occur in similar landscape positions, on similar soil types, and have similar structure and perform similar ecosystem functions in the waterbody's watershed. The "chemical," "physical," and "biological" effects of the Site's wetlands and similarly situated lands on traditional navigable waters overlap. However, for purposes of answering the interrogatory, the Site's wetlands and similarly situated lands significantly affected the physical integrity of traditional navigable waters by storing and releasing water from precipitation, floods, and stormwater inputs on a long-term and short-term basis; filtering flood and stormwater flows and releasing flows laterally to adjacent tributaries; storing incoming flows as groundwater, which is released to the atmosphere through plant transpiration or by contributing subsurface water flows to adjacent tributaries; and retaining and trapping sediment.

**DEFENDANT NESHAFARM'S INTERROGATORY NO. 13:** Please identify all known sources of information regarding the chemical, physical and biological integrity of Bessey Creek, C-23 and North Fork of the St. Lucie River.

**UNITED STATES' OBJECTIONS:** The United States objects to Interrogatory No. 13 as overbroad because the request is not limited to any time period and does not identify any agency or individual that possesses "know[ledge]" of the requested information.

**UNITED STATES' ANSWER:**

United States' Experts

Lyndon C. Lee, Ph.D.
Wade L. Nutter, Ph.D.

Kai Coshow Rains, Ph.D.
Scott R. Stewart, Ph.D.
Michael M. Wylie, M.S.
U.S. Department of Justice Expert Team Report (February 18, 2022) and facts and data considered by the experts in forming their opinions contained in the report
Photographs, field notes, hydrologic data, and LIDAR data that the United States' experts collected as part of their investigation (USAEXPERTS_0000001 through USAEXPERTS_0001056)

Percipient Witnesses

Wayne Blyth
Robert J. Halbert
Jessica Huffman
Kevin Kryzda
Scott McNabb
Toby Overdorf
Jonathan Pempek
Samantha L. Rice
Benjamin K. Sharfi
Danna Small
Trisha Stone
Gregory Vazquez
Christopher Watkins

Documents

The United States has agreed to produce non-privileged or otherwise protected documents supporting the allegations in the Amended Complaint based on a reasonable search. As relevant to this interrogatory, paragraph 36 of the Amended Complaint alleges, "Prior to the conduct alleged below, the wetlands on the Site, when considered alone or in combination with similarly situated lands in the region, significantly affected the chemical, physical, and biological integrity of traditional navigable waters, including Bessey Creek, the C-23 canal, or the North Fork of the St. Lucie River." Facts supporting the allegations in paragraph 36 include aerial photographs and imagery (e.g., USACE0000014); ground-level observations or photographs by persons from the South Florida Water Management District (e.g., USACE0000014; USACE0000049; USACE0000355; USACE0000976); ground-level observations or photographs

19

by or in the files of the United States Army Corps of Engineers (i.e., by Jonathan Pempek, Samantha Rice, Robert Halbert; e.g., USACE0000306 through USACE0000346); ground-level observations, photographs, and assessments by Defendants' environmental consultants (e.g., DLS0000001 through DLS0000238; DEF 0000294); statements by Defendants, their agents or employees, and their consultants to the United States Army Corps of Engineers and to the Florida Department of Agriculture and Consumer Services (e.g., USACE0000001; USACE0000078; USACE0000364; USACE0000513; USACE0000517; USACE0000518; USACE0000526; USACE0000533; FDACS0000001; FDACS0000245; DEF 0000659; DEF 0000677; DEF 0000681; DEF 0000703; DEF 0000710; DEF 0000752); Bessey Creek HWTT Water Use Individual Permit (USACE0000235).

