UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

UNITED STATES OF AMERICA,

    *Plaintiff*,

v.      Case No. 2:21-cv-14205-KAM

BENJAMIN K. SHARFI, in his personal and
fiduciary capacity as trustee of the Benjamin
Sharfi 2002 Trust, and NESHAFARM, INC.,

    *Defendants*.

_____/

**DEFENDANTS' COMBINED RESPONSE TO PLAINTIFF'S STATEMENT OF
MATERIAL FACTS (ECF No. 151) AND STATEMENT OF MATERIAL FACTS
IN SUPPORT OF DEFENDANTS' CROSS-MOTION FOR SUMMARY JUDGMENT**

Pursuant to Local Rule 56.1(a)(1)-(2), Defendants Benjamin Sharfi, in his personal and fiduciary capacity as trustee of the Benjamin Sharfi 2002 Trust, and Neshafarm, Inc. ("Defendants"), respond to the Plaintiff United States' Statement of Material Facts (ECF No. 151) and submit their own Statement of Material Facts in support of Defendants' Cross Motion for Summary Judgment. To simplify the papers filed with the Court, Defendants combine their response to the Plaintiff's Statement of Material Facts and Defendants' own Statement of Material Facts into this single filing. Defendants respond to the Plaintiff's Statement of Material Facts first, and then submit their own Statement of Material Facts second, so that there is a single series of paragraph numbers.

## PLAINTIFF'S STATEMENT OF MATERIAL FACTS

### I.   DEFENDANTS

1. Undisputed.

2. Undisputed.

3. Undisputed.

4. Undisputed.

5. Undisputed.

6. Undisputed.

7. Undisputed to the extent that this paragraph describes Kevin Kryzda's roles during his time with Neshafarm, Inc. Mr. Kryzda left his role with Neshafarm, Inc. in 2023.

8. Undisputed.

9. Disputed. In the deposition transcript cited in the Government's Statement of Material Facts, Mr. Brown stated that he did not recall whether the check from Neshafarm, Inc. was for work on the Site or some other location. ECF No. 151-65, at 85:18-23.

### II.   THE SITE AND COUNTESS JOY REFERENCE AREA

10. Disputed. What the Government refers to as "the upstream reach of Bessey Creek" is an artificial drainage ditch excavated as early as the 1920s. ECF No. 111-7, at 1-2. That drainage ditch (referred to herein as the "East-West Ditch") was not excavated in a natural channel of Bessey Creek. *Id.*

11. Undisputed that the East-West Ditch runs through the Countess Joy property approximately one third of a mile north of the Defendants' Site and that it joins a natural branch

of Bessey Creek approximately two miles to the east, but disputed to the extent that this drainage ditch is the upstream reach of Bessey Creek.  *See* Response to Paragraph 10, above.

12. Undisputed that in 2015 the South Florida Water Management District ("SFWMD") issued a water use permit for a Hybrid Wetland Treatment Technology ("HWTT") facility approximately two miles east of the Defendants' Site.  Disputed that the permit was issued to Martin County (in fact, the permit was issued to the Florida Department of Agriculture and Consumer Services and Watershed Technologies LLC).  ECF No. 151-81, Ex. 3 page 1 of 6.  Also disputed to the extent that the second sentence refers to the East-West Ditch as "the upstream reach of Bessey Creek."  *See* Response to Paragraph 10, above.

13. Undisputed that the SFWMD permit issued for the HWTT facility attaches documents that estimate water flows where the East-West Ditch meets Bessey Creek near the HWTT facility.  Disputed that the flow information was contained in a permit application submitted by Martin County; the information is contained in a SFWMD Water Use Staff Report.  Disputed that the Water Use Staff Report shows actual data of historical stream flows at the HWTT facility; in fact, it uses stream flow data from 2004-2009 at monitoring station SLT09_W, which is located in the tidally-influenced portion of Bessey Creek approximately 4½ miles away from the Defendants' Site, and then estimates the amount of flow at the HWTT facility based on a hydrological model.  ECF No. 151-81, Ex. 3, Staff Report page 2 of 11.  Disputed that "highest flows are in June through November"; in fact, the estimates are that the period of high median flow is August through November, that the period of low median flow is January through June, and that the months of July and December have median flows in between the high and low period.  *Id.* Permit Ex. 5I, page 9 of 9.

14. Undisputed that the East-West Ditch flows part of the year and is connected to Bessey Creek, including the tidally-influenced reach of the creek. Disputed to the extent that the East-West Ditch is characterized as "the upstream reach of Bessey Creek."  *See* Response to Paragraph 10, above.

15. Undisputed.

16. Undisputed, except to the extent that this paragraph refers to the East-West Ditch as the "upstream reach of Bessey Creek."  *See* Response to Paragraph 10, above.

17. Undisputed.

18. Undisputed.

19. Undisputed.

### III. DEFENDANTS' ACTIVITIES

#### A. Defendants' Initial Work on the Site

20. Undisputed.

21. Disputed, to the extent that this paragraph asserts, based on the materials cited therein, that Benjamin Sharfi personally did the work.

22. Undisputed.

23. Undisputed.

24. Disputed, to the extent that this paragraph asserts, based on the materials cited therein, that the road rock was deposited in wetlands. The deposition figure referenced in this paragraph indicates that it was deposited on the roadway at the edge of the property.

