UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>   *Plaintiff*,<br><br>  v.<br><br>BENJAMIN K. SHARFI, in his personal and fiduciary capacity as trustee of the Benjamin Sharfi 2002 Trust, and NESHAFARM, INC.,<br><br>   *Defendants*. | Case No. 2:21-cv-14205-KAM |

**UNITED STATES' COMBINED RESPONSE TO DEFENDANTS' STATEMENT OF MATERIAL FACTS (ECF NO. 153) AND STATEMENT OF ADDITIONAL FACTS**

Pursuant to Local Rule 56.1(a)(2)–(3), the United States responds to Defendants' Combined Response to Plaintiff's Statement of Material Facts (ECF No. 151) and Statement of Material Facts in Support of Defendants' Cross-Motion for Summary Judgment. ECF No. 153. The United States also submits its additional facts in support of its combined Reply in Support of United States' Motion for Summary Judgment and Opposition to Defendants' Cross-Motion for Summary Judgment. ECF No. 158. The United States maintained the single series of paragraph numbers used in Defendants' papers. Citations to "U.S. Add'l SOF Ex." are to exhibits accompanying this document. Citations to "U.S. SOF Ex." refer to exhibits filed with the United States' Statement of Material Facts (ECF No. 151).

## UNITED STATES' RESPONSE TO DEFENDANTS' STATEMENT OF MATERIAL FACTS

92. Undisputed.

93. Undisputed.

94. Undisputed.

95. Undisputed.

96. Disputed. The cited testimony by Dr. Nutter does not support the proposition that the 84th Avenue roadside ditch was excavated when the roadway was created. In fact, Dr. Nutter testified that SW 84th Avenue "was not constructed until later." Nutter 2d Tr. 37:17 (ECF No. 153-1).

97. Undisputed.

98. Undisputed.

99. Undisputed. The United States interprets the "artificial" to mean "man-made."

100. Undisputed.

101. Disputed. There are "discontinuous berms along the North-South Ditch on both sides." Nutter 2d Tr. 93:17–20 (ECF No. 153-1). Dr. Nutter generally agreed that at least 800 feet of the approximately 1,700 feet of the North-South Ditch on the Countess Joy Reference Area has a berm. *Id.* 94:7–11.

102. Disputed. The cited testimony does not support the presence of berms along the 84th Avenue roadside ditch. It is not disputed that discontinuous berms along the upstream reach of Bessey Creek (East-West Ditch) and North-South Ditch on the Countess Joy Reference Area

1

can function as physical barriers to surface flow. Nutter 2d Tr. 95:10–13; 167:19–23 (ECF No. 153-1).

103. Disputed that there is one "location" where the Countess Joy Reference Area wetland, of which the Site wetlands were a part before Defendants' unauthorized activities, abuts the upstream reach of Bessey Creek (East-West Ditch). The United States identified two areas where that wetland abuts the upstream reach of Bessey Creek. *See* U.S. SOF Ex. 12 (ECF No. 151-13) (Reference plot locations W7 and W5). It is not disputed that the two areas where that wetland abuts the upstream reach of Bessey Creek are about one-third of a mile away from Defendants' Site. Nutter 2d Tr. 236:7–16 (ECF No. 153-1).

104. Undisputed.

105. Disputed. The is no physical barrier, like a berm, dike, or other feature, disconnecting the large, contiguous wetland from the North-South Ditch at several locations on the Countess Joy Reference Area. *See, e.g.*, U.S. SOF Ex. 79, at -5089, -5199, -5201, -5203 (ECF No. 151-80). One of those locations is about 500 feet north of Defendant's Site. *Id.* at -5201. It is not disputed that the single location referred to during the portion of Dr. Nutter's cited testimony is approximately 1,000 feet from Defendants' Site. Nutter 2d Tr. 238:18–239:11 (ECF No. 153-1).