Because wetlands on the Site have a significant nexus to Bessey Creek and downstream waters, and Defendants filled and, as a result, functionally diminished the Site's wetlands, nearly all of the produced documents are in some way relevant to the chemical, physical, or biological integrity of Bessey Creek and downstream waters. Discovery is ongoing. It would be unfair and unduly burdensome at this stage of the case for the United States to identify each and every document regarding the chemical, physical, or biological integrity of Bessey Creek and downstream waters among the over 5,000 pages of documents that the United States and third parties have produced to date, in addition to the over 2,000 pages of documents Defendants produced. The examples of documents referred to above are, therefore, examples; they are not meant to limit the United States' ability to rely on other evidence to establish any element of Defendants' liability in this case. The United States may rely on additional documents and information as appropriate.

**DEFENDANT NESHAFARM'S INTERROGATORY NO. 14:** Please identify all ways that the Defendants' activities on the Site alleged in the Amended Complaint affected the chemical, physical and/or biological integrity of traditional navigable waters downstream of the Site.

**UNITED STATES' OBJECTIONS:** The United States objects to Interrogatory No. 14 as irrelevant because it seeks information regarding ways that Defendants' activities affected the chemical, physical, or biological integrity of traditional navigable waters and thus mistakes the applicable standard for whether a wetland meets the "significant nexus" test.

**UNITED STATES' ANSWER:** The U.S. Department of Justice Expert Team Report (February 18, 2022) details the ways that Defendants' conduct impacted waters of the United States. To summarize, prior to the conduct alleged in the Amended Complaint, the wetlands on the Site, when considered alone or in combination with similarly situated lands in the region, significantly affected the chemical, physical, and biological integrity of traditional navigable waters, including by storing and releasing water from precipitation, floods, and stormwater inputs on a long-term and short-term basis; filtering flood and stormwater flows and releasing flows laterally to adjacent tributaries; storing incoming flows as groundwater, which is released to the atmosphere through plant transpiration or by contributing subsurface water flows to adjacent tributaries; retaining and trapping sediment; storing, cycling, transforming, or removing nutrients and other elements or compounds; producing and exporting organic matter; and maintaining structure and functioning of plant and faunal communities and habitats.

Defendants mechanically cleared, excavated, and filled wetlands at the Site. Specifically, Defendants mechanically cleared vegetation and redistributed soils, exported fill material, imported fill and redistributed it, land leveled, placed grass turf mats, constructed a road and

buildings, and consolidated drainage in wetlands at the Site. The scale and scope of wetlands impacts on the Site are such that original physical environmental conditions that did support the suite of hydrologic, biogeochemical, plant community, and faunal support/habitat wetland ecosystem functions are no longer present and not recoverable.

The impacts are permanent. The combination of Defendants' conduct eliminated most of the wetlands on the Site. Any wetlands that remain are highly degraded and function at far less than capacity and will continue to do so for many years to come. Defendants' conduct altered patterns of water flow and circulation and removed or substituted organic soils and hydric mineral soils with imported, leveled, and drained fill materials. This has caused a permanent and irreversible change of state of wetlands physical environmental conditions and therefore the Site's potential to support functioning wetlands. The scale and scope of water/wetlands impacts on the Site are such that original conditions that would support the suite of hydrologic, biogeochemical, plant community, and faunal support/habitat ecosystem functions are not present and not recoverable. For example, fundamental alterations to patterns of water flow and circulation and removal/substitution of organic soils with imported mineral soil fill materials has caused a permanent and irreversible change of state of waters/wetlands physical environmental conditions and associated hydrologic, biogeochemical, plant community, and faunal support/habitat ecosystem functions on the Site.

Defendants' conduct directly impacted waters of the United States at the Site (i.e., the Site's wetlands). For example, Defendants' conduct significantly changed the bottom elevation of waters of the United States on the Site, changed wetlands to uplands, and functionally and physically isolated any remaining wetlands on the Site from, for example, abutting wetlands on

the Countess Joy, LLC property north of the Site, the N/S Ditch, and Bessey Creek (including its downstream traditional navigable water reach).