#### B. Defendants' Permit Application and Wetland Delineation

25. Undisputed.

26. Undisputed.

27. Undisputed.

28. Undisputed.

29. Undisputed.

30. Undisputed.

31. Disputed with regard to the exact location where the paragraph asserts "they dumped fill." The witness testimony at the deposition cited in this paragraph is ambiguous on this point.

32. Undisputed.

33. Undisputed.

34. Undisputed.

35. Undisputed.

36. Undisputed.

37. Undisputed.

38. Undisputed.

39. Undisputed.

40. Undisputed.

41. Undisputed.

42. Disputed to the extent that this fact is incomplete. In April 2018, two wetland specialists from the SFWMD walked the Site with Danna Small and verified the accuracy of her wetland delineation. ECF No. 151-65, at 53:1-17, 54:10-24, 120:13-24 (Small Deposition Transcript); D.E. 111-9, at 49. The SFWMD made its wetland determination "based on the information provided and the results of the site inspection." ECF No. 109-50.

      C.      **Defendants' Activities After Receiving the Corps' Cease-and-Desist Letter**

43. Undisputed.

44. Undisputed.

45. Undisputed.

46. Undisputed.

47. Disputed to the extent that this fact is incomplete. Danna Small stated in her letter that "this is an isolated wetland." ECF No. 109-57. *See also* ECF No. 151-65, at 237:20-238:1 (Small Deposition Transcript).

48. Undisputed.

49. Undisputed.

50. Undisputed.

51. Undisputed.

52. Disputed, to the extent that this paragraph asserts, based on the materials cited therein, that Benjamin Sharfi personally did the work.

53. Undisputed.

54. Disputed, to the extent that this paragraph asserts, based on the materials cited therein, that Benjamin Sharfi personally did the work. Also disputed to the extent that this fact is incomplete. Defendants cleared vegetation on the Site "mostly by hand." ECF No. 151-66, at 64:21-65:4 (Berlusconi Deposition Transcript).

55. Undisputed.

56. Undisputed.

57. Undisputed.

58. Disputed. This paragraph provides no citations to the record as provided in Local Rule 56.1(b)(1)(B), and uses terms of art from the Clean Water Act that suggest this paragraph contains conclusions of law.

      59.      Undisputed.

      60.      Undisputed.

**IV.    WETLANDS ON THE SITE AND "WATERS OF THE UNITED STATES"**

      61.      Undisputed that the Government's expert witnesses developed a wetland delineation for the Site and that they based it on the information identified in this paragraph. Disputed that the Government's wetland delineation of the Site accurately depicts the location and extent of wetland on the Site. ECF No. 151-72, at 49-55 (Dennis Expert Report, pages 43-49).

      62.      Undisputed.

      63.      Undisputed that the Government's expert witnesses concluded that there were wetlands on 5-6 acres of the Site prior to the Defendants' activities. Disputed that the Government's wetland delineation of the Site accurately identifies the extent and location of wetlands there. In March 2018, environmental consultant Danna Small conducted a wetland delineation of the Site before Defendants engaged in most of their work, so she was able to see unaltered conditions across most of the Site. ECF No. 151-66 at 36:13-23 (Small Deposition Transcript); ECF No. 151-72, at 49 (Dennis Expert Report). Ms. Small delineated the boundaries of a wetland in the southwest corner of the Site that covered approximately 3½ acres. ECF No. 151-72, at 47. Ms. Small's wetland delineation was verified in the field by two employees of the SFWMD in April 2018. ECF No. 109-50.

      64.      Disputed to the extent that this paragraph is incomplete. The Government's expert witnesses did not delineate the boundaries of any wetland in the Countess Joy property. ECF No. 151-68, at 206:10-17, 287:6-10 (Wylie Second Deposition Transcript).

      65.      Undisputed that the Government's expert witnesses concluded that wetlands on the Countess Joy property are contiguous to the wetland on the Defendants' Site and that they are part of one contiguous wetland. Disputed that the Government expert witnesses' conclusion is correct. The 2018 wetland delineation prepared by Danna Small indicates that the wetland on the Defendants' Site does not extend to the property line with the Countess Joy property, which means that it cannot be contiguous with any wetland in the Countess Joy property. ECF No. 151-72, at 54 (Dennis Expert Report, Fig. 19), 68 (Fig. 23). The Government expert witnesses also never delineated the boundaries of any wetland in the Countess Joy property, ECF No. 151-68, at 206:10-17, 287:6-10, and they did not establish a baseline or transects in the Countess Joy property as

provided in the 1987 Wetland Delineation Manual for the identification and delineation of wetlands.  ECF No. 151-68, at 268:9-17.

66.     Disputed.  Exhibits 30 and 31 to the Government's Statement of Material Facts do not show the approximate location of contiguous wetlands from the Site through the Countess Joy property, because those exhibits do not depict wetland-nonwetland boundaries and the Government experts prepared those exhibits without following all of the procedures required in the 1987 Wetland Delineation Manual.  Those exhibits also assume that the Government's wetland delineation of the Site is accurate, which it is not.  *See* Response to Paragraph 65, above.