106. Disputed. It is not disputed that the upstream reach of Bessey Creek (East-West Ditch) has continuous flow to downstream navigable waters *at least* during the wet season. The upstream reach of Bessey Creek was observed carrying flow in the dry season, too. Defendants' expert Mr. Creech observed flow in the upstream reach of Bessey Creek during the dry season. Creech Tr. 203:23–204:9 (U.S. Add'l SOF Ex. 171). Dr. Nutter observed water flowing in the upstream reach of Bessey Creek for at least five months of the year, including in December, which is the dry season. Nutter 2d Tr. 47:6–22 (ECF No. 153-1). Dr. Nutter testified that the upstream reach would have no flow "in extended dry periods or low seasonal rainfall or during the dry period." *Id.* at 49:20–25. Defendants cite the Project Description and Estimate of Withdrawals for Hybridge Wetland Treatment Technology (HWTT) System at Bessey Creek. U.S. SOF Ex. 80, at -5258. That document does not state that the upstream reach of Bessey Creek flows only during the wet season. Rather, it states that Bessey Creek "exhibits seasonal trends with minimum monthly (30-day average) flows tapering off to less than 1 cfs in dry season months." *Id.* Flows at the HWTT facility modeled on historical flow data between 2004

2

to 2009 also showed some flow in dry season months. *Id.* at -5260. Jonathan Pempek observed flow and photographed water in the upstream reach of Bessey Creek in May and June 2022. Pempek Decl. 7–8, 10–11, 13–14 (U.S. SOF Ex. 96). Finally, Defendants' citation to Dr. Dennis' supplemental report cannot support what flows are "typical" in the upstream reach of Bessey Creek or any other waterway because Dr. Dennis did not determine if precipitation was normal when he observe no water flowing in the upstream reach of Bessey Creek in March 2022 (dry season). Dennis Tr. 126:12–16, 129:12–16 (U.S. Add'l SOF Ex. 86).

107. Disputed. The cited testimony does not relate to the 84th Avenue roadside ditch. Data collected at Reference Well 7, where the larger wetland on the Countess Joy Reference Area abuts the 84th Avenue roadside ditch, provided a continuous digital record of water flow during the U.S. expert team's study period. U.S. SOF Ex. 80, at -5222. It is not disputed that Dr. Nutter and Mr. Wylie did not identify a precise number of months out of the year water flows in the upstream reach of Bessey Creek (East-West Ditch) or the North-South Ditch. Dr. Nutter testified that water flows in the upstream reach of Bessey Creek at least six months of the year based on five months of observations, including during the dry season. Nutter 2d Tr. 47:6–22 (ECF No. 153-1). Mr. Sharfi testified the North-South Ditch has water six to eight months of the year. Sharfi Tr. 123:1–124:19 (U.S. SOF Ex. 87). And water levels from at least August to December 2021 generally exceeded the bottom elevations of the N/S Ditch using Defendants' survey data. *See* U.S. SOF ¶ 78 (ECF No. 151).

108. Disputed. It is not disputed that the North-South Ditch has continuous flow to the upstream reach of Bessey Creek (East-West Ditch) during the wet season. U.S. SOF Ex. 80, at -5222. The N/S Ditch was also observed carrying water during the dry season. *See* U.S. SOF ¶ 78 (ECF No. 151); Sharfi Tr. 123:1–124:19 (U.S. Add'l SOF Ex. 87) (testifying that the N/S ditch has water six to eight months of the year).

109. Disputed. It is not disputed that the 84th Avenue roadside ditch has continuous flow to the upstream reach of Bessey Creek (East-West Ditch) during the wet season. U.S. SOF Ex. 79, at -5089; U.S. SOF Ex. 80, at -5222. The 84th Avenue roadside ditch was also observed carrying water during the dry season. Data collected at Reference Well 7, where the larger wetland on the Countess Joy Reference Area abuts the 84th Avenue roadside ditch, provided a continuous digital record of water flow during the U.S. expert team's study period (mid-August to mid-December 2021), which included times during the dry season. ECF No. 151-81, at -5222;

3

U.S. SOF ¶ 87. The rising and falling limb of the hydrograph indicates water was moving in the 84th Avenue roadside ditch. Nutter Tr. 192:9–18 (U.S. Add'l SOF Ex. 88); Nutter 2d Tr. 50:24–51:9; 226:21–227:9 (ECF No. 153-1); U.S. SOF Ex. 81, at 48 (description of R Well 7); U.S. SOF Ex. 80, at 7 ("Well RWell 7 is located at this connection location and provided a continuous digital record of water flow during the study period (location shown in Exhibit 6 (Figure IV.B.2.a.1).").

110. Disputed. The proposition appears to be a statement of law, not fact. And the cited testimony of Mr. Wylie relates to an interpretation of agency guidance issued after *Rapanos v. United States*, 547 U.S. 715 (2006). That guidance provides, "Therefore, 'relatively permanent' waters do not include ephemeral tributaries which flow only in response to precipitation and intermittent streams which do not typically flow year-round or have continuous flow at least seasonally." U.S. Add'l SOF Ex. 89.