Impacts to wetlands on the Site have degraded or eliminated the structure and functioning of plant and faunal communities that would have occurred on the Site prior to mechanical clearing of vegetation, earthwork, consolidation drainage, and development. For example, after mechanical clearing of vegetation and associated redistribution of soils, excavations and export of native soils, imports of fill, land levelling and some construction of roads and buildings, Bahia grass sod and turf mats were installed on most of the pasture areas of the Site. Discharges of dredged and/or fill material, redistribution of fill, land levelling and placement of grass turf mats prevents the former wetland plant community from re-populating the Site.

Defendants' conduct also indirectly and cumulatively impacted downstream waters of the United States. For example, Defendants' conduct altered the timing, volume, and rates of water discharges off the Site to Bessey Creek and to downstream traditional navigable waters. Defendants' conduct also disconnected the surface and subsurface flow paths to adjacent wetlands and downstream waters of the United States. For example, the elevated roadbeds that Defendants constructed prevent the flow of surface water to the N/S Ditch and wetlands north of the Site on the Countess Joy LLC property. The modification of the Site's surface and subsurface (natural and constructed buried pipes) flow paths limits the water quality (biogeochemical) functions of the Site. Defendants' conduct has compromised the Site's water-quality functions. For example, the Site's reduced capacity to retain and store surface runoff from surrounding farm animals, residential properties, and septic tanks increases the downstream transport of nutrients via the N/S Ditch to nutrient impaired Bessey Creek. The significant disturbances to the

Site through land clearing, filling, draining, and removing the forested and scrub/shrub wetland plant community have reduced the Site's ability to produce and export carbon.

**DEFENDANT NESHAFARM'S INTERROGATORY NO. 15:** Did any portion of the Site constitute "waters of the United States" under the Navigable Waters Protection Rule: Definition of Waters of the United States, Final Rule, 85 Fed. Reg. 22250 (April 21, 2020)? If so, please describe which portion of the Site and the basis for it being part of the "waters of the United States."

**UNITED STATES' OBJECTIONS:** The United States objects to Interrogatory No. 15 because it seeks information that is not relevant. For purposes of this matter, the wetlands at issue constitute "waters of the United States" if they "possess[] a significant nexus to waters that are or were navigable in fact or that could reasonably be so made." *See United States v. Robison*, 505 F.3d 1208, (11th Cir. 2007) (adopting Justice Kennedy's concurrence in *Rapanos v. United Sates*, 547 U.S. 715 (2006)); *see also* Order Denying Defs.' Mot. to Bifurcate 2 ("[T]he Government must show, as a threshold geographical jurisdictional matter, that there is a 'significant nexus' between the Site and 'waters of the United States,' through the existence of alleged wetland complexes on the Site up to Bessey Creek, which all parties apparently recognize as 'navigable' in fact."), ECF No. 47; Defs.' Am. Mot. to Bifurcate 6, 10–14 (admitting that the United States must demonstrate geographic jurisdiction under the "significant nexus" test in Justice Kennedy's concurring opinion), ECF No. 30. The only regulatory interpretation of "waters of the United States" that is relevant to the conduct alleged in this case was first published in the 1987 edition of the Code of Federal Regulations. In 2020, the United States Army Corps of Engineers and United States Environmental Protection Agency adopted a new rule modifying the definition of the scope of waters covered by the Clean Water Act, which

went into effect on June 22, 2020. *See* Navigable Waters Protection Rule ("NWPR"), 85 Fed.

Reg. 22,250 (Apr. 21, 2020). The NWPR does not apply retroactively. Moreover, the NWPR has

since been vacated. And United States Army Corps of Engineers and the United States

Environmental Protection Agency are again interpreting "waters of the United States" consistent

with the pre-2015 regulatory regime.

The United States further objects to Interrogatory No. 15 as compound because it

contains more than one interrogatory.

**UNITED STATES' ANSWER:** Without waiving any of the above objections, including

that the NWPR does not supply the regulatory interpretation of "waters of the United States"

with respect to this case, yes. On February 18, 2022, the United States served on Defendants the

U.S. Department of Justice Expert Team Report, which states detailed opinions regarding

"waters of the United States" that exist on the Site. Wetlands on the Site are waters of the United

States under the irrelevant and inapplicable NWPR for a number of reasons. The Site's wetlands

abut both the upstream, non-tidally influenced reaches of Bessey Creek and the N/S Ditch

(shown in Figure III.C.1.1 of the report), which under the NWPR, are "tributaries" to

downstream and tidally influenced traditional navigable waters of Bessey Creek. Thus, under the

NWPR, the Site's wetlands are "waters of the United States" because they are

"adjacent wetlands."