### A.     **Upstream Reach of Bessey Creek**

67.     Disputed.  There was not a single large wetland that included the Defendants' Site and the Countess Joy property that abuts the East-West Ditch.  *See* Response to Paragraphs 65 and 66, above.  The Government experts never delineated the boundaries of any wetland on the Countess Joy property, and did not follow required procedures in the 1987 Wetland Manual that are necessary to identify the boundaries of wetlands there.  *See* Response to Paragraph 65.  Even if a wetland on the Countess Joy property abut the East-West Ditch, the wetland on the Defendants' Site does not abut the East-West Ditch.  Also disputed to the extent that this paragraph refers to the East-West Ditch as "the upstream reach of Bessey Creek."  *See* Response to Paragraph 10, above.

68.     Undisputed, except to the extent that this paragraph refers to the East-West Ditch as "the upstream reach of Bessey Creek."  *See* Response to Paragraph 10, above.

69.     Undisputed that Dr. Wade Nutter observed surface water flowing from wetlands to the East-West Ditch at wetland data sheet locations W5 and W7 on two field visits in August and September 2021.  Disputed to the extent that this paragraph implies that surface water always flows from those locations into the East-West Ditch; Dr. Nutter saw no surface water flow there during two other field visits in October and December 2021.  ECF No. 151-64, at 156:5-157:24.

70.     Undisputed, except to the extent that this paragraph refers to the East-West Ditch as "the upstream reach of Bessey Creek."  *See* Response to Paragraph 10, above.

71.     Undisputed, except to the extent that this paragraph refers to the East-West Ditch as the "upstream reach of Bessey Creek," *see* Response to Paragraph 10, and to the extent that the second sentence of this paragraph implies that the staff gauges always recorded the presence of

water in the East-West Ditch, *see* ECF No. 151-33, at 5 (staff gauge hydrographs showing no water in the East-West Ditch for multiple days in October-December 2021).

72. Disputed. Flow data from the HWTT facility permit indicates that the median high flow months are July to November each year, and that December is a transition month to the lower median flows of the dry season. ECF No. 151-81, Permit Ex. 5I.

73. Disputed. ECF No. 151-79, at 12-17 (Dennis Supplemental Report, pages 6-11).

### B. North-South Ditch

74. Undisputed that the North-South Ditch extends from the western boundary of the Defendants' Site northward approximately 1,600 feet to the East-West Ditch. Disputed that the North-South Ditch always carries water flow to the East-West Ditch, ECF No. 151-79, at 15-16 (Dennis Supplemental Report pages 9-10), and disputed to that the East-West Ditch is the "upstream reach of Bessey Creek." *See* Response to Paragraph 10.

75. Undisputed, except to the extent that the paragraph fails to state clearly that the North-South Ditch loses its structure in the middle portion between the Defendants' Site and the East-West Ditch. ECF No. 151-79, at 14 (Dennis Supplemental Report, page 8).

76. Undisputed, except to the extent that the paragraph is incomplete for failing to acknowledge that Mr. Wylie saw no water flowing to the East-West Ditch in his October 2021 visit, ECF No. 151-68, at 260:6-10, and to the extent that the paragraph refers to the East-West Ditch as the "upstream reach of Bessey Creek."

77. Undisputed.

78. Undisputed, except to the extent that the paragraph implies that the surveyors surveyed the bottom elevation of the North-South Ditch along its entire length (i.e., there could be unsurveyed locations with higher bottom elevations), ECF No. 151-72, at 34 (Dennis Expert Report, Fig. 16), and to the extent that the East-West Ditch is not the "upstream reach of Bessey Creek." *See* Response to Paragraph 10, above.

79. Undisputed that another law firm representing the Defendants submitted materials to the Florida Department of Agriculture and Consumer Services that included, among other things, a figure indicating the direction of flow in various drainage ditches, including the North-South Ditch and East-West Ditch. ECF No. 151-79 at 14-15 (Dennis Supplemental Report, pages 8-9). Disputed to the extent that the paragraph asserts that the figure is accurate, because there is

no information regarding how this figure was prepared. Deposition of Wade Nutter (Oct. 12, 2023) (attached as "Attachment 1"), p. 190:7-22, 191:10-23.

80. Disputed. ECF No. 151-79 at 15-16 (Dennis Supplemental Report pages 9-11).

81. Disputed. ECF No. 151-79, at 24 (Dennis Supplemental Report page 18); ECF 151-2, at 7-8 (Figures 5-1 and 5-2, showing higher elevation areas between North-South Ditch and wetland on the Defendants' Site); ECF No. 151-72, at 54 (Dennis Expert Report, Fig. 19); ECF No. 151-67, at 67:6-25 (Berlusconi Deposition Transcript, stating that road along western edge of Site did not raise the ground elevation), 261:4-15 (western edge of Site was higher than the North-South Ditch at the time of purchase).