111. Undisputed.

112. Disputed. Members of the U.S. expert team did not physically inspect the Site or personally observe its conditions during the months of January to July. The opinions of the U.S. expert team, however, are based on imagery, documents, data, and observations of others that fall within the January to July period. *E.g.*, U.S. SOF Ex. 78, at 7, 16–17, 24, 29–30, 66–67 (ECF No. 151-79); Nutter Tr. 69:15–75:7 (U.S. Add'l SOF Ex. 88).

113. Disputed. Defendants' statement of fact characterizes a video that speaks for itself. Moreover, the video was captured on April 26, 2022, during the dry season. ECF No. 153-2. The video was therefore taken after Defendants' experts disclosed their previous reports and cannot be relied upon. *See* Order 2, ECF No. 149 ("An expert's supplemental report may not rely on facts or data collected after service of that expert's previous report in this action.").

114. Undisputed.

115. Disputed. It is not disputed that there are multiple drainage ditches between the Defendants' Site and the HWTT facility. The cited testimony does not speak to whether other drainage ditches provide additional flow to the upstream reach of Bessey Creek (East-West Ditch).

116. Disputed. The cited report of Defendants' expert states that there "can be" water in the upstream reach of Bessey Creek near the HWTT facility when the reach near the Site is

4

dry. U.S. SOF Ex. 78, at -2338. Moreover, this opinion relies on a video that was taken after Defendants' experts disclosed their previous reports and therefore violates the Court's Order. *See* Order 2, ECF No. 149 ("An expert's supplemental report may not rely on facts or data collected after service of that expert's previous report in this action.").

117. Disputed that Mr. Creech did not observe flow in the upstream reach of Bessey Creek when he visited a newly constructed culvert during the dry season a couple years before his work on this case. Mr. Creech testified "[t]here wasn't much flow," then that he "wasn't really looking specifically at [flow]," and then that he "was looking forward to seeing a lot of water and a lot of flow, and there wasn't." Creech Tr. 215:7–19 (U.S. Add'l SOF Ex. 85). Otherwise, undisputed.

118. Undisputed.

119. Disputed that Dr. Nutter did not observe flow in the N/S Ditch, which connects to the upstream reach of Bessey Creek (East-West Ditch). It is not disputed that Dr. Nutter did not see water discharging from the N/S Ditch to the upstream reach of Bessey Creek during his visits to the Countess Joy Reference Area (although he relied on observations of other members of the U.S. expert team who did and himself observed evidence of flow at that confluence on subsequent visits). Nutter 2d Tr. 204:18–205:6, 254:22–255:8 (ECF No. 153-1). Multiple members of the U.S. expert team observed (and photographed) water flowing from the North-South Ditch directly into the upper reach of Bessey Creek where those channels historically intersected on the Countess Joy Reference Area. Wylie Tr. 315:2–316:24 (U.S. Add'l SOF Ex. 90); U.S. SOF Ex. 17 (ECF No. 151-18). Otherwise, undisputed.

120. Undisputed.

121. Disputed. A reading of sensor depth "0" does not reflect that the water level was at "the bottom of the ditch at the location of the gauges." Dr. Nutter installed the staff gauges on the side wall of the upstream reach of Bessey Creek (East-West Ditch), not in the bottom of the ditch. *E.g.*, Nutter 2d Tr. 130:5–8, 130:22–24 (ECF No. 153-1). Dr. Nutter observed flow in the upstream reach of Bessey Creek in December 2021 when the sensor depth showed a reading of "0." *Id.* at 141:3–11. Otherwise, undisputed.

122. Disputed. The citation does not support the factual proposition. The only instances when the word "berm" was used at Mr. Berlusconi's deposition were by Defendants' counsel. Mr. Berlusconi testified that the area where the perimeter road was constructed was "the

same level as the earth" and that the Site "slope[d]" down to the ditch. Berlusconi Tr. 67:21–23, 261:10–19 (U.S. Add'l SOF Ex. 91); *see also* U.S. SOF Ex. 1, Photographs 5-1 to 5-7 (ECF No. 151-2); U.S. SOF Ex. 56, at -117 (Defendants' cross-section) (ECF No 151-57). It is not disputed that LiDAR imagery shows the presence of spoil piles from when the North-South Ditch was constructed or cleaned that created a discontinuous berm. U.S. SOF Ex. 1, Photograph 5-6.