**DEFENDANT NESHAFARM'S INTERROGATORY NO. 16:** Identify all visits to

the Site or adjacent properties conducted by any U.S. Army Corps of Engineers or U.S.

Department of Justice employee, consultant or agent from Janaury [sic] 1, 2017 through present

and list for each visit the property owner, full names of attendees, date(s), time frames at the

specific property, activities conducted while on the property, how many photos or videos were

taken (if any), how access was gained (e.g. through subpoena, request, etc.), and the name and contact information for the point of contact for each property or property owner.

      **UNITED STATES' OBJECTION:** The United States objects to Interrogatory No. 16 as overbroad and irrelevant because it asks the United States to identify "all visits to the Site or adjacent properties" conducted by two government agencies since January 1, 2017, without any limitation with respect to the nature or purpose of those visits.

      **UNITED STATES' ANSWER:** The United States and its consultants inspected, measured, surveyed, photographed, tested, or sampled each property listed below in connection with the conduct alleged in the Amended Complaint and the United States Army Corps of Engineers' investigation of that conduct. Other than with respect to the Site, access was provided voluntarily. The United States and its consultants also observed Bessey Creek from various public access points. The United States will produce photographs taken at each property with its expert disclosures.

Site
May 14, 2018
Present: Jefferson Knight; Kevin Kryzda; Jonathan Pempek; Samantha Rice; Benjamin Sharfi; Trisha Stone; Gregory Vazquez

September 13–14, 2021
Present: Brandon Adkins; Mike Dennis; Tony Greco; Christopher Hamilton; Kevin Kryzda; Steve Leighton (only September 14); Joshua Miron; William Moore; Wade Nutter; Jonathan Pempek; Scott Stuart; Benjamin Sharfi; Mike Wiley; unidentified employees of NeshaFarm

October 18–19, 2021
Present: Brandon Adkins; Kai Coshow Rains; Tony Greco; Robert Halbert; Kevin Kryzda; Lyndon Lee (only October 19); Meghan McRoberts; Drew Miller; Joshua Miron; William Moore; Wade Nutter; Benjamin Sharfi; Scott Stewart; Christopher Watkins; Mike Wiley; Susan [last name unknown]; unidentified employees of NeshaFarm; unidentified guests of Mr. Sharfi, including other members of the media

December 15, 2021
Present: Jackson LeFluer; Drew Miller; Joshua Miron; Wade Nutter, William Moore

Countess Joy LLC
Parcel ID: 173840000001000008
October 15, 2019
Present: Robert Halbert; Jonathan Pempek

August 23–24, 2021
Present: Brandon Adkins; Kai Coshow Rains; Tony Greco; William Moore; Wade Nutter;
Jonathan Pempek; Mike Wiley

September 15, 2021
Present: Brandon Adkins; Tony Greco; William Moore; Wade Nutter; Jonathan Pempek;
Scott Stewart; Mike Wiley

October 20–21, 2021
Present: Brandon Adkins; Kai Coshow Rains; Tony Greco; Lyndon Lee; Drew Miller; William
Moore; Wade Nutter; Scott Stewart; Mike Wiley

December 14, 2021
Present: Jackson LeFluer; Drew Miller; Wade Nutter, William Moore; Jonathan Pempek
Point of Contact: Terence P. McCarthy (tpm@mccarthysummers.com)

Traiana LLC
Parcel ID: 173840000053000009
Date: October 22, 2021
Present: Kai Coshow Rains; Wade Nutter; Scott Stewart; Mike Wylie
Point of Contact: Lawrence E. Crary III (LEC@crarybuchanan.com)