82. Disputed. There was no single, large contiguous wetland that included the wetland on the Defendants' Site. *See* Responses to Paragraphs 63, 65; ECF No. 151-72, at 59, 68 (Dennis Expert Report, Figs. 20 & 23). The U.S. Fish and Wildlife Service's National Wetland Inventory maps do not show any wetlands abutting the North-South Ditch in the Countess Joy property. ECF No. 151-72, at 68 (Dennis Expert Report, Fig. 23). The Government experts also never delineated wetlands in the Countess Joy property and did not follow required procedures in the 1987 Wetland Manual for the identification of wetlands there, so their supplemental reports cited in this paragraph lack reliable basis. *See* Responses to Paragraphs 65, 67.

83. Disputed. *See* Response to Paragraph 82, above. Also, the exhibit cited in this paragraph and the Nutter Supplemental Report (Exhibit 19 to the Government's Statement of Material Facts) purports to show "abutting wetlands" but in fact shows a small drainage ditch that extends from the west side of the North-South Ditch. ECF No. 151-72, at 28 (Dennis Expert Report, Fig. 14 showing "northern west ditch").

**C.    84th Avenue Roadside Ditch**

84. Undisputed that the 84th Avenue Roadside Ditch runs along 84th Avenue (approximately one-quarter mile west of the North-South Ditch) and joins the East West Ditch, except to the extent that this paragraph refers to the East-West Ditch as "the upstream reach of Bessey Creek."

85. Disputed. *See* Response to Paragraphs 63, 65, 67 and 83. Undisputed that a small wetland area mapped by the National Wetland Inventory abuts the 84th Avenue Roadside Ditch, but those maps indicate that this wetland area is separate from the wetland on the Defendants' Site. ECF No. 151-72, at 59, 68 (Dennis Expert Report, Figs. 20 & 23).

86. Undisputed that Government expert witness Dr. Wade Nutter observed water flowing from the North-South Ditch across areas of pasture to the 84th Avenue Roadside Ditch on two occasions when he visited in August and September 2021, but did not see water flowing there when he visited in October and December 2021.  ECF No. 151-64, at 156:5-8, 156:18-21, 157:5-8, 157:17-24 (Nutter First Deposition Transcript).

87. Disputed.  Reference Well 9 measured water levels, not water flow. ECF No. 111-4, at 189:16-25 (Nutter First Deposition Transcript); Attachment 1, at 52:1-6 (Nutter Second Deposition Transcript).  Undisputed that Reference Well 9, which was located right next to the 84th Avenue Roadside Ditch, showed water above ground surface from August-December 2021.

88. Disputed.  ECF No. 181-79, at 15-16 (Dennis Supplemental Report, pages 9-10); Declaration of Charlie Clark (attached as "Attachment 2").

89. Undisputed that the 84th Avenue Roadside Ditch has an ordinary high water mark and continuous bed and banks along the Countess Joy property, but disputed that it contains relatively permanent flow.  *See* Response to Paragraph 88.

90. Undisputed that Michael Wylie and Wade Nutter observed water in the 84th Avenue Roadside Ditch on their visits in August, September, October and December 2021, but disputed that they documented water flow because the Reference Well 7 gauge measures water levels, not water flow.  *See* Response to Paragraph 87.

91. Disputed.  ECF No. 151-79, at 15-16 (Dennis Supplemental Report pages 9-10).

**DEFENDANTS' STATEMENT OF MATERIAL FACTS IN SUPPORT OF CROSS MOTION FOR SUMMARY JUDGMENT**

I.  **FACTS RELATED TO THE DRAINAGE DITCHES**

92. Upstream of the tidally-influenced portion of Bessey Creek are freshwater portions of the creek.  The closest natural channel of Bessey Creek to the Defendants' Site is located approximately two miles away, near the HWTT facility.  The natural channel of Bessey Creek is a relatively permanent water.  ECF No. 151-79, at 11 (Dennis Supplemental Report, page 5).

93. The East-West Ditch, North-South Ditch, and 84th Avenue Roadside Ditch are manmade drainage ditches.  ECF No. 151-68, at 93:23-94:4; Attachment 1 at 33:3-15, 36:19-21. All three ditches were excavated in straight lines.  ECF No. 151-68, at 94:16-22.

94. The East-West Ditch was part of the 1920 General Reclamation Plan for the Palm City Drainage District. ECF No. 151-72, at 18 (Dennis Expert Report, Fig. 8). The East-West Ditch likely was constructed decades ago, likely sometime between the 1920s and 1940s. ECF No. 111-7, 2-3 (Creech Expert Report, pages 1-2); ECF No. 151-68, at 94:23-25; Attachment 1, at 27:17-21, 33:16-23; ECF No. 111-5, at 154:10 – 156:9.

95. The North-South Ditch was excavated sometime around 1950. ECF No. 111-5, at 95:18-22.

96. The 84th Avenue Roadside Ditch was excavated in the 1960s or earlier, perhaps when the roadway was created. Attachment 1, at 37:5-15; ECF No. 151-68, at 282:19-25.

97. The National Hydrography Dataset maps used by the Government expert witnesses to create their exhibits identify the East-West Ditch, North-South Ditch, and 84th Avenue Roadside Ditch as "ditches" or "canals." ECF No. 151-64, at 48:1-21.

98. The U.S. Geological Survey maps presented in this case do not identify the East-West Ditch as "Bessey Creek." ECF No. 151-68, at 101:25-102:12; ECF No. 151-64, at 49:4-8, 67:11-20.