      123.    Disputed. The cited testimony does not support that there was an area of higher ground next to the N/S Ditch before Defendants' unauthorized activities. In fact, Mr. Berlusconi testified that the area where Mr. Sharfi constructed the perimeter road was "at the same level as the earth was" and "all of a sudden, the canal would ditch down." Berlusconi Tr. 67:18–25 (U.S. Add'l SOF Ex. 91).

      124.    Disputed. In March 2018, Ms. Small visited the Site for 3.5 hours to delineate a wetland. Small Tr. 99:19–100:2 (U.S. Add'l SOF Ex. 92). Ms. Small's testimony and the photographs that she took of the Site in March 2018 show that the Site (including the wetlands she delineated) was significantly altered by that time. For example, Defendants had already constructed a perimeter road, and, in the area she determined was a wetland, a bulldozer was actively clearing (including by knocking over and crunching up trees), soils were roiled, and wetland vegetation was removed. *Id.* at 70:7–21, 73:3–6, 253:8–14; U.S. Ex. 2, at -001 to -003 (ECF No. 151-03); U.S. SOF ¶¶ 28–30 (ECF No. 151).

      125.    Disputed. As explained in paragraph 124, Defendants had already constructed a perimeter road by the time Ms. Small visited the Site in March 2018 and Ms. Small made no attempt to delineate a wetland under the perimeter road. Small Tr. 253:1–14 (U.S. Add'l SOF Ex 92). The perimeter road falls within the area between the wetland Ms. Small delineated and the Countess Joy Reference Area. *Id.* at 77:16–19 (testifying there was road on northern edge of Site during March 2018 inspection). Aerial and ground photography amply confirm the perimeter road separated the Site from the Countess Joy Reference Area. *E.g.*, U.S. SOF Ex. 1, Photographs 5-8 and 5-12.

      126.    Undisputed. Ms. Small also testified that there were areas outside of her delineation that the South Florida Water Management District might consider to be a wetland based on her identification of wetland vegetation. Small Tr. 73:10–74:16 (U.S. Add'l SOF Ex. 92).

127. Disputed. Ms. Small testified that the boundary she delineated "were the wetlands on the [S]ite at the time [she] did the delineation" and that "there was [sic] no wetlands in the perimeter road location at the time of [her] Site visit." Small Tr. 191:10–18, 23–25 (ECF No. 151-66). Ms. Small did not complete a wetland determination data form within the northwest area of the Site that is mapped as having "hydric" soils. Dennis Tr. 192:4–15, 193:10–18 (U.S. Add'l SOF Ex. 86]; *see* U.S. SOF Ex. 56, at -114. In correspondence to the Corps, Ms. Small stated, "An attempt was made to perform sampling in the northwest area of the property however that location is very heavily impacted with old world climbing fern and we were unable to complete a data form for that location due to the inability to obtain a soil sample and the fact that all vegetation is covered with the old world climbing fern." U.S. SOF Ex. 56, at -100. Finally, Ms. Small testified that there were areas outside of her delineation that the South Florida Water Management District might consider to be a wetland based on her identification of wetland vegetation in those areas. Small Tr. 73:10–74:16 (U.S. Add'l SOF Ex. 92). Thus, Ms. Small's delineation does not indicate the full areal scope of wetlands on the Site before Defendants' unauthorized activities.

128. Disputed. When the U.S. expert team inspected the Site in 2021, most of the wetlands in the Site had been filled. Wylie Tr. 267:8–11 (ECF No. 151-3). To be clear, the Site's wetlands remain "waters of the United States" despite Defendants' activities. See 33 C.F.R. § 323.2(d)(4) ("Unauthorized discharges into waters of the United States do not eliminate Clean Water Act jurisdiction, even where such unauthorized discharges have the effect of destroying waters of the United States."). The fenced off remnant wetland depression is approximately 0.79 acres. U.S. SOF Ex. 81, at 78 (ECF No. 151-82). Finally, Defendants have not merely "left in place" the remnant wetland depression on the Site. In fact, the remnant wetland is degraded. *E.g.*, *id.* at 15–16, 74; *see also* U.S. SOF Ex. 1, photographs 5-7 & 5-19 (ECF No. 151-02). Finally, Google Earth imagery dated January 2023 shows that Defendants have continued work in the remnant wetland depression *after* discovery closed.