Florida Department of Transportation
Location: Approximately 340 feet SE of the corner of the intersection of SW Stuart West
Boulevard and SW Martin Highway, with approximate coordinates 27.160885, -80.382951
Date: October 22, 2021
Present: Kai Coshow Rains; Tony Greco; Lyndon Lee; Drew Miller; Wade Nutter; Margaret
Rushmore (Region 4 Drainage Department); Scott Stewart; Mike Wylie
Point of Contact: Kristopher Kehres (Kristopher.Kehres@dot.state.fl.us)

Martin County
Location: Unopened right of way (SW Gator Trail) immediately north of the Site
Date: October 19 and 21, 2021
Present (or in vicinity): Kai Coshow Rains; Tony Greco; Robert Halbert; Lyndon Lee; Drew
Miller; William Moore; Wade Nutter; Scott Stewart; Mike Wiley

Location: Parcel ID: 063840000000000110
Date: October 22, 2021
Present: Kai Coshow Rains; Lyndon Lee; Wade Nutter; Wendy Parker (Martin County); Scott
Stewart; Mike Wylie

Point of Contact: Ruth Holmes (rholmes@martin.fl.us)

**DEFENDANT NESHAFARM'S INTERROGATORY NO. 17:** Identify each and every Notice of Violation, or similar related correspondence, sent to property owners within a five (5) mile radius from the Site for the period January 1, 2017 through present, including for each the property owner name and/or to whom the correspondence was directed along with the date of such correspondence.

**UNITED STATES' OBJECTIONS:** The United States objects to Interrogatory No. 17 as overbroad and irrelevant because it asks the United States to identify "each and every Notice of Violation, or similar related correspondence, sent to property owners" without specifying any subject matter or who "sent" the notice. The United States further objects to Interrogatory No. 17 as disproportionate because it is duplicative of Defendants' request for the production of documents. That is, Defendants' Request No. 24 seeks, "Copies of all notices of violation sent to property owners for any claimed Clean Water Act matter served by the U.S. Army Corps of Engineers within Martin County for the past five (5) years."

**UNITED STATES' ANSWER:** The United States is not aware of any notices of violation sent to property owners within Martin County, Florida, for claimed or suspected Clean Water Act violations by the Jacksonville District of the United States Army Corps of Engineers since January 1, 2017, other than with respect to the United States Army Corps of Engineers' investigation of the conduct alleged in the Amended Complaint.

Dated: March 11, 2022

Respectfully submitted,

TODD KIM
Assistant Attorney General

*/s/ Brandon N. Adkins*
BRANDON N. ADKINS (Bar ID No. A5502752)
ANDREW J. DOYLE (FL Bar No. 84948)
United States Department of Justice
Environment & Natural Resources Division
P.O. Box 7611
Washington, D.C. 20044
Tel: (202) 616-9174
Fax: (202) 514-8865
Brandon.Adkins@usdoj.gov
Andrew.Doyle@usdoj.gov

*Attorneys for the United States*

**VERIFICATION**

I, Jonathan Pempek, declare:

I am a project manager within the Regulatory Division of the U.S. Army Corps of Engineers. I have read the foregoing United States' Amended Objections and Answers to Defendant NeshaFarm, Inc.'s First Set of Interrogatories to Plaintiff.

I declare under penalty of perjury that to the best of my knowledge the factual information in the answers is true and correct.

Executed on March 11, 2022, in Martin County, Florida.

PEMPEK.JONATH
AN.CARL.1392598
177

Digitally signed by
PEMPEK.JONATHAN.CARL.139
2598177
Date: 2022.03.11 15:59:16
-05'00'

Jonathan Pempek

**CERTIFICATE OF SERVICE**

I certify that on March 11, 2022, I served the foregoing United States' Amended

Objections and Answers to Defendant NeshaFarm, Inc.'s First Set of Interrogatories to Plaintiff

by email on counsel for Defendants, who consented in writing to electronic service of discovery

documents.

*/s/ Brandon N. Adkins*
Brandon N. Adkins
United States Department of Justice