99. Historical aerial photographs and U.S. Geological Survey maps show the East-West Ditch as an artificial ditch connecting to the natural Bessey Creek approximately two miles east of the Defendants' Site. ECF No. 151, 72, at 13-17, 23-24 (Dennis Expert Report, Figs. 3-7, 11-12).

100. There are raised earthen berms located along most of the southern edge of the East-West Ditch in the Countess Joy property. ECF No. 151-68, at 31:12-15; Attachment 1, at 34:5-9, 92:21-93:6, 179:16-22; ECF No. 151-80, at 37 (Wylie Supplemental Report, Ex. 14). The berms likely are material that was sidecast during the construction of the ditch. ECF No. 151-68, at 28:23-29:6, 95:6-16; Attachment 1, at 34:24-35:6. Some of these berms are several feet higher than the water level in the ditch. ECF No. 151-68, at 29:11-23; Attachment 1, at 35:7-11.

101. There are raised earthen berms located along much of the edges of the North-South Ditch in the Countess Joy property. Attachment 1, at 93:9-12, 93:22-94:11, 179:1-5; ECF No. 151-80, at 37 (Wylie Supplemental Report, Ex. 14).

102. The berms can function as physical barriers that block surface water flow at the locations where they are present along the East-West Ditch, North-South Ditch, and 84th Avenue Roadside Ditch. Attachment 1, at 95:10-13, 167:19-23.

103. The location where the Government claims that the wetland abuts the East-West Ditch near wetland reference points W5 and W7 is approximately one third of a mile away from the closest part of the Defendants' Site. Attachment 1, at 236:7-16.

104. The location where the Government claims that the wetland abuts the 84th Avenue Roadside Ditch near Reference Well 7 is approximately one third of a mile away from the closest part of the Defendants' Site. ECF No. 151-68, at 77:23-78:4; Attachment 1, at 236:12-16.

105. The location where the Government claims that wetlands in the Countess Joy property abut the North-South Ditch is approximately halfway from the Defendants' Site to the East-West Ditch, approximately 1000 feet from the Defendants' property line. Attachment 1, at 238:18-239:11.

106. The East-West Ditch near the Defendants' Site has seasonal water flow. ECF No. 151-81, at 44 (SFWMD permit for HWTT facility, Exhibit 5E, page 5 of 9); ECF No. 151-79, at 15 (Dennis Supplemental Report, page 9); Attachment 1, at 42:23-43:24. This means that water typically flows in the ditch during the wet season and after large rain events, but there typically is no water flow during the dry season. ECF No. 151-79, at 15 (Dennis Supplemental Report, page 9); Attachment 1, at 42:23-43:24, 49:20-25.

107. The Government experts do not know how many months out of the year water flows in the East-West Ditch, North-South Ditch and 84th Avenue Roadside Ditch near the Defendants' Site. Attachment 1, at 44:10-17, 204:3-8.

108. The North-South Ditch has seasonal water flow. ECF No. 151-81, at 8 (Nutter Supplemental Report, page 7); ECF No. 151-80, at 8 (Wylie Supplemental Report page 6); ECF No. 151-79, at 15 (Dennis Supplemental Report, page 9); ECF No. 151-68, at 247:23-248:6. This means that water typically flows in the ditch during the wet season and after large rain events, but there typically is no water flow during the dry season. ECF No. 151-8 at 8; Attachment 1, at 202:25-203:19, 212:23-213:5.

109. The 84th Avenue Ditch has seasonal water flow. ECF No. 151-79, at 15 (Dennis Supplemental Report, page 9); ECF No. 151-68, at 277:21-278:16 (Government expert Wylie

stating that ditch is relatively permanent water because he saw water flowing for more than three months); Attachment 1, at 158:17-159:2.  This means that water typically flows in the ditch during the wet season and after large rain events, but there typically is no water flow during the dry season.  ECF No. 151-8 at 8.

110. Seasonal flow is intermittent flow.  ECF No. 151-68, at 57:21-24, 250:11-14; ECF No. 111-5, 194:17-195:19.

111. Defendants' expert witness, Dr. Michael Dennis, did not observe any water flow in the North-South Ditch, East-West Ditch near the Defendants' Site, and 84th Avenue Roadside Ditch when he visited the Countess Joy property in March 2022.  ECF No. 151-79, at 15 (Dennis Supplemental Report, page 9).

112. The Government's experts never visited the Site during the months of January-July and therefore did not see conditions those months of the year.  Attachment 1, at 123:23 – 124:6; ECF No. 111-3, at 97:18-23.

113. A video taken from a helicopter in April 2022 shows that the North-South Ditch and East-West Ditch in the Countess Joy property had no water other than isolated puddles.  Attachment 2.

114. The East-West Ditch near the HWTT facility typically has more water than the East-West Ditch near the Defendants' Site in the Countess Joy property.  Attachment 1, at 45:25-46:16; Attachment 2 (link to video of ditches taken in April 2022).

115. There are multiple drainage ditches between the Defendants' Site and the HWTT facility provide additional flow to the East-West Ditch.  ECF No. 151-68, at 77:2-9; Attachment 1, at 44:24-45:7.