129. Undisputed.

130. Undisputed only that the wetland depicted on the National Wetlands Inventory map on the Countess Joy Reference Area does not touch Defendants' Site on that map. Otherwise, disputed. National Wetlands Inventory maps do not establish, on their own, the presence of "wetlands." *See* 33 C.F.R. § 328.3(b) (1987). NWI wetlands are determined using

7

aerial photographs, soils, and vegetation interpretations by the U.S. Fish and Wildlife Service U.S. SOF Ex. 81, at 3. NWI maps are used by wetland professionals as one indicator of the possible extent of "waters of the United States." *Id.*; *accord* Dennis Tr. 153:5–13 (U.S. Add'l SOF Ex. 86) (testifying that he has not found NWI maps "to be as reliable in Florida" and that they are "not to be used as a surrogate for a wetland jurisdictional delineation"). This is because the areal extent of NWI wetlands is determined using NWI definitions of wetlands and via photo and other imagery interpretation and limited field verification of hydrology, hydric soils, and vegetation conditions. U.S. SOF Ex. 81, at 3. In fact, based on observations and data the U.S. expert team collected, the NWI maps actually underrepresent the wetland acreage in the study area. U.S. SOF Ex. 9 (ECF No. 151-10); U.S. SOF Ex. 81, at 37. Dr. Dennis, by contrast, did not "attempt to ground [truth] any of the NWI maps on the Countess Joy property." Dennis Tr. 154:16–18 (U.S. Add'l SOF Ex. 86).

131. Undisputed only that the wetland depicted on Defendants' Site is physically separated from the wetlands depicted on the Countess Joy Reference Area on the National Wetlands Inventory map. Otherwise, disputed for the reasons stated in paragraph 130.

132. Undisputed only that a contiguous wetland complex that includes the Defendants' Site and the Countess Joy Reference Area is not depicted on the National Wetlands Inventory map. Otherwise, disputed for the reasons stated in paragraph 130.

133. Undisputed only that a continuous wetland complex on Defendants' Site or the Countess Joy Reference Area is not depicted on the U.S. Geological Survey. Disputed that the U.S. Geological Survey definitively shows the boundary of jurisdictional wetlands.

134. Undisputed.

135. Undisputed that the U.S. expert team did not establish a baseline on the Countess Joy Reference Area. Disputed that doing so was required or advised under the Corps of Engineers Wetlands Delineation Manual (January 1987). U.S. SOF Ex. 61.

136. Undisputed that the U.S. expert team did not establish transects on the Countess Joy Reference Area. Disputed that doing so was required or advised under the Corps of Engineers Wetlands Delineation Manual (January 1987). U.S. SOF Ex. 61.

137. Undisputed.

138. Undisputed.

139. Undisputed.

140. Undisputed.

141. Undisputed.

142. Undisputed.

143. Undisputed.

144. Undisputed.

145. Disputed that "surface water was rarely present at the location of the reference wells" during the study period. The data speak for themselves. Otherwise, undisputed.

146. Disputed that water levels were "usually below ground surface" during the study period. The data speak for themselves. Otherwise, undisputed.

147. Undisputed.

148. Undisputed.

149. Disputed. The cited document does not support the factual proposition because it speaks only of unspecified areas near the upstream reach of Bessey Creek (East-West Ditch). Dr. Dennis also did not determine whether areas were wetlands on the Countess Joy Reference Area and whether parts of the "various drainage ditches" also satisfy the parameters of being a wetland.

150. Disputed. As Dr. Nutter and Mr. Wylie opined, the Site's wetlands and the large wetland of which they were a part before Defendants' unauthorized activities abut, or touch, the N/S Ditch, the upstream reach of Bessey Creek (East-West Ditch), and the 84th Avenue roadside ditch; in each such area, there are no physical barriers disconnecting the wetland from the waterway. U.S. SOF Ex. 79, at -5088 to -5089; U.S. SOF Ex. 80, at -5221 to -5224. These facts support the legal element of "continuous surface connection."