116. There are times when water is flowing in the East-West Ditch near the HWTT facility but no water is flowing in the East-West Ditch in the Countess Joy property near the Defendants' Site.  ECF No. 151-79, at 15 (Dennis Supplemental Report page 9).

117. Defendants expert Richard Creech visited the East-West Ditch approximately five times in February-May 2022.  ECF No. 111-5, at 196:16-197:14, 198:8-12, 198:22-200:6, 203:23-204:22.  In February 2022, there was modest flow, but no flow after February.  Mr. Creech also visited the East-West Ditch at Boat Ramp Road in approximately March-April 2020-2021 and saw no water flow.  *Id.* 204:23-205:6, 215:2-13, 219:18-220:22.

118. Composited historical water flow information for the East-West Ditch at the HWTT facility shows that the months with lowest daily median flows (less than one cubic feet per second) are January through June. The months with the highest daily median flows (more than four cubic feet per second) are August through October. July and December are transition months with daily median flows of between one and one-and-a-half cubic feet per second. ECF No. 109-35; ECF No. 151-81, at 14 (Table III.C.1.1), 48 (data estimates from HWTT permit Exhibit 5I).

119. The Government's hydrology expert witness, Dr. Wade Nutter, never observed water flowing from the North-South Ditch into the East-West Ditch. Attachment 1, at 204:18-205:5, 254:20-255:6. Government expert Michael Wylie saw water flowing from the North-South Ditch into the East-West Ditch in two of his visits. ECF No. 151-68, p. 260:6-10; ECF No. 150, at 16-17.

120. Government expert witness Dr. Wade Nutter installed two water level gauges in the East-West Ditch (Ref Staff Gauge Bessey and Ref Staff Gauge Bessey Up) that collected data in the period August-December 2021. ECF No. 111-1, at 36-37 (DOJ Expert Team Report, pages 19-20); ECF No. 151-81, at 5 (Nutter Supplemental Report, page 4); ECF No. 151-14 (figure showing location of gauges). The data from these water level gauges is graphically shown in Figure V.D.1.b.1.4 of the DOJ Expert Team Report. ECF No. 109-33, at 5.

121. The data for the water level gauges installed in the East-West Ditch shows that water levels dropped almost to sensor depth 0 (where the gauge pipe reaches the dirt at the bottom of the ditch at the location of the gauges) starting in late October 2021, increased for approximately one week after a rainstorm in late November 2021, and then dropped to sensor depth 0 in December 2021. ECF No. 109-33, at 5; Attachment 1, at 130:16-131:4 (explaining the sensor depth in relation to ground level), 136:25-137:6 (interpreting graph for Ref Staff Gauge Bessey Up), 139:14-140:4 (interpreting graph for Ref Staff Gauge Bessey).

## II.   FACTS RELATED TO WETLANDS

122. There was a berm between the North-South Ditch and the boundary of the Defendants' Site when Defendants took ownership of the property. ECF No. 151-67, at 260:19-24; ECF No. 181-2, at 7-8 (Figure 5-1 and Photograph 5-6).

123. The perimeter road on the western side of the Defendants' Site was located on top of the area of higher ground next to the North-South Ditch. ECF No. 151-67, at 67:6-25

(Berlusconi testimony that perimeter road not raise the ground), 261:4-15 (western side of property had higher ground at time of purchase).

124. Wetland consultant Danna Small delineated a wetland on the Defendants' Site in 2018 before most of the work had been done on the Site. ECF No. 151-66, at 27:22-24 (Small testimony that she visited March 2018), 36:21-23 (she walked entirety of Site), 38:12-25 (she flagged wetland line), 40:17-41:8 (bulldozer in area delineated as wetland), 50:3-6 (no other construction activities).

125. At the time of Danna Small's wetland delineation, the area between the wetland she identified on the Defendants' Site and the Countess Joy property had not been altered by the Defendants. ECF No. 151-66, at 27:22-24 (Small testimony that she visited March 2018), 36:21-23 (she walked entirety of Site), 38:12-25 (she flagged wetland line), 40:17-41:8 (bulldozer in area delineated as wetland), 50:3-6 (no other construction activities).

126. Two employees of the SFWMD verified Danna Small's wetland delineation in the field in April 2018. ECF Noi. 151-66, at 51:5-17, 52:24-53:8.

127. Danna Small's wetland delineation indicates that the wetland on the Defendants' property is physically separated from any wetland on the Countess Joy property. ECF No. 151-66, at 48:6-12; ECF No. 151-72, at 68 (Dennis Expert Report, Fig. 23).

128. Defendants fenced and left in place approximately an acre of wetlands on the Site. ECF No. 151-71, at 96:18-22.

129. The Government's expert witnesses conducted their wetland delineation on the Defendants' Site in 2021, three years after work had been done on the Site. At the time the Government's expert witnesses conducted their wetland delineation, the Defendants' Site had been altered. ECF No. 151-82, at 40-41, 46, 48.

130. The U.S. Fish and Wildlife Service's National Wetland Inventory shows that wetlands on the Countess Joy property do not touch the Defendants' Site. ECF No. 151-72, at 57 (Dennis Expert Report, Fig. 20).

131. The National Wetland Inventory maps indicate that the wetland on the Defendants' Site is separate from wetlands on the Countess Joy property. ECF No. 151-72, at 68 (Dennis Expert Report, Fig. 23).