151. Disputed. The cited testimony does not support the factual proposition. Mr. Wylie identified a wetland area that was not inundated by the upper reach of Bessey Creek (East-West Ditch) at the time of the photograph. Wylie 2d Tr. 126:16–18 (U.S. Add'l SOF Ex. 93) ("The entire area that you're looking at is the wetland that is not inundated by the upper reach of Bessey Creek."). Mr. Wylie also testified, "You have to define where the ditch is. Remember that we discussed it had ordinary high-water mark and bed and banks. Part of the bed and banks, or even to the ordinary high-water mark, it could be wetlands. So the water could be over the top of wetlands on the creek." *Id.* at 128:19–24. And Mr. Wylie testified that wetlands on the Countess Joy Reference Area touched the 84th Avenue roadside ditch and upper reach of Bessey

9

Creek at least as low as the ordinary high-water mark of those waterbodies. *Id.* at 294:10–18. Dr. Nutter testified that he could identify the location of a wetland in a photograph at the cited page of his testimony.

      152.    Undisputed.

      153.    Undisputed.

      154.    Disputed to the extent the entire Exhibit 1 of Dr. Dennis' supplemental report does not appear as Attachment 3.

      155.    Undisputed.

      156.    Undisputed.

      157.    Undisputed.

      158.    Undisputed, with the clarification that this paragraph appears to refer to Figure 23 of Dr. Dennis' supplemental report, not Exhibit 23.

      159.    Undisputed.

      160.    Undisputed.

      161.    Undisputed.

**UNITED STATES' STATEMENT OF ADDITIONAL FACTS**

162. The sod mats installed on the Site consisted of grass and a layer of imported earthen material. *See* Wylie Tr. 269:10–14 (U.S. Add'l SOF Ex. 90); Berlusconi Tr. 186:6–14 (U.S. Add'l SOF Ex. 91); Sharfi Tr. 135:20–24, 138:12–13, 20–22 (U.S. Add'l SOF Ex. 87).

163. The sod mats ranges from two to four inches in depth. U.S. SOF Ex. 81, at 67.

164. Dr. Dennis testified that sod mats can be considered fill if it changes the bottom elevation of covered wetlands so that they are converted to an upland condition. Dennis Tr. 170:3–10 (U.S. Add'l SOF Ex. 86).

165. During the U.S. expert team's investigations in August, September, and October 2021, Mr. Wylie, together with Drs. Rains, Nutter, and Stewart, walked from wetlands in the southwestern area of the Countess Joy Reference Area nearest to the wetlands on the Site (before Defendants' discharges) to multiple locations where the large, contiguous wetland directly abuts the upstream reach of Bessey Creek, without leaving areas that the U.S. expert determined and documented satisfied the requisite criteria to be wetlands. U.S. SOF Ex. 79, at-5087.

166. The experts documented in wetland data sheets, field notes, and photographs that a large, contiguous wetland exhibiting similar hydrophytic vegetation, hydric soils, and wetland hydrology at or above the ground surface extends from the Site in a northwest direction to the upstream reach of Bessey Creek and also abuts the N/S Ditch. U.S. SOF Ex. 79, at-5087.

167. In August and September 2021, the U.S. expert team observed (and documented with photographs) surface water flowing directly into the upstream reach of Bessey Creek on the Countess Joy Reference Area. U.S. SOF Ex. 22 (Figure V.C.2.11) (ECF No. 151-23); U.S. SOF Ex. 80, at -5223, -5294. The U.S. expert team also observed surface water flow from the N/S Ditch to the 84th Avenue roadside ditch. U.S. SOF Ex. 24 (ECF No. 151-25); U.S. SOF Ex. 80, at -5222.

168. Berms along the North-South Ditch on the Countess Joy Reference Area are discontinuous. Nutter 2d Tr. 93:17–20 (U.S. Add'l SOF Ex. 84).

169. The North-South Ditch has water six to eight months of the year. Sharfi Tr. 123:1–124:19 (U.S. Add'l SOF Ex. 87).

170. Spoil piles along the upstream reach of Bessey Creek (East-West Ditch) are intermittent and appear interrupted on aerial imagery. Creech Tr. 157:19–22 (U.S. Add'l SOF Ex. 85).

171. Defendants' expert Mr. Creech observed flow in the upstream reach of Bessey Creek during the dry season. Creech Tr. 203:23–204:9 (U.S. Add'l SOF Ex. 85); *accord* Pempek Decl. 7–8, 10–11, 13–14 (U.S. SOF Ex. 96).

172. Flows at the Hybrid Wetland Treatment Technology facility modeled on historical flow data between 2004 and 2009 show some flow in dry season months. U.S. SOF Ex. 80, at -5260.