132. The National Wetland Inventory map does not show a contiguous wetland complex that includes the Defendants' Site and the Countess Joy property. ECF No. 111-4, p. 80:15-20.

133. Maps prepared by the U.S. Geological Survey does not show a continuous wetland complex on the Defendants' Site or Countess Joy property. ECF No. 111-4, p. 58:11-15.

134. The Government experts never delineated the boundary of the purported larger wetland on the Countess Joy property. ECF No. 151-68, at 206:10-17, 287:6-10; Attachment 1, at 161:15-18.

135. The Government experts never established a baseline in the Countess Joy property as provided in the 1987 Wetland Manual for the routine determination method. ECF No. 151-68, at 286:9-13.

136. The Government experts never established transects in the purported wetland in the Countess Joy property to confirm the continuity of wetland conditions. ECF No. 151-68, at 235:25-236:5, 286:14-17.

137. Government experts' wetland reference plots in the Countess Joy property were not oriented in a line like a transect. ECF No. 151-68, at 152:4-12.

138. LiDAR imagery shows old agricultural rows on the Countess Joy property that are little ridges of higher ground between the Defendants' Site and the East-West Ditch. ECF No. 151-80, at 37 (Wylie Supplemental Report, Ex. 14); ECF No. 151-68, at 225:15-19, 226:12-23; Attachment 1, at 89:19-90:4, 177:21-178:5.

139. Locations in the Countess Joy property where ground is mounded up such as in berms could be nonwetlands. Attachment 1, at 173:14-17, 233:13-22.

140. The Government experts never saw surface water cover the ground along the entire pathway from the East-West Ditch uninterrupted to the Defendants' Site. ECF No. 151-68, at 146:6-18; Attachment 1, at 149:14-23, 168:15-22.

141. The Government experts never saw surface water from the North-South Ditch cover the ground all the way to the wetlands on the Defendants' Site. ECF No. 151-68, at 262:8-25; Attachment 1, at 240:15-241:7.

142. At the wetland reference plot locations, Government experts excavated small test pits to examine soils, water levels, and vegetation. ECF No. 151-68, at 148:6-18. At multiple

15

test pits in the Countess Joy property, the Government experts took photographs showing water levels below ground surface. *E.g.,* ECF No. 151-68, at 171:23-172:1, 173:5-10 (plot W7), 173:15-22, 174:6-15 (plot W5), 175:9-176:1 (plot W1), 190:6-10 (plot W4), 196:6-9 (plot W3).

143. At some of the wetland reference plots in the Countess Joy property, the Government experts determined there to be wetland hydrology based on the presence of saturated soils, not the presence of surface water. ECF No. 151-68, at 52:20-53:7, 145:12-146:4, 237:1-5.

144. Government expert witness Dr. Wade Nutter installed shallow groundwater monitoring wells (referred to as "Reference Wells") at seven locations in the Countess Joy property to record water levels. The wells gathered water level data from August to December 2021. ECF No. 151-82, at 36-37 (DOJ Expert Team Report, pages 19-20); ECF No. 151-81, at 5 (Nutter Supplemental Report, page 4); ECF No. 151-14 (figure showing location of wells).

145. Three of the groundwater monitoring wells (Reference Wells 1-3) were installed on the Countess Joy property near the Defendants' Site. ECF No. 151-14; Attachment 1, 117:15-21. The water level data from Reference Wells 1-3 is graphically shown in Figure V.D.1.b.1.1 of the DOJ Expert Team Report. ECF No. 151-33; Attachment 1, at 117:22-119:1 (explanation of the graphs). The data indicates that water levels at Reference Wells 1-2 were below the ground surface most of the time. ECF No. 151-14; Attachment 1, at 120:7-18 (Reference Well 1), 121:10-14. At Reference Well 3, water was below ground surface every single day with the exception of maybe one day. Attachment 1, at 121:15-20. The graphs indicate that surface water was rarely present at the location of the reference wells during the time Dr. Nutter collected data. Attachment 1, at 121:21-25.

146. Three of the groundwater monitoring wells (Reference Wells 4-6) were located on the Countess Joy property near the East-West Ditch in the general area of locations W5 and W7 referenced in paragraph 67-69, which is where the Government asserts wetlands abut the East-West Ditch. ECF No. 151-14 (figure showing location of wells); Attachment 1, at 122:5-20. The water level data from Reference Wells 4-6 is graphically shown in Figure V.D.1.b.1.2 of the DOJ Expert Team Report. ECF No. 151-33. The data indicates that water levels at these reference wells was usually below ground surface during the period of monitoring. ECF No. 151-33; Attachment 1, at 122:21-124:22. The graphs indicate that surface water was not

continuously present at these locations during the period of time Dr. Nutter collected data. Attachment 1, at 124:25-125:10.

147. The Government's hydrology expert witness, Dr. Wade Nutter, did not see a continuous flow of surface water from wetlands in the Countess Joy property to the East-West Ditch and 84th Avenue Roadside Ditch over the period of time he collected data. Attachment 1, at 151:4-15.