173. The rising and falling limb of hydrograph data collected from staff gauges Dr. Nutter installed in the upstream reach of Bessey Creek (East-West Ditch) show there was flow in the East-West Ditch during the study period (mid-August and mid-December 2021). Nutter Tr. 192:9–18 (U.S. Add'l SOF Ex. 88); U.S. SOF Ex. 81, at 48 ("R Staff Bessey Up - This gauge is located near R Well 6 on the bank of Bessey Creek. Water levels at this location are responsive to rainfall inputs as expected with slowly declining recession limbs of the streamflow hydrograph."); U.S. SOF Ex. 32 (Figure V.D.1.b.1.4) (ECF No. 151-33). The gauge data do not demonstrate the volume or rate of flow. Nutter Tr. 192:2–15 (U.S. Add'l SOF Ex. 88).

174. Data collected at Reference Well 7, where the larger wetland on the Countess Joy Reference Area abuts the 84th Avenue roadside ditch, provided a continuous digital record of water flow during the U.S. expert team's study period (mid-August to mid-December 2021), which included times during the dry season. U.S. SOF Ex. 80, at -5222; U.S. SOF ¶ 87. The rising and falling limb of the hydrograph indicates water was moving in the 84th Avenue roadside ditch. Nutter Tr. 192:9–18 (U.S. Add'l SOF Ex. 88), Nutter 2d Tr. 50:24–51:9; 226:21–227:9 (U.S. Add'l SOF Ex. 84); U.S. SOF Ex. 81, at 48 (description of R Well 7); U.S. SOF Ex. 80, at 7 ("Well RWell 7 is located at this connection location and provided a continuous digital record of water flow during the study period (location shown in Exhibit 6 (Figure IV.B.2.a.1).").

175. Defendants' expert Dr. Dennis testified the wetland represented on Defendants' Site in the Nationals Wetland Inventory maps "looks to be . . . pretty accurate." Dennis 2d Tr. 204:7–15 (U.S. Add'l SOF Ex. 94).

176. The National Wetlands Inventory maps show a wetland on the Defendant's Site touching the N/S Ditch on the National Hydrography Database (NHD) maps. U.S. SOF Ex. 9.

177. National Wetlands Inventory maps were never intended to delineate the

boundaries of regulated wetlands. Dennis 2d Tr. 219:24–220:3 (U.S. Add'l SOF Ex. 94).

178. National Wetlands Inventory maps must be verified by on-the-ground investigation. Dennis Tr. 147:5–23, 153:5–13 (U.S. Add'l SOF Ex. 86).

179. Dr. Dennis is the only expert Defendants disclosed who visited the Countess Joy Reference Area in connection with this case.

180. Dr. Dennis did not attempt to ground truth any of the National Wetlands Inventory maps on the Countess Joy Reference Area. Dennis Tr. 154:16–18 (U.S. Add'l SOF Ex. 86).

181. Dr. Dennis did not ground truth the National Wetlands Inventory Maps on the Site. Dennis Tr. 155:1–3 (U.S. Add'l SOF Ex. 86).

182. Dr. Dennis dug one hole in the soil on the Countess Joy Reference Area during the entirety of his work on this case. Dennis Tr. 118:2, 119:2–4, 124:21–125:3 (U.S. Add'l SOF Ex. 86). He dug the hole during his visit to the Countess Joy Reference Area in March 2022. *Id.* at 117:25–118:2.

183. Dr. Dennis did not do any soil testing at the single hole in the soil he dug in this case. Dennis Tr. 121:16–17 (U.S. Add'l SOF Ex. 86).

184. Dr. Dennis carried his shovel with him during his inspection of the Countess Joy Reference Area in March 2022. Dennis Tr. 126:5–8 (U.S. Add'l SOF Ex. 86).

185. Antecedent rainfall is part of a wetland evaluation. Dennis Tr. 126:22–127:2 (U.S. Add'l SOF Ex. 86).

186. The Corps' Antecedent Precipitation Tool is used to look at rainfall over a thirty-year period and present information that would be "normal circumstances as that applies to . . . wetland delineation determinations." Dennis Tr. 74:6–13 (U.S. Add'l SOF Ex. 86).

187. Dr. Dennis did not make any attempt to collect data regarding the normalcy of precipitation during his March 2022 inspection of the Countess Joy Reference Area, including by using the Corps' Antecedent Precipitation Tool. Dennis Tr. 126:12–16, 129:12–16 (U.S. Add'l SOF Ex. 86).

188. Exhibit 95 shows antecedent precipitation versus the thirty-year normal range during an observation date of March 10, 2022 (the day of Dr. Dennis' inspection of the Countess Joy Reference Area), at geographic coordinates for the Site. U.S. Add'l SOF Ex. 95.