148. Dr. Nutter did not see water flowing from wetlands into the North-South Ditch every time he visited the Countess Joy property, but only on his visits in August and September 2021. Attachment 1, at 158:5-10.

149. Defendants' expert witness, Dr. Michael Dennis, is able to distinguish between the various drainage ditches and wetlands on the Defendants' Site and the Countess Joy property. ECF No. 151-79, at 26 (Dennis Supplemental Report, page 20).

150. The Government expert witnesses have not offered opinions about whether the wetland on the Defendants' property are distinguishable from the East-West Ditch, North-South Ditch, and/or 84th Avenue Roadside Ditch. ECF No. 151-80, 151-81; ECF No. 151-68, at 35:10-24 (all opinions are contained in Supplemental Report); Attachment 1, at 14:17-23 (same).

151. Government witnesses Dr. Wade Nutter and Mr. Michael Wylie were both are able to identify drainage ditches and wetlands in photographs taken of locations where they assert that wetlands abut the drainage ditches, and identify specifically where the wetlands and ditches touch. ECF No. 151-68, at 126:13-127:9; Attachment 1, at 154:19-155:1.

## III. OTHER FACTS

152. Nearby properties are used for agricultural purposes, including a greenhouse operation, a horse farm, and light pasture. ECF No. 151-82, at 51 (DOJ Expert Team Report, page 34).

153. The month of August 2021 had higher rainfall than normal. ECF No. 151-68, at 143:11-13.

154. Exhibit 1 to Michael Dennis' Supplemental Report is an aerial photograph that shows the Defendants' Site and other relevant features. Attached as "Attachment 3."

155. Exhibit 13 to Wade Nutter's Supplemental Report is a photograph taken by Government expert witnesses at the intersection of the East-West Ditch and North-South Ditch in August 2021. ECF No. 151-81, at 70.

156. Exhibits 16-17 to Michael Dennis' Supplemental Report are photographs taken by Dr. Dennis near the intersection of the East-West Ditch and North-South Ditch in March 2022. Attached as "Attachment 4."

157. Exhibit 3 to Wade Nutter's Supplemental Report is the permit issued by the SFWMD for operation of the HWTT facility, and includes as Exhibit 5G to the permit a graph of modeled water flows at the HWTT facility based on historical data from 2004-2009. ECF No. 151-81, at 46.

158. Exhibit 23 to Michael Dennis' Expert Report is a figure that shows the location of wetlands on the Countess Joy property as depicted on the National Wetland Inventory maps and the wetland on the Defendants' Site as delineated by Danna Small in 2018. ECF No. 151-72, at 68.

159. Exhibit 16 to Michael Wylie's Supplemental Report is a photograph of wetland sampling point W7 in the Countess Joy property next to the East-West Ditch. ECF No. 151-80, at 41.

160. Figure V.D.1.b.1.2 from the original DOJ Expert Team Report shows water level data collected at Reference Wells 4-6, which are in the general vicinity of wetland sampling point W7, in the period August-December 2021. ECF No. 151-33, at 3.

161. Exhibit 2 to Wade Nutter's Supplemental Report is a summary of composited historical water flow data in the East-West Ditch near the HWTT facility that came from the SFWMD permit for that facility. ECF No. 151-81, at 14.

Dated: December 1, 2023                          Respectfully submitted,

/s/ Neal McAliley
T. Neal McAliley
Florida Bar No. 172091
nmcaliley@carltonfields.com
David Karp
dkarp@carltonfields.com
CARLTON FIELDS, P.A.
2 MiamiCentral
700 NW 1st Avenue, Suite 1200
Miami, Florida 33136
Tel: (305) 530-0050
Fax: (305) 530-0055
*Attorneys for Defendants*

## CERTIFICATE OF SERVICE

I certify that on December 1, 2023, I electronically filed the foregoing with the Clerk of the Court using CM/ECF, which served by e-mail the following counsel of record:

Brandon N. Adkins
Bar ID A5502752
brandon.Adkins@usdoj.gov
Andrew Doyle
Fla. Bar No. 84948
andrew.Doyle@usdoj.gov
Jeffrey Hughes
Bar ID A5502897
Jeffrey.hughes@usdoj.gov
United States Department of Justice
Environment & Natural Resources Division
P.O. Box 7611
Washington, D.C. 2004
Telephone (202) 616-9174 (Adkins)
Telephone (415) 744-6469 (Doyle)
Telephone (202) 514-4427 (Hughes)

*Attorneys for Plaintiff United States of America*

Dexter Lee
Fla. Bar No. 936693
United States Attorney's Office
Southern District of Florida
99 N.E. 4th Street
Miami, Florida 33132
Telephone: (305) 931-9320
DLee@usa.doj.gov

*Attorneys for Plaintiff United States of America*

Christopher F. Hamilton
Fla. Bar No. 98527
chamilton@sharfiholding.com
Joshua D. Miron
Fla. Bar No. 644811
jmiron@sharfiholding.com
Sharfi Holdings, Inc.
3731 NE Pineapple Avenue, 2nd Floor
Jensen Beach, Florida 34957
Telephone (813) 416-2352

*Attorneys for Defendants Benjamin Sharfi as trustee and NeshaFarm, Inc.*

/s/ T. Neal McAliley
T. Neal McAliley