189. Based on the Corps' Antecedent Precipitation Tool, when Dr. Dennis was on the

13

Countess Joy Reference Area on March 10, 2022, there was below normal precipitation. Dennis Tr. 129:6–10 (U.S. Add'l SOF Ex. 86); U.S. Add'l SOF Ex. 95.

190. Based on the Corps' Antecedent Precipitation Tool, when Dr. Dennis was on the Countess Joy Reference Area on March 10, 2022, the area was in a "mild drought." Dennis Tr. 129:17–24 (U.S. Add'l SOF Ex. 86); U.S. Add'l SOF Ex. 95.

191. Dr. Dennis refers to the upstream reach of Bessey Creek as the "east-west Canal Ditch." *E.g.*, U.S. SOF Ex. 78, at -2334.

192. In March 2018, Ms. Small visited the Site for 3.5 hours to delineate a wetland. Small Tr. 99:19–100:2 (U.S. Add'l SOF Ex. 92).

193. By the time Ms. Small visited the Site in March 2018, Defendants had already constructed a perimeter road, and, in the area she determined was a wetland, a bulldozer was actively clearing (including by knocking over and crunching up trees), soils were roiled, and wetland vegetation was removed. Small Tr. 70:7–21, 73:3–6, 253:8–14 (U.S. Add'l SOF Ex. 92); U.S. SOF Ex. 2, at -001 to -003; U.S. SOF ¶¶ 28–30.

194. There were areas outside of Ms. Small's delineation that the South Florida Water Management District might consider to be a wetland based on her identification of wetland vegetation. Small Tr. 73:10–74:16 (U.S. Add'l SOF Ex. 92).

195. Ms. Small testified that the boundary she delineated "were the wetlands on the [S]ite at the time [she] did the delineation" and that "there was [sic] no wetlands in the perimeter road location at the time of [her] Site visit." Small Tr. 191:10–18, 23–25 (U.S. Add'l SOF Ex. 92).

196. At the time of Ms. Small's inspection in March 2018, the perimeter road on the Site fell within the area between the wetland Ms. Small delineated and the Countess Joy Reference Area. Small Tr. 77:16–19 (U.S. Add'l SOF Ex. 92) (testifying there was road on northern edge of Site during March 2018 inspection). Aerial and ground photography amply confirm the perimeter road separated the Site from the Countess Joy Reference Area. *E.g.*, U.S. SOF Ex. 1, Photographs 5-8 and 5-12.

197. Ms. Small did not complete a wetland determination data form within the northwest area of the Site that is mapped as having "hydric" soils. Dennis Tr. 192:4–15, 193:10–18, U.S. Add'l SOF Ex. 86; *see* U.S. SOF Ex. 56, at -114.

198. In correspondence to the Corps, Ms. Small stated, "An attempt was made to

14

perform sampling in the northwest area of the property however that location is very heavily impacted with old world climbing fern and we were unable to complete a data form for that location due to the inability to obtain a soil sample and the fact that all vegetation is covered with the old world climbing fern." U.S. SOF Ex. 56, at -100.

199. Jonathan Pempek of the United States Army Corps of Engineers observed flow and photographed water in the upstream reach of Bessey Creek in May and June 2022. Pempek Decl. 7–8, 10–11, 13–14 (U.S. Add'l SOF Ex. 96).

Dated: December 22, 2023

Respectfully Submitted,

TODD KIM
Assistant Attorney General

*/s/ Brandon N. Adkins*
BRANDON N. ADKINS (Bar ID No. A5502752)
ANDREW J. DOYLE (FL Bar No. 84948)
JEFFREY HUGHES (Bar ID No. A5502897)
United States Department of Justice
Environment & Natural Resources Division
P.O. Box 7611
Washington, D.C. 20044
Tel: (202) 616-9174
Fax: (202) 514-8865
Brandon.Adkins@usdoj.gov
Andrew.Doyle@usdoj.gov
Jeffrey.Hughes@usdoj.gov

MARKENZY LAPOINTE
United States Attorney

DEXTER LEE (FL Bar No. 936693)
Assistant United States Attorney
Southern District of Florida
99 N.E. 4th Street
Miami, FL 33132
Tel: (305) 961-9320
Fax: (305) 530-7679
Dexter.Lee@usdoj.gov

*Attorneys for the United